1  Jason Levin (161807)
   *jlevin@steptoe.com*
2  Bennett Evan Cooper (128544)
   *bcooper@steptoe.com*
3  **STEPTOE & JOHNSON LLP**
   633 West Fifth Street, Suite 700
4  Los Angeles, California 90071
   Telephone:  (213) 439-9400
5  Facsimile:   (213) 439-9599

6  Attorneys for Plaintiff
   Grasshopper House, LLC
7

8
                 UNITED STATES DISTRICT COURT
9
                 CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| Grasshopper House, LLC, a California limited liability company, | No. 5:18-CV-00263 |
| Plaintiff, | **COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, TRADE LIBEL PER SE, AND VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE** |
| vs. | |
| Clean & Sober Media LLC, a California limited liability company; Cliffside Malibu, a California corporation; Richard L. Taite, an individual; and Does 1-10. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**JURISDICTION AND VENUE**

1.     This is an action for (1) false and misleading representations in advertising in violation of section 43(a) of the Trademark Act of July 5, 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a)(1)(B); (2) trade libel per se under California law; (3) false advertising in violation of section 17500 of the California Business and Professions Code; and (4) unfair competition in violation of section 17200 of the California Business and Professions Code. This

**COMPLAINT**

1. Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal-question jurisdiction), 15 U.S.C. § 1121 (actions under the Lanham Act), and 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law claims for trade libel per se and violation of the California Business and Professions Code because they arise from the same facts as Plaintiff's Lanham Act claim.

2. Venue is proper in the Central District of California because (a) all Defendants reside in the State of California and at least one of the Defendants resides in this District, and (b) substantial parts of the events or omissions giving rise to the claims occurred in this District.

**INTRODUCTION**

3. This action for damages and injunctive relief arises from the use of false and misleading statements on a website known as "The Fix" (www.thefix.com). The Fix purported to provide the public with disinterested reviews and ratings of drug rehabilitation centers, but The Fix was not a disinterested actor. The Fix was, in fact, owned and controlled by Defendants for the purpose of boosting sales at a particular drug rehabilitation center, Cliffside Malibu, which Defendants also owned and operated. Defendants boosted sales at Cliffside Malibu by providing the public manipulated reviews and ratings, including a perfect "five-star" rating for the effectiveness of its treatment. In comparison, The Fix gave Passages Malibu, Cliffside Malibu's most significant competitor, a "one-star" rating for patient treatment.

4. Visitors to The Fix were deceived in two ways. First, they were not informed that the review and rating of Cliffside Malibu, which appeared to be editorial content, was in fact "native advertising" purchased or produced by Defendants. Second, The Fix falsely informed visitors that the reviews and ratings of both Cliffside Malibu and Passages Malibu were based on the results of multiple, formal surveys received from those facilities' former clients.

5. Defendants' scheme succeeded in diverting business to Cliffside Malibu from Passages Malibu. Plaintiff, which owns Passages Malibu, has sustained in excess of $50 million in damages because of patients diverted by false and misleading information on The Fix. Defendants' misconduct, unless enjoined, will continue to irreparably injure Plaintiff and its reputation.

## PARTIES

6. Plaintiff Grasshopper House, LLC is a California limited liability company with its principal place of business in Malibu, California. Plaintiff owns and operates Passages Malibu, a holistic addiction treatment and rehabilitation facility in Malibu, California. Founded in 2001, Passages Malibu includes alcohol, drug, and prescription-drug rehab and detox centers for the treatment of clients. It has been rated by *Healthcare Global* magazine as No. 1 in its list of the "Top 10 Rehab Clinics In The World," and it has been named by *Forbes* magazine as one of the most luxurious rehab centers in the world.

7. Upon information and belief, defendant Clean & Sober Media LLC, is a California limited liability company with its principal place of business in Woodland Hills, California. Clean & Sober Media owns and operates The Fix, an Internet website that claims to be "the world's leading premier [*sic*] about addiction and recovery."

8. Upon information and belief, defendant Cliffside Malibu is a California corporation with its principal place of business in Malibu, California. Cliffside Malibu operates a residential treatment center also known as Cliffside Malibu. Cliffside Malibu and Passages Malibu directly compete with each other for clients in the same market for luxury alcohol and drug addiction treatment services.

9. Upon information and belief, defendant Richard L. Taite is the manager and sole member of defendant Clean & Sober Media, as well as the founder, owner, Chief Executive Officer, Secretary, and Chief Financial Officer

of defendant Cliffside Malibu. Upon information and belief, Taite controls and is directly responsible for the actions of Clean & Sober Media and Cliffside Malibu. Taite also has acted in his personal and individual capacity as to, and personally participated in, the conduct that gives rise to the claims in this action.

10. Upon information and belief, each of the above-identified Defendants acted as the agent of the other Defendants with respect to the conduct that gives rise to the claims in this action.

11. Upon information and belief, each of the above-identified Defendants conspired and acted in concert with each other with respect to the conduct that gives rise to the claims in this action.

12. Does 1-10 are persons and business entities, presently unknown, who acted as the agents of the above-identified Defendants, or conspired and acted in concert with them, with respect to the conduct that gives rise to the claims in this action.

## FACTUAL ALLEGATIONS

13. Clean & Sober Media has owned and operated The Fix since October 2013. It was not until recently, however, that The Fix disclosed that Clean & Sober Media was related to Cliffside Malibu. They shared a common owner: Richard Taite.

14. Before October 2013, The Fix was owned and operated by Recovery Media, LLC. Ownership of The Fix changed hands after Recovery Media went into bankruptcy.

15. Upon information and belief, based on Recovery Media's bankruptcy filings, Defendants and Recovery Media had a preexisting commercial relationship under which The Fix was paid to advertise Cliffside Malibu. In return for money, the Fix gave Cliffside Malibu a solid review and a four-star (out of five) "Overall" rating. The review and rating of Cliffside

1  Malibu, as well as those for other treatment facilities, were provided in a section
2  of The Fix called "Rehab Reviews."

3       16.    When Taite and Clean & Sober Media assumed control of The Fix,
4  they changed Cliffside Malibu's overall rating to five stars; the facility review
5  itself remained word-for-word identical. Cliffside Malibu was also given a
6  perfect five-star rating for the most important component—"Treatment."

7       17.    On the Rehab Reviews webpage, under a "Featured Centers" banner,
8  Cliffside Malibu was consistently ranked as the top-rated facility and was given
9  the most prominent page placement. A reader would have needed to look
10 carefully to find and scroll over a small information icon to reveal this statement:
11 "Featured centers have paid for placement of their reviews in this section;
12 however, the content and ratings contained in those reviews are editorial content
13 created by The Fix." Readers were not informed of the commercial relationship
14 between Cliffside Malibu and The Fix. In fact, because of Defendants'
15 fraudulent concealment, this fact was unknown to Plaintiff until approximately
16 November 2017, when an independent website called The Verge published an
17 article on the issue. Only then did The Fix update its small information icon to
18 disclose the common ownership of The Fix and Cliffside Malibu.

19      18.    Defendants' change of Cliffside Malibu's overall rating was
20 inconsistent with what The Fix stated on its website—that all facility ratings
21 were "editorial content." The change was also inconsistent with The Fix's own
22 policies and procedures. The Fix stated that it "rigorously reported Rehab
23 Reviews, with input from thousands of alumni," whose responses to surveys
24 were used to generate ratings. The Fix also stated:

25                 To create our reviews, we invite selected centers to
26           solicit former clients to complete a detailed, 20-question
27           survey. The Fix requires at least five completed surveys
28           before a review is generated. The surveys include

> questions about accommodations, meals, residents, staff, activities, and more. Alumni respond anonymously and confidentially, and reviews are written based on their responses and follow-up questions where applicable.
>
> The resulting review is highly detailed, delving not only into the intricacies of daily life, but also into the specific types of treatment offered.
>
> For each of the above metrics - accommodations, food, and treatment - we then rate each center on a five-star scale, based on the alumni's chosen star ratings and comments. The overall rating for the particular center being reviewed is created based on the three component star ratings, client comments, and other information obtained through the survey process.

19. In sum, The Fix stated that its reviews and ratings would be based solely on survey responses provided by facility alumni. But when Defendants took over The Fix, it increased the Cliffside Malibu rating in the absence of customer surveys for that facility.

20. The Fix's upwards manipulation of the Cliffside Malibu rating stands in stark contrast with its treatment of Passages Malibu, which has always refused to pay The Fix for advertising. In March 2011, The Fix posted a review of Passages Malibu, giving the facility an "Overall" rating of two and a half stars and a disparaging rating of a single star for "Treatment." Plaintiff contacted The Fix to complain about the rating for Passages Malibu but was told that an upgrade would cost $50,000. Plaintiff refused to pay, and the low ratings for Passages Malibu have remained ever since.

21. When Defendants took over The Fix, Plaintiff, which was unaware that The Fix was owned and operated by a competitor, tried again to obtain a fair

review and rating for Passages Malibu. It referred The Fix to its own online statement that reviews and ratings would be based on at least five customer surveys, and it questioned the existence of such surveys from Passages Malibu alumni. Finally, in approximately July 2016, in the course of email communications between Plaintiff and the Editor-in-Chief of The Fix, The Fix at last acknowledged that no such surveys existed from Passages Malibu alumni. It nonetheless attempted to justify the review and rating of Passages Malibu on the ground that they were completed in 2012 "under prior editorial control" and "under different criteria."

22. The Fix has never disclosed to Plaintiff or to readers the actual basis of the Passages Malibu review and rating. For years, readers were falsely informed the Passages Malibu review and rating were based on patient surveys when in fact no such surveys existed. Defendants' fraudulent concealment had kept Plaintiff from learning the truth. The Fix only recently added a difficult-to-find information icon—an "i" in a circle—which, when touched by the cursor, generates the following pop-up: "Reviews completed prior to October 25th, 2013 were completed under prior editorial control. Some reviews and star ratings may have been completed at different times and under different criteria."

23. Plaintiff continued to complain to The Fix about the Passages Malibu review and rating. At one point, The Fix agreed to take down the review and rating, but the removal never happened. At a later point in time, The Fix's Senior Account Representative, Kris Harrison, asked Plaintiff, "If I was able to have them take [the two-and-a-half-star review] down would you be interested in listing within some of our categories or maybe on [sic] of our banner positions?" When Plaintiff refused to pay for advertising, the negative review and rating remained.

24. It soon became clear why The Fix had refused to remove Passages Malibu's review and rating: the Passages Malibu name was driving website

traffic to The Fix. Plaintiff has spent in excess of $100 million dollars on advertising Passages Malibu, and that advertising resulted in Passages Malibu's brand recognition and favorable reputation. As a result, consumers looked for and could find Passages Malibu online more easily than its competitors. But there was a downside. According to Harrison, people searching the Internet for Passages Malibu were finding the negative review on The Fix; "your review with us still ranks on page 1 of google right under your website." In other words, The Fix did not want to remove the false Passages Malibu review and rating because it would decrease traffic to The Fix, and by extension, the website's advertising revenue.

25. In sum, The Fix contains several false and misleading statements about the reviews and ratings of Cliffside Malibu and Passages Malibu:

    a. The Fix states that the reviews and ratings for Cliffside Malibu are editorial and based on at least five customer surveys. They are not. Cliffside Malibu's favorable review and rating followed from its advertising in and then ownership of The Fix.

    b. The Fix misleads readers by failing to disclose that its review and rating of Cliffside Malibu is really advertising. The review and rating are a form of "native advertising," a term used by the Federal Trade Commission to describe advertisements indistinguishable from news, feature articles, product reviews, editorial, entertainment, and other regular content. The FTC's enforcement policy states that it considers native advertising to be misleading in the absence of a "sufficiently prominent and unambiguous" disclosure of made in "simple, unequivocal" language. The Fix did not and does not contain sufficient disclosures of its native advertising.

      c.    The Fix states that the reviews and ratings for Passages Malibu are editorial and based on at least five customer surveys. They are not. Passages Malibu's unfavorable review and rating followed from its refusal to pay for advertising, its competition with Cliffside Malibu, and its name recognition driving traffic to The Fix.

26. By maintaining the review of Passages Malibu, including the false one-star "Treatment" rating and other false and misleading statements, and by intentionally misinforming readers that the ratings were based on completed surveys by at least five former clients, Defendants acted with malice, oppression, conscious disregard of Plaintiff's rights, and either knowledge that the statements were false or reckless disregard of the truth or falsity of the statements.

27. Defendants' false and misleading statements about Passages Malibu, particularly in comparison to the glowing review and rating for Cliffside Malibu, have caused Plaintiff to suffer a decline of business, diversion of clients, loss of goodwill, and injury to business reputation, causing damages in excess of $50 million. Upon information and belief, in this same time period, Cliffside Malibu has experienced an increase in patient inquiries and enrollments.

**FIRST CLAIM FOR RELIEF**

**(Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))**

28. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

29. By their acts set forth above, including both affirmative statements and omissions, Defendants have used and continue to use false and misleading descriptions or representations of fact, in the context of commercial advertising or promotion, that are directed to the nature, characteristics, or qualities of Plaintiffs' services or commercial activities and Defendants' own services or

commercial activities, in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

30. Defendants' false and misleading statements are related to material elements of purchasers' decisions and are likely to influence such decisions.

31. Defendants' false and misleading statements actually deceived or are likely to deceive a substantial segment of the relevant market for clients or purchasers of alcohol or drug rehab services.

32. Defendants' false and misleading statements have entered "commerce," as that term is defined in section 45 of the Lanham Act, 15 U.S.C. § 1127.

33. Plaintiff was injured and is likely to continue to be injured as a result of Defendants' false and misleading statements, both by direct diversion and loss of sales and profits, and by a lessening of the goodwill associated with Plaintiff's name, business, and services.

34. The injury to Plaintiff's business and goodwill from Defendants' false and misleading statements is irreparable because the full extent of such injury, which would extend far into the future, cannot be precisely measured and compensated for.

35. Defendants continue to do the acts complained of in this Complaint, and, unless restrained and enjoined, Defendants will continue to do so, all to Plaintiff's irreparable injury. Plaintiff's remedy at law is not adequate to compensate it for the future injuries received and threatened.

36. Defendants' conduct has been willful and committed with the intent to deceive prospective clients or purchasers of alcohol or drug rehab services and the public.

37. Defendants' conduct has caused Plaintiff to lose in excess of $50 million in revenue. Damages continue to accrue.

## SECOND CAUSE OF ACTION

### (Trade Libel Per Se)

38. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

39. Defendants' review of Passages Malibu includes statements that were false and disparaged the quality of the treatment services that Plaintiff provides to clients at Passages Malibu.

40. Defendants made such false and disparaging statements to clients, prospective clients, and the public by including and maintaining the statements in The Fix.

41. Defendants' single-star rating of Passages Malibu for "Treatment" constitutes libel per se under California Civil Code §§ 45 and 45a because it defames Plaintiff by stating, without the necessity of explanatory matter, that Passages Malibu is completely incompetent at its core function of treating addiction.

42. Defendants knew or should have recognized that someone else might act in reliance on their false and disparaging statements, causing Plaintiff financial loss.

43. By publishing such false and disparaging statements, Defendants induced others who relied on the statements to avoid obtaining services at Passages Malibu, causing Plaintiff to suffer direct financial harm.

44. Defendants' conduct was a substantial factor in causing Plaintiff's harm, including in excess of $50 million in revenue. Damages continue to accrue.

45. Defendants' conduct was undertaken with malice, oppression, conscious disregard of Plaintiff's rights, and either knowledge that the statements were false or reckless disregard of the truth or falsity of the statements, thereby permitting the imposition of punitive damages against them.

## THIRD CAUSE OF ACTION

### (California Business and Professions Code § 17500)

46. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

47. Defendants have made statements in advertising that are untrue or misleading.

48. Defendants knew, or by the exercise of reasonable care should have known, that their statements were untrue or misleading.

49. Members of the public are likely to be deceived by Defendants' untrue or misleading statements.

50. Defendants conduct constitutes false advertising in violation of section 17500 of the California Business and Professions Code.

51. Defendants' misconduct is likely to continue or reoccur unless it is restrained and enjoined.

## FOURTH CAUSE OF ACTION

### (California Business and Professions Code § 17200)

52. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

53. Defendants' conduct is unlawful and fraudulent and therefore in violation of section 17200 of the California Business and Professions Code (also known as the Unfair Competition Law). Defendants' conduct was unlawful in that it was in violation of (a) section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (b) section 17500 of the California Business and Professions Code. Defendants' conduct was fraudulent, as that term is understood under the California Unfair Competition Law, because a significant number of reasonable readers of The Fix are likely to be misled by its false statements and nondisclosures.

54. Defendants knew, or by the exercise of reasonable care should have known, that their statements were false or misleading.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A. Issuance of temporary, preliminary, and permanent injunctive relief restraining Defendants, their officers, employees, agents, affiliates, parents, and subsidiaries, and all other persons who act in concert with them from making false, misleading, or deceptive statements or representations about Plaintiff, Passages Malibu, Cliffside Malibu, or any other treatment facility, on or in connection with the operation of The Fix;

B. Damages in an amount to be proved at trial under 15 U.S.C. § 1117, but in no event less than $50 million, based on, among other things, lost business revenues from prospective clients who selected other addiction treatment facilities after reading The Fix's review and rating of Passages Malibu alone or in comparison with Cliffside Malibu's review and rating;

C. An accounting to determine the profits Defendants have made in connection with their services provided to customers who were diverted from Passages Malibu by Defendants' false and misleading statements, and an award to Plaintiff of such profits and trebling of such award under 15 U.S.C. § 1117(a);

D. An award of punitive damages for trade libel per se;

E. An award to Plaintiff of its costs and attorneys' fees incurred in this action under 15 U.S.C. § 1117(a) on the ground that this is an exceptional case; and

F. Such other relief as the Court may deem just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b)(1), Plaintiff demands a trial by jury.

DATED: February 2, 2018

STEPTOE & JOHNSON LLP

By s/ Jason Levin
   Jason Levin
   Bennett Evan Cooper
   633 West Fifth Street, Suite 700
   Los Angeles, California 90071

Attorneys for Plaintiff
Grasshopper House, LLC