**STRIS & MAHER LLP**
PETER K. STRIS (SBN 216226)
peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
brendan.maher@strismaher.com
ELIZABETH BRANNEN (SBN 226234)
elizabeth.brannen@strismaher.com
DANA BERKOWITZ (SBN 303094)
dana.berkowitz@strismaher.com
VICTOR O'CONNELL (SBN 288094)
victor.oconnell@strismaher.com
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
smartin@sandiego.edu
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>CLEAN & SOBER MEDIA LLC, et al.,<br><br>  Defendants. | Case No. 2:18-CV-923 SVW (RAOx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ALL CAUSES OF ACTION IN COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:       April 16, 2018<br>Time:       1:30 p.m.<br>Location:   Courtroom 10A<br>Judge:      Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

Table of Authorities.................................................................................................ii

Preliminary Statement ........................................................................................... 1

Applicable Legal Standards ................................................................................... 4

Allegations and Background ................................................................................... 5

     A.    In 2011, *The Fix* reviews Passages ............................................... 5

     B.    In 2012, *The Fix* reviews Cliffside Malibu ...................................... 7

     C.    In 2013, Sober Media buys *The Fix* out of bankruptcy ........................... 7

     D.    In 2016, Grasshopper agrees to a Passages re-review
         but never returns surveys .................................................................... 8

     E.    In 2017, *The Verge* writes about *The Fix*'s ownership ......................... 9

     F.    In 2018, Grasshopper files this lawsuit ................................................. 9

Argument ............................................................................................................ 10

I.    The First (Lanham Act) Cause Of Action Should Be Dismissed
    For Failure To State A Claim ...................................................................... 10

     A.    Grasshopper's allegations regarding *The Fix*'s
         2011 Passages Review do not state a Lanham Act claim ..................... 10

     B.    Grasshopper's allegations regarding *The Fix*'s
         2012 Cliffside Review do not state a Lanham Act claim ..................... 12

     C.    Grasshopper's allegations that *The Fix* maintained the 2011-12
         Reviews after being sold do not state a Lanham Act claim .................. 14

     D.    Grasshopper's allegations regarding *The Fix*'s
         "review process statements" do not state a Lanham Act claim ............. 15

     E.    Grasshopper's allegation that Defendants failed to disclose
         common ownership does not state a Lanham Act claim ....................... 18

II.    The Remaining (State-law) Causes Of Action Should Be Dismissed
    For Failure To State A Claim ...................................................................... 19

III.   At A Minimum, All Claims Brought Against Cliffside and Mr. Taite
    Should Be Dismissed ................................................................................. 21

     A.    The allegation against Cliffside and Mr. Taite
         do not satisfy Rule 9(b) ..................................................................... 21

     B.    The allegations against Cliffside and Mr. Taite
         do not establish civil conspiracy or agency .................................... 22

Conclusion .......................................................................................................... 24

i

S T R I S | 725 S. FIGUEROA ST., STE. 1830
M A H E R | LOS ANGELES, CA 90017

# TABLE OF AUTHORITIES

**Cases:**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
    260 F. Supp. 2d 941 (N.D. Cal. 2003).................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................4

*Aviation Charter, Inc. v. Aviation Research Grp./US*,
    416 F.3d 864 (8th Cir. 2005) ...............................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................4

*Belli v. Roberts Bros. Furs*,
    49 Cal. Rptr. 625 (Cal. Dist. Ct. App. 1966) ......................................13

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ...................................................................4

*Browne v. Avvo Inc.*,
    525 F. Supp. 2d 1249 (W.D. Wash. Dec. 18, 2007)............................14

*Castle Rock Remodeling, LLC v. Better Bus. Bureau
    of Greater St. Louis, Inc.*, 354 S.W.3d 234 (Mo. Ct. App. 2011)....................15

*Christoff v. Nestlé USA, Inc.*,
    213 P.3d 132 (Cal. 2009).......................................................................20

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ................................................................11

*Donini Int'l, S.P.A. v. Satec (USA) LLC*,
    No. 03-CV-9471, 2004 WL 1574645 (S.D.N.Y. July 13, 2004) ...............12, 23

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012)..................................................20

*Erlich v. Etner*,
    36 Cal. Rptr. 256 (Cal. Dist. Ct. App. 1964) ......................................20

*Hoffman v. Capital Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 1991)...............................................................16

*Hofmann Co. v. E.I. du Pont de Nemours & Co.*,
    248 Cal. Rptr. 384 (Ct. App. 1988) ......................................................19

*In re Motors Liquidation Co.*,
    568 B.R. 217 (S.D.N.Y. Bankr. 2017) .................................................14

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
    304 F.3d 829 (9th Cir. 2002) ................................................................13

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

**Cases—continued:**

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
  114 F. Supp. 3d 852 (N.D. Cal. 2015) ................................................................ 20

*Lamothe v. Atl. Recording Corp.*,
  847 F.2d 1403 (9th Cir. 1988) ........................................................................... 18

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) ............................................................................. 16

*McGraw Co. v. Aegis Gen. Ins. Agency, Inc.*,
  No. 16-CV-00274 (N.D. Cal. July 13, 2016) .................................................... 21

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ............................................................................................... 11

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
  No. 15-CV-00954, 2015 WL 12765467 (C.D. Cal. Sept. 21, 2015) ................. 18

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) ............................................................................... 4

*Register.com, Inc. v. Domain Registry of Am., Inc.*,
  No. 02-CV-6915, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002) ................... 18

*Roberts v. McAfee, Inc.*,
  660 F.3d 1156 (9th Cir. 2011) ........................................................................... 13

*RPost Holdings, Inc. v. Trustifi Corp.*,
  No. 11-CV-02118, 2011 WL 4802372 (C.D. Cal. Oct. 11, 2011) .............. 21, 23

*Shores v. Chip Steak Co.*,
  279 P.2d 595 (Cal. Dist. Ct. App. 1955) ........................................................... 19

*Skydive Arizona, Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ...................................................................... 16, 17

*Sonora Diamond Corp. v. Superior Court*,
  99 Cal. Rptr. 2d 824 (Cal. Ct. App. 2000) ........................................................ 23

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................... 4

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................................. 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ............................................................................................. 4

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
  862 F. Supp. 2d 1009 (N.D. Cal. 2012) ............................................................ 21

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................. 4, 21, 22

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

iii

**Cases—continued:**

*Virginia State Bd. of Pharmacy v. Virginia Citizens*
*Consumer Council, Inc.,*
425 U.S. 748 (1976) .................................................................................. 16

*Walter & Zanger, Inc. v. Paragon Indus., Inc.,*
549 F. Supp. 2d 1168 (N.D. Cal. 2007) ................................................... 20

*Wasco Prods., Inc. v. Southwall Techs., Inc.,*
435 F.3d 989 (9th Cir. 2006) .................................................................. 23

*Wilson v. Hewlett-Packard Co.,*
668 F.3d 1136 (9th Cir. 2012) ................................................................ 20

*Yaeger v. Bowlin,*
693 F.3d 1076 (9th Cir. 2012) ................................................................ 13

*ZL Techs., Inc. v. Gartner, Inc.,*
709 F. Supp. 2d 789 (N.D. Cal. 2010) .................................................... 14

*ZL Techs., Inc. v. Gartner, Inc.,*
No. 09-CV-02393, 2009 WL 3706821 (N.D. Cal. Nov. 4, 2009) ............ 17


**Constitution:**

U.S. Const. amend. I ................................................................................... 11, 12


**Statutes, rules, and regulations:**

Lanham Act,
15 U.S.C. § 1051 *et seq.* .................................................................... *passim*

15 U.S.C. § 1125(a)(1)(B) ....................................................................... 16

Cal. Code Civ. P. § 338 ............................................................................ 13

Cal. Code Civ. P. § 340(c) ........................................................................ 20

Fed. R. Civ. P. 8(a)(2) .............................................................................. 22

Fed. R. Civ. P. 9(b) .................................................................... 4, 21, 22, 23

Fed. R. Civ. P. 12(b)(6) ....................................................................... 4, 19

Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 .............................................................. 20

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

**Miscellaneous:**

Cal. Civ. Jury Instructions § 1700 ............................................................ 19

Cal. Civ. Jury Instructions § 1703 ............................................................ 19

Cal. Civ. Jury Instructions § 1704 ............................................................ 19

Cal. Civ. Jury Instructions § 1731 ............................................................ 19

Cat Ferguson, *Review Sites Have Deep Ties to Rehabs They Promote*,
The Verge (Nov. 3, 2017) ........................................................................ 3

Jeremy Peters, *A New Site Intended to Serve People in Recovery*,
N.Y. Times (Mar. 27, 2011) ..................................................................... 1

Mark Groubert, *Addiction: Buying the Cure at Passages Malibu*,
L.A. Weekly (June 25, 2008)............................................................ 1, 5, 7

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

v

Defendants Clean & Sober Media LLC ("Sober Media"), Cliffside Malibu ("Cliffside"), and Richard L. Taite submit this memorandum in support of their motion to dismiss the Complaint filed by Grasshopper House, LLC ("Grasshopper"). Defendants have concurrently filed a Special Motion to Strike ("Anti-SLAPP Motion") that seeks to strike all state-law claims.

## PRELIMINARY STATEMENT

Grasshopper owns Passages Malibu ("Passages")—a luxury addiction treatment facility. Compl. ¶ 6. Passages is run by Chris and Pax Prentiss, a wealthy father and son who claim to have found the "cure" to addiction. In its 2008 exposé on Passages, the *L.A. Weekly* wryly observed:

> The Prentisses are the Holocaust deniers of the addiction-recovery industry. They deny the existence of addiction. They deny the existence of alcoholism. They deny that it is a disease, or that it is incurable.

Request for Judicial Notice (RJN) Ex. E at 4 (Mark Groubert, *Addiction: Buying the Cure at Passages Malibu*, L.A. Weekly (June 25, 2008)).[1]

This action involves one of Passages' many critics—a website called *The Fix*, created by media veteran Maer Roshan. RJN Ex. E at 35 (Jeremy Peters, *A New Site Intended to Serve People in Recovery*, N.Y. Times (Mar. 27, 2011) ("TheFix.com, a Web site that combines feature writing, news, video and Zagat-like reviews of rehab facilities, will go live on Monday. It is the latest endeavor for Mr. Roshan, who became a fixture in New York media as an editor for Talk and New York Magazine.")).

In 2011, *The Fix* published a review of Passages. Compl. ¶ 20. It lauded Passages' amenities but lambasted its "Addiction Cure." RJN Ex. A at 5-6 (2011 Passages review retrieved from Internet Archive's Wayback Machine ("IAWB")). Its text drew extensively from the 2008 *L.A. Weekly* exposé. *See infra* pp. 6-7. And it

---

[1] As explained in the attached RJN, this Court may consider the exhibits referenced herein on incorporation by reference and judicial notice grounds.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

included star ratings for food (5/5), accommodations (5/5), treatment (1/5), and overall (1/5, upgraded soon after to 2/5). RJN Ex. A at 2, 5.

In 2012, *The Fix* published a review of Passages' competitor, Cliffside Malibu, a facility operated by Defendant Cliffside. RJN Ex. A at 13-15 (2012 review retrieved from IAWB); Compl. ¶ 15. The Cliffside Malibu review included star ratings for food (4/5), accommodations (5/5), treatment (4/5) and overall (4/5). RJN Ex. A at 13-15.

Grasshopper has never claimed that any factual statement in either review is untrue. Nor could it. The facts contained in these reviews are accurate. Passages' refusal to even admit that alcoholism is a disease, and its widely-ridiculed claim to be able to "cure" lifelong addictions, is ample reason for the one-star rating given to its "treatment" of these illnesses.

In 2013, *The Fix* was purchased out of bankruptcy by Defendant Sober Media. Compl. ¶ 14. After that sale, *The Fix* maintained pre-existing content, including the 2011-12 reviews of Passages and Cliffside. *Id.* ¶¶ 16, 26.

In mid-2016, Grasshopper and *The Fix*'s Editor-in-Chief, Allison McCabe, exchanged emails. Compl. ¶ 21; RJN Ex. B (emails). Grasshopper demanded the 2011 Passages review be removed for non-compliance "with the Fix's own processes." RJN Ex. B at 4 ("No one ever contacted Passages or gave them a survey to pass out to their alumni."). In response, Ms. McCabe explained *The Fix*'s hosting of pre-acquisition reviews. *Id.* at 2. Regarding the alleged failure to interview Passages in 2011 or to distribute alumni surveys through the Prentisses, Ms. McCabe noted that "[u]nder prior management, the review process may have been different, but that does not mean there is anything wrong with the earlier reviews. They are all comprehensive and thorough, and we believe that to be the case about the review of Passages Malibu. If there is something specific you believe is incorrect, please let me know." *Id.*

Ms. McCabe also offered to initiate the re-review process for Passages. RJN Ex. B at 2-3 ("If you decide to participate, participation is free, you'll get a survey link to give to your alumni, and we will move promptly to prepare and post a new review

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

2

using their survey responses."). Grasshopper accepted. *Id.* at 6-7. Ms. McCabe provided a survey link for Grasshopper to give to its chosen Passages alumni. *Id.* at 8. But even after repeated apologies—including a vacation, pneumonia, and a "busy" year—Grasshopper never delivered the promised surveys. *Id.* at 17, 19, 21.

In November of 2017, a website called *The Verge* reported that Sober Media and Cliffside are both owned by Mr. Taite. RJN Ex. C at 1 (Cat Ferguson, *Review Sites Have Deep Ties to Rehabs They Promote*, The Verge (Nov. 3, 2017)). It noted that "the connections between the rehabs [such as Cliffside] and the sites are relatively well-known within the industry . . . ." *Id.* at 3. It nonetheless bemoaned *The Fix*'s failure to disclose the common ownership connection, which it correctly observed was a widespread industry practice. *Id.* at 1-9.[2]

Months later, Grasshopper filed this lawsuit. In it, Grasshopper accuses Defendants of false advertising, trade libel, and unfair competition. As explained below, Grasshopper's claims fail as a matter of law. That is hardly surprising because they fail as a matter of common sense:

The Bates Motel could not sue TripAdvisor for writing: "Cheap, good motel—except for the stabbings. Value (5/5 stars), Safety (1/5 stars), Overall (2/5 stars)." It wouldn't matter if TripAdvisor gave a nearby Best Western higher star ratings. It wouldn't matter if, years later, TripAdvisor went bankrupt and was purchased by the largest shareholder of Best Western. And the reason is obvious. The reviews say nothing false and their opinions are protected speech.

So too here. Dismissal is warranted.

---

[2]   As explained in the contemporaneously filed Anti-SLAPP Motion, Grasshopper itself owns several websites that promote its treatment facilities without disclosing ownership or affiliation. *See* Anti-SLAPP Motion at 23-24. Unlike *The Fix*, however, Grasshopper's websites are designed to mislead consumers about the source of their content. For example, https://www.baltimorehealth.org is designed to look like a resource produced by the City of Baltimore. *Id.*

## APPLICABLE LEGAL STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Courts "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Courts may properly consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts also may consider a document if it "is integral to the plaintiff's claims and its authenticity is not disputed," even if the plaintiff does not attach that document or reference it in the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n.4 (9th Cir. 1998); *Branch v. Tunnell*, 14 F.3d 449, 454-55 (9th Cir. 1994).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, under Rule 9(b), "averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). When a claim "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107.

STRIS | 725 S. FIGUEROA ST., STE 1830
MAHER | LOS ANGELES, CA 90017

## ALLEGATIONS AND BACKGROUND

This section briefly summarizes the material allegations in the Complaint. It also identifies allegations that are implausible or contradicted by facts the Court may consider at this stage. As explained in the RJN, the Court may take notice of Exhibits A-E in determining whether the causes of action alleged in the Complaint fail to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    In 2011, *The Fix* reviews Passages.

The events giving rise to this lawsuit began in 2011 when *The Fix* published a review of Passages on its website (the "2011 Passages Review"). According to the Complaint: "In March 2011, The Fix posted a review of Passages Malibu, giving the facility an 'Overall' rating of two and a half stars and a disparaging rating of a single star for 'Treatment.'" Compl. ¶ 20. Part of that allegation, however, is contradicted by publicly available materials properly subject to judicial notice. *See* RJN Ex. A at 2, 5.

The initial review of Passages Malibu on *The Fix* contained 916 words of facts and editorial copy. RJN Ex. A at 2-3. It then included an overall star rating and star ratings for three service components (accommodations, food, and treatment). *Id.* at 2. Passages received 5/5 stars for both accommodations and food, but 1/5 stars for treatment. *Id.* Contrary to Grasshopper's allegation in the Complaint, however, Passages was given *a 1-star rating in the overall category* by *The Fix*; a few months later, along with minor changes to the review itself, *The Fix* increased Passages' rating to 2 stars. *Compare id.* at 2, *with id.* at 5.[3] Passages did not receive a 2½-star overall rating until September 2014, *after* the purchase of *The Fix* by Sober Media. *Id.* at 9.

The 2011 Passages Review expressed opinions about each service component based on stated facts. Unsurprisingly, given the accompanying star ratings, the opinions expressed regarding accommodations and food were quite positive. And many of those facts came directly from the publicly available *L.A. Weekly* exposé:

---

[3]    For clarity's sake: the "2011 Passages Review" hereinafter refers to the revised version of the review and star rating. RJN Ex. A at 5-6.

S T R I S    725 S. FIGUEROA ST., STE 1830
M A H E R    LOS ANGELES, CA 90017

5

Indeed, when it comes to amenities, everyone agrees that Passages is "truly top shelf." Upon entry, every resident is assigned an assistant, who tends to their complaints or needs. A highly-lauded chef prepares nutritious, delicious meals that cater to every patient's exact specifications. And the surroundings are breathtaking—the $23 million mansion sits on 10 acres of a cliff that overlooks the Pacific and contains a state-of-the-art gym and koi pond, among other treasures.

*Compare id.* at 6, *with*, *e.g.*, RJN Ex. E at 2-3 (describing Passages' $23 million mansion, high-tech gym, koi pond, and provision of a personal assistant to every client). Equally unsurprising, given the accompanying star rating, the opinions expressed about Passages' treatment were quite negative:

Neither of the Prentisses have bothered to seek degrees in the field of addiction treatment, but their best-selling book reduces the road to lifelong sobriety to three simple steps: 1) believe in a cure, 2) discover and heal your inner problems, and 3) embrace a philosophy based on universal truth. (It also doesn't hurt if you're able to pony up nearly $100,000 a month.)

Though Passages widely advertises [its] alleged 80% "cure rate," several former clients and ex-employees energetically dispute that number. . . [O]ne in-the-know employee estimates the Center's success rate at closer to 10%. So Prentiss's insistence that he has discovered the "cure" for addiction—and the volley of late-night TV ads promoting that claim—has outraged many colleagues in the recovery industry. . . . Not that the Prentisses much care. . . . Their much-maligned "Addiction Cure" book reportedly earns them extra millions of dollars a year. Whenever they're on the premises, father and son both park their matching fire-engine red Porsches side-by-side on Passage's winding driveway. Which pretty much sums up the rap on the place.

STRIS | 725 S. FIGUEROA ST, STE 1830
MAHER | LOS ANGELES, CA 90017

RJN Ex. A at 6. Many of these factual statements again track the *L.A. Weekly* exposé. *Compare* RJN Ex. A at 6, *with*, *e.g.*, RJN Ex. E at 4 (discussing Passages' 80% success rate claim), *and id.* at 19 (quoting insider claim that Passages' success rate "do[es] not come anywhere near" 80%), *and id.* at 21 (observing Chris Prentiss does not have any medical training).

The Complaint alleges that Grasshopper disliked and repeatedly complained about the review. Compl. ¶¶ 20, 23. But to be clear: Grasshopper has never alleged that *any* factual statement in the 2011 Passages Review is false or misleading.

### B.   In 2012, *The Fix* reviews Cliffside Malibu.

In 2012, *The Fix* published a review of Cliffside Malibu that consisted of 674 words of facts and editorial copy (the "2012 Cliffside Review"). RJN Ex. A at 13-14. It included star ratings for food (4/5), accommodations (5/5), treatment (4/5) and overall (4/5). *Id.* at 13. The Complaint contains numerous references to the 2012 Cliffside Review. *See, e.g.*, Compl. ¶ 15. But, again, Grasshopper has never alleged that *any* factual statement in the 2012 Cliffside Review is false or misleading, nor could it. Like any other publication (e.g., *The Washington Post*), *The Fix* was and is permitted to state its opinion about other businesses.

### C.   In 2013, Sober Media buys *The Fix* out of bankruptcy.

In 2013, Recovery Media filed for bankruptcy, through which *The Fix* was sold to Defendant Sober Media. Compl. ¶ 14. After the sale, *The Fix* maintained pre-existing content including the 2011 Passages Review and the 2012 Cliffside Review. *See id.* ¶ 16 (alleging that, after the sale to Sober Media, the Cliffside "review itself remained word-for-word identical"); *id.* ¶ 26 (alleging that Defendants "maintain[ed] the review of Passages Malibu").

The star ratings of both facilities also remained except for three *increases*. Cliffside's treatment and overall ratings were each raised from 4 to 5 stars. Compl. ¶ 16. And notwithstanding its groundless allegation to the contrary, Passages' overall

rating was *raised* from 2 to 2½ stars. *Compare* Compl. ¶ 20, *with* RJN Ex. A at 6, 10 (showing that Passages' overall rating increased to 2½ stars in September 2014).

### D.   In 2016, Grasshopper agrees to a Passages re-review but never returns surveys.

On June 8, Ms. McCabe—who had been told that Grasshopper was interested in a re-review of Passages—emailed Grasshopper to explain that process. RJN Ex. B at 1. *See also* Compl. ¶ 21 (referencing July 2016 "email communications between Plaintiff and the Editor-in-Chief of The Fix."). On July 21, Grasshopper replied with a threat to sue if the 2011 Passages Review was not removed within two weeks. RJN Ex. B at 4. Grasshopper did not assert that anything in the 2011 Passages Review was false or misleading. Instead, Passages insisted that this Review did not comply with *The Fix*'s internal processes for compiling reviews. *Id.*; *see also* Compl. ¶ 21.

In response, Ms. McCabe wrote a detailed email explaining *The Fix*'s hosting pre-acquisition reviews in the absence of something more current:

> When new management took over after the bankruptcy, we kept the prior reviews up. That's what we do unless we have something more current to replace them with, which is where the re-review process comes in. It is fair and quick, with facilities selecting the alumni to whom surveys are sent. . . . If you decide to participate, participation is free, you'll get a survey link to give to your alumni, and we will move promptly to prepare and post a new review using their survey responses.

RJN Ex. B at 2.

Shortly after Ms. McCabe's email, Grasshopper agreed to engage in the re-review process. RJN Ex. B at 6-7. Ms. McCabe asked Grasshopper to send the survey to Passages alumni. *Id.* at 14. But even after repeated apologies, promises, and excuses—including a vacation, pneumonia, and a "busy" year—Grasshopper never delivered the survey. *Id.* at 17, 19, 21.

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

8

### E.     In 2017, *The Verge* writes about *The Fix*'s ownership.

In November of 2017, *The Verge* published an article entitled *Review Sites Have Deep Ties to Rehabs They Promote*. Compl. ¶ 17; RJN Ex. C. The article reported that Sober Media and Cliffside are both owned by Mr. Taite. RJN Ex. C at 1. It also noted that this fact was "well-known in the industry" and that the practice of overlapping ownership was common amongst numerous other rehab centers. *Id.* at 2.[4]

### F.     In 2018, Grasshopper files this lawsuit.

Grasshopper filed this action several months thereafter, in 2018. The Complaint accuses Defendants of false advertising, trade libel, and unfair competition. Because Grasshopper knows it cannot sue over the 2011 Passages Review or the 2012 Cliffside Review, or even allege that anything in these reviews is false, it predicates most of its claims on alleged misstatements about *The Fix*'s review *process*. Specifically, the 2011 Passages Review is purportedly inconsistent with the stated review policies and procedures on *The Fix* because it is not based "solely" on "five customer surveys." Compl. ¶¶ 19, 25(c). That allegation is squarely contradicted, however, by evidence that the Complaint cites and that this Court may consider.

*First*, the Complaint alleges that no Passages surveys exist. Compl. ¶¶ 21, 25(c). This claim is predicated on a purported admission by Ms. McCabe in email correspondence with Grasshopper. Compl. ¶ 21. But that admission never happened; it does not appear in a July 2016 email (as asserted in the Complaint) or anywhere else. Nor is the underlying assertion even close to true; the review *itself* discloses that at least five patients of Grasshopper were surveyed. RJN Ex. A at 6. Defendants invite the Court to review the handful of emails between Ms. McCabe and Grasshopper, *id.* Ex. B, alongside the survey results quoted in the review, *id.* Ex. A at 6.

---

[4]     As explained in the contemporaneously filed Anti-SLAPP Motion, Grasshopper itself owns at least five websites that give the impression they are published by trusted institutions, but in fact exist to promote Passages. *See* Anti-SLAPP Motion at 23-24 (describing unclean hands defense).

S T R I S |  725 S. FIGUEROA ST., STE 1830
M A H E R |  LOS ANGELES, CA 90017

9

*Second*, the Complaint mischaracterizes the very policies and procedures that it quotes. Contrary to Grasshopper's theory, the stated practice *is not* to base reviews "solely" on "five customer surveys." *Cf.* Compl. ¶¶ 19, 25. As Grasshopper admits, *The Fix* in fact disclosed the following about its process:

> For each of the above metrics - accommodations, food, and treatment - we then rate each center on a five-star scale, based on the alumni's chosen star ratings and comments. The overall rating for the particular center being reviewed is created based on the three component star ratings, client comments, *and other information* obtained through the survey process.

*Id.* ¶ 18 (emphasis added). This language makes clear that the process involves collecting *other information* in addition to star ratings and client comments. And nowhere does it state that reviews are based "solely" on survey results.

## ARGUMENT

## I.     The First (Lanham Act) Cause Of Action Should Be Dismissed For Failure To State A Claim.

### A.     Grasshopper's allegations regarding *The Fix*'s 2011 Passages Review do not state a Lanham Act claim.

The Complaint repeatedly mentions the 2011 Passages Review. But that review cannot serve as the basis for a Lanham Act claim for two simple reasons.

1.     As an initial matter, Grasshopper does not allege that any Defendant was involved in the creation of the 2011 Passages Review. Nor could it. The Complaint acknowledges that the review was published in March of 2011, Compl. ¶ 14, and that Recovery Media owned and operated *The Fix* until it was sold in bankruptcy in October 2013, *id.* ¶¶ 14, 15. Because none of the Defendants wrote or published the 2011 Passages Review, that review cannot possibly subject any of the Defendants to liability under the Lanham Act.

2.     In any event, nothing in the 2011 Passages Review violates the Lanham Act. Grasshopper does not and cannot allege that the review contains any false or

S T R I S
M A H E R | 725 S. FIGUEROA ST, STE 1830 | LOS ANGELES, CA 90017

misleading statement of fact. And opinions in the review, including Passages' star ratings, are categorically protected by the First Amendment.

Like most editorial content, the 2011 Passages Review contains factual representations. For example, it includes statements such as:

- "Neither of the Prentisses have bothered to seek degrees in the field of addiction treatment,"

- "Passages widely advertises it's [sic] alleged 80% 'cure rate,'" and

- "Prentiss's insistence that he has discovered the "cure" for addiction . . . has outraged many colleagues in the recovery industry."

RJN Ex. A at 6. But Grasshopper has never identified any factual statement in the 2011 Passages Review, including these, as false or misleading. Nor could it. These facts are not only entirely true, but widely reported.

Grasshopper's beef with the 2011 Passages Review is over the star rating—particularly the 1/5 stars awarded for "Treatment." Compl. ¶¶ 20, 39. But it is black-letter law that non-provable opinions (i.e., statements of subjective belief based on true facts) are categorically protected by the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (using the example: "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin."). And star ratings on *The Fix* are a paradigmatic example of non-provable opinions. If declaring a movie or cheeseburger is "great—five stars" or "poor—one star" is protected by the First Amendment (which no one would deny), so is a similar declaration about a luxury rehabilitation treatment program.

Put simply, opinions such as those here can never support a claim for false advertising under the Lanham Act. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statements not "capable of being proved false or of being reasonably interpreted as a statement of objective fact" cannot give rise to Lanham Act liability); *Donini Int'l, S.P.A. v. Satec (USA) LLC*, No. 03-CV-9471,

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

2004 WL 1574645, at *4 (S.D.N.Y July 13, 2004) (critical articles in trade magazine not commercial speech under Lanham Act).

**B.** **Grasshopper's allegations regarding *The Fix*'s 2012 Cliffside Review do not state a Lanham Act claim.**

The Complaint also repeatedly mentions the 2012 Cliffside Review. But, again, nothing in that review could violate the Lanham Act. Grasshopper does not and cannot allege that any factual statement in the 2012 Cliffside Review is false or misleading. And as explained above, the review's opinions (including its star ratings) are categorically protected by the First Amendment.

Grasshopper does allege, however, that the Cliffside Review was "'native advertising' purchased or produced by Defendants." Compl. ¶ 4. But that spurious allegation cannot serve as the basis for a Lanham Act claim for two reasons.

1.    First, the allegation fails to satisfy basic pleading standards. It finds no support and is contradicted by the very documents on which it purports to be based.

Grasshopper predicates this baseless allegation entirely on something having been revealed in Recovery Media's bankruptcy filings:

> Upon information and belief, *based on Recovery Media's bankruptcy filings*, Defendants and Recovery Media had a preexisting commercial relationship under which The Fix was paid to advertise Cliffside Malibu. In return for money, the Fix gave Cliffside Malibu a solid review and a four-star (out of five) 'Overall' rating.

Compl. ¶ 15 (emphasis added).

Accordingly, Defendants' counsel reviewed every filing in that bankruptcy proceeding and found only one reference to Cliffside. Declaration of Victor O'Connell ¶ 3. Far from revealing a conspiracy to purchase a review, however, the bankruptcy filings merely disclose that Cliffside paid Recovery Media for "internet advertising services for the period of May 1, 2013 through March 1, 2014." RJN Ex. D at 16, 31 (bankruptcy petition). Nothing about this is even remotely suspicious. Indeed, the same

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

12

filings disclose that many other substance abuse treatment providers also paid for "internet advertising services." *Id.* at 16, 31-32. And, in any event, the filings say nothing about any relationship *during 2012*, when the Cliffside Review was published.

The bottom line is this: companies regularly advertise in media that write about subjects of interest to their prospective customers. The fact that rehabilitation centers buy advertising on a popular website about addiction treatment is not evidence of a conspiracy, a tort, or even a scandal. And, thus, Grasshopper's only real allegation— i.e., that rehabilitation centers paid to advertise on *The Fix*—does not plausibly suggest, in any way, that reviews of those centers are somehow false or "native."

2.    Even if the Complaint's "advertisers pay to write their own reviews" allegation were accepted as true, however, Grasshopper would still fail to state a claim. That is because any Lanham Act claim predicated on such an allegation in this case would be procedurally barred twice over:

***Statute of limitations.*** The Lanham Act borrows the state limitations period as a statute of limitations defense, and the most analogous limitations period is the three-year period for fraud. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836, 838 (9th Cir. 2002); Cal. Code Civ. P. § 338. The statute runs upon initial publication of the actionable statement. *Yaeger v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012) (citing *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166-67 (9th Cir. 2011)).

The review characterized by Grasshopper as "native" was published in 2012, so the limitations period expired in 2015. And Grasshopper cannot escape the three-year statute by arguing that Sober Media later "maintain[ed]" the review on the website. *Cf.* Compl. ¶¶ 26, 40. It is well settled that there is a "single publication" of mass communications that occurs on the "first general distribution of the publication to the public." *Belli v. Roberts Bros. Furs*, 49 Cal. Rptr. 625, 629 (Cal. Dist. Ct. App. 1966). The rule applies here. *See Yaeger*, 693 F.3d at 1081; *Roberts*, 660 F.3d at 1167.[5]

---

[5]    For the same reasons, any claim arising from the 2011 Passages Review would also be time-barred.

13

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

***Bankruptcy.*** Sober Media bought *The Fix* "free and clear" of successor liability pursuant to a competitive bankruptcy sale under 11 U.S.C. § 363(f). RJN Ex. D at 59-60 (listing potential purchasers); *id.* Ex. E (order authorizing section 363(f) sale). The sale bars any claims resulting from pre-petition conduct fairly giving rise to those claims, including those arising from the 2011 Passages Review and 2012 Cliffside Review. *See In re Motors Liquidation Co.*, 568 B.R. 217, 230 (S.D.N.Y. Bankr. 2017).

### C. Grasshopper's allegations that *The Fix* maintained the 2011-12 Reviews after being sold do not state a Lanham Act claim.

Grasshopper also appears to allege that Defendants violated the Lanham Act by maintaining the 2011-12 Reviews unchanged but increasing Cliffside Malibu's star rating. *See* Compl. ¶¶ 16, 26. But that is not actionable for the same reasons discussed above. No factual statements in the initial reviews were false or misleading, and Grasshopper does not plead otherwise. *Id.* Nor does Grasshopper allege that the reviews *changed* after the acquisition. Compl. ¶¶ 16, 26. So as to statements of fact in the reviews, there is no cognizable Lanham Act claim.

Grasshopper complains about post-2013 star ratings which, it claims, were increased for Cliffside but not Passages.[6] But, again, as again explained above: such opinions are not actionable. Indeed, courts routinely hold that grading and rating systems are opinions, not provably false statements of fact. *See, e.g.*, *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 870 (8th Cir. 2005) (system that rated air charter service providers "on a scale of 1 [to] 10" based on safety and other data was "ultimately a subjective assessment not an objectively verifiable fact"); *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 796-801 (N.D. Cal. 2010) ("Niche Player" designation was subjective opinion); *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1252 (W.D. Wash. Dec. 18, 2007) (comparative numerical ratings for attorneys nonactionable because "a reasonable person would understand that two people looking

---

[6]   That is wrong—Passages' star rating also went up, *see* RJN Ex. A at 6, 10. But for purposes of this argument, the Complaint's factual misstatement does not matter.

14

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

at the same underlying data could come up with vastly different ratings"); *Castle Rock Remodeling, LLC v. Better Bus. Bureau of Greater St. Louis, Inc.*, 354 S.W.3d 234, 243 (Mo. Ct. App. 2011) ("C" rating "not sufficiently factual to be susceptible of being true or false," and "[a]lthough one may disagree with BBB's evaluation of the underlying objective facts, the rating itself cannot be proved true or false").

**D. Grasshopper's allegations regarding *The Fix*'s "review process statements" do not state a Lanham Act claim.**

Grasshopper next attempts to make hay about the *process* used by *The Fix* to generate its reviews and ratings. According to Grasshopper, Defendants violated the Lanham Act by including misleading statements about that process. As with others before, these allegations fail to state a Lanham Act claim for two reasons:

1.    As an initial matter, the statements identified by Grasshopper about review process are neither false nor misleading. For example:

Grasshopper alleges that it learned, through an admission by *The Fix*'s Editor-in-Chief in July 2016 emails, that no surveys exist for pre-2013 reviews. Compl. ¶ 21. *See also* Compl. ¶ 25(c). But that allegation cannot be reconciled with the emails themselves. RJN Ex. B. Because the purported admission does not exist, this allegation is implausible and need not be accepted as true. It is also belied by the reviews themselves, which contain statements from multiple Passages and Cliffside patients. RJN Ex. A at 5-6, 13-14.

Grasshopper also claims that *The Fix* falsely promises that the opinions set forth in all reviews are based "solely" on "five" surveys. Compl. ¶¶ 19-21. But as explained above (*supra* p. 10), the disclosures on *The Fix* made clear that the reviews are *not* solely the aggregation of star ratings and client comments, but also consider "*other information* obtained through the survey process." Compl. ¶ 18 (emphasis added). Indeed, the reviews *on their face* discuss things that would not have come from client ratings or comments, but rather other publicly available sources that came to *The Fix*'s attention during the survey process—from details like a facility's address or physical

15

S T R I S \| 725 S. FIGUEROA ST., STE 1830
M A H E R \| LOS ANGELES, CA 90017

surroundings, to broad observations about the facility's reputation in the industry. RJN Ex. A at 5-6. Of course, *The Fix* course incorporated this "other information" into its review process, like *any* responsible publication would. Grasshopper's suggestion that *The Fix* purported to blind itself to anything outside the narrow confines of the surveys themselves is unreasonable and implausible.

2.      Even if Grasshopper could identify some false or misleading statement on *The Fix* about its review process, it would fail to state a Lanham Act claim. Such "review process" statements are neither (1) commercial advertising, nor (2) material. *See* 15 U.S.C. § 1125(a)(1)(B) (creating civil action for misleading statements "in commercial advertising or promotion" by person "likely to be damaged by such act").

***Not commercial advertising.*** Assuming that an individual review on *The Fix* would qualify as commercial advertising, statements about the *review process* cannot. "Review process statements" are not made by *The Fix* to propose a commercial transaction of any kind. As such, they do not trigger the Lanham Act. 15 U.S.C. § 1125(a)(1)(B) (imposing liability on "any person who . . . in commercial advertising or promotion . . . ."). Nor could they without presenting grave First Amendment concerns. *See, e.g.*, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) ("If speech is not 'purely commercial'—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection."); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 1991) (use of image not pure commercial speech where not "merely for the purpose of selling a particular product"); *see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (commercial speech does "no more than propose a commercial transaction.").

***Immateriality.*** The Lanham Act requires that any misleading statement be material to be actionable. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). That requirement is designed to prevent opportunistic litigants from using marginal descriptive errors to ruin their competitors. And here, Grasshopper

16

cannot plausibly allege that any consumer would have made a different "purchasing decision," *id.*, had it known that *The Fix* (as implausibly alleged) used fewer than five surveys to create the Passages or Cliffside Reviews.

*The Fix* specified the process for generating a star rating: opinion. It disclosed that such opinions could be based on both alumni survey responses and other information. What it did *not* do, however, was specify the weight to be given each of those two components. That makes sense: the weight appropriate for any given survey in relation to other information will vary. A surface-level read of the Passages or Cliffside reviews confirms as much. No one could possibly have believed the reviews and ratings on *The Fix* were a simple aggregation of alumni survey results, rendered useless by any sample size smaller than five. *Cf. ZL Techs., Inc. v. Gartner, Inc.*, No. 09-CV-02393, 2009 WL 3706821, at *9 (N.D. Cal. Nov. 4, 2009) (weight applied to various factors in preparing review was not a fact that could be proved true or false, and therefore was an opinion).

Nor, given the unchallenged facts and opinions in the reviews *themselves*, could any minor deviation from the review *process* have been what "influence[d] the purchasing decision" of any customer. *Skydive Arizona*, 673 F.3d at 1110. Indeed, it is plain from the Complaint that the reviews are what Grasshopper really takes issue with. Those reviews reveal devastating facts and an equally negative opinion about Passages, whereas they generally laud Cliffside as the superior facility. *That* is what would influence a customer's purchasing decision. It stretches belief far beyond the bounds of plausibility that any customer would have chosen differently had it known that *The Fix* used fewer than five surveys in creating those reviews.

At the end of the day, Grasshopper's own conduct put the lie to its claim that any alleged "process" misrepresentation was material. When offered the opportunity to hand-select Passages alumni to complete surveys upon which a new review would be created and published, Passages failed to follow through. RJN Ex. B at 17, 19, 21.

STRIS | 725 S. FIGUEROA ST., STE 1830
MAHER | LOS ANGELES, CA 90017

### E.     Grasshopper's allegation that Defendants failed to disclose common ownership does not state a Lanham Act claim.

Star ratings are protected opinion, none of the facts in the reviews at issue was or is false, and nothing about the ratings process was misrepresented or could give rise to a Lanham Act claim. Grasshopper is thus left with a theory of false advertising by omission: it alleges that because Sober Media did not disclose that it and Cliffside shared common ownership, *The Fix*'s reviews are actionable. Not so.

"A simple failure to disclose is not a violation of the Lanham Act because the absence of any statement is neither 'false' nor a 'representation.'" *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, No. 15-CV-00954, 2015 WL 12765467, at *7 (C.D. Cal. Sept. 21, 2015) (dismissing Lanham Act claim premised on failure to disclose common ownership). Only where that failure renders some other *affirmative* statement false or misleading is it actionable. *Compare Register.com, Inc. v. Domain Registry of Am., Inc.*, No. 02-CV-6915, 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (rejecting Lanham Act claim premised on failure to disclose common ownership where nondisclosure did not alter the character of any affirmative representation), *with Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1407 (9th Cir. 1988) (denying motion to dismiss Lanham Act claim premised on partial but incomplete disclosure of authorship, where incomplete disclosure deprived additional authors of recognition).

That rule is sensible. There is virtually always some piece of additional information that could affect how a reader consumes speech. The question, therefore, is not whether such additional information exists, but whether it makes other affirmative statements false or misleading. Otherwise the point of most speech would be lost in prophylactic fine print.

Here, Grasshopper does not allege *any* factual statements on *The Fix* that were rendered false or misleading by the failure to disclose the common ownership of Sober Media and Cliffside. That is fatal to its claim.

18

## II.    The Remaining (State-law) Causes Of Action Should Be Dismissed For Failure To State A Claim.

Grasshopper asserts three claims under state law: "trade libel per se," false advertising, and unfair competition. Compl. ¶¶ 1, 38-54. None of them states a claim.[7]

1.    Grasshopper does not state a claim for "trade libel" for three independent reasons.[8]

***First***, no Defendant has made a libelous statement. As explained above, (1) the offending reviews were published before Sober Media acquired *The Fix*, and (2) Grasshopper has identified no false factual statements; its claim improperly rests on non-provable opinions such as star ratings. *See Hofmann Co. v. E.I. du Pont de Nemours & Co.*, 248 Cal. Rptr. 384, 387 (Ct. App. 1988) ("If [Defendants'] statements about [Plaintiff] are opinions, the cause of action for trade libel must of course fail.").

***Second***, Grasshopper has not adequately alleged that it suffered direct financial harm. This requires "the loss of specific sales," meaning "the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." *Erlich v. Etner*, 36 Cal. Rptr.

---

[7]    Concurrently with this Rule 12(b)(6) motion, Defendants have filed a motion to strike Grasshopper's state law claims under California's anti-SLAPP statute (the "Anti-SLAPP Motion"). That motion explains in detail why (1) anti-SLAPP protections apply to the state law claims, and (2) each of those claims fails for inadequate pleading and lack of proof. The state law claims, accordingly, should be dismissed under the anti-SLAPP statute. If this Court concludes otherwise as to some or all of Grasshopper's state law claims, Defendants alternatively seek dismissal under Rule 12(b)(6), and hereby adopt by reference all arguments made in the Anti-SLAPP Motion regarding the failure of Grasshopper's state law counts to state a claim.

[8]    The Complaint labels this count "trade libel per se." Compl. ¶¶ 1, 38-45. But California does not recognize that tort—Grasshopper has conflated two others: libel per se and trade libel. *Compare* Cal. Civ. Jury Instructions §§ 1700, 1702, 1704 (elements of defamation *per se*), *with* Cal. Civ. Jury Instructions § 1731 (elements of trade libel). Grasshopper's allegations track the latter. *See* Compl. ¶¶ 1, 38-45; s*ee also Shores v. Chip Steak Co.*, 279 P.2d 595, 597 (Cal. Dist. Ct. App. 1955) ("The distinction between libel and trade libel is that the former concerns the person or reputation of the plaintiff and the latter relates to his goods."). Therefore, it could only be pursuing a trade libel claim.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

19

256, 259 (Cal. Dist. Ct. App. 1964). Grasshopper has done nothing of the sort—only alleging (vaguely and fantastically) that it lost "$50 million in revenue." Compl. ¶ 44. That is patently insufficient.

*Finally*, given that the allegedly libelous statements were published in 2011, Grasshopper's trade libel claim is time-barred by California's one-year statute of limitations. Cal. Code Civ. P. § 340(c); *see Christoff v. Nestlé USA, Inc.*, 213 P.3d 132, 137-38 (Cal. 2009) (California abides by a "single-publication rule," meaning the time to sue runs from the initial publication of a single mass communication).

2.    Grasshopper cannot state a claim for false advertising under California law. Such claims are "substantially congruent" with claims under the Lanham Act. *Walter & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007). Accordingly, for the same reasons the Lanham Act claim fails, so too does the California false advertising claim.

3.    Grasshopper fails to state a claim for "unlawful and fraudulent" conduct in violation of Section 17200 of the California Business and Professions Code (UCL). Compl. ¶ 53. As a threshold matter, Grasshopper lacks standing to sue under the UCL because it has not "allege[d] [its] own reliance on the alleged misrepresentations, rather than the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015) (collecting cases). Grasshopper's claim is that "readers of The Fix," *not Grasshopper itself*, relied on *The Fix*'s statements and nondisclosures. Compl. ¶ 53. That cannot form the basis of a UCL claim.

Nor has Grasshopper adequately alleged a UCL claim on the merits. Its "unlawful" prong claim fails because the violations upon which it is predicated—Lanham Act and false advertising, Compl. ¶ 53—fail. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). And its "fraudulent" prong claim fails because Grasshopper cannot, as it must, establish that Defendants' conduct would mislead "a reasonable consumer." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012). That test is the same under the UCL as it is under California's

20

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

false advertising law. *Id.* Thus, again, because the false advertising claim fails, the UCL claim does as well.

## III. At A Minimum, All Claims Brought Against Cliffside And Mr. Taite Should Be Dismissed.

As explained above, no Defendant is responsible for anything before 2013, when Recovery Media owned and operated *The Fix*. Grasshopper has also failed to adequately allege that Cliffside or Mr. Taite made any statements *after* Sober Media acquired *The Fix*. The Court should, therefore, dismiss Cliffside and Mr. Taite from this case for that independent reason.

### A. The allegations against Cliffside and Mr. Taite do not satisfy Rule 9(b).

The Court evaluates whether Grasshopper has stated a claim against Cliffside and Mr. Taite under Rule 9(b). *See* Fed. R. Civ. P. 9(b) (party alleging fraud must "state with particularity the circumstances constituting fraud"). The heightened pleading standard applies whenever plaintiff has alleged "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." *Vess*, 317 F.3d at 1103. False advertising claims are generally subject to Rule 9(b). *See, e.g.*, *RPost Holdings, Inc. v. Trustifi Corp.*, No. 11-CV-02118, 2011 WL 4802372, at *3 (C.D. Cal. Oct. 11, 2011). So are libel claims based on fraud. *McGraw Co. v. Aegis Gen. Ins. Agency, Inc.*, No. 16-CV-00274, 2016 WL 3745063, at *3 (N.D. Cal. July 13, 2016).

Grasshopper alleges that "Defendants" committed false advertising and libel based on a fraudulent scheme to promote Cliffside. Compl. ¶¶ 28-54. Moreover, the Complaint repeatedly and expressly invokes the language of fraud. *See, e.g.*, *id.* ¶¶ 17, 22, 53 (alleging "fraudulent concealment"); *id.* ¶ 36 (alleging "intent to deceive"). Such allegations more than suffice to trigger Rule 9(b). *TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017-18 (N.D. Cal. 2012) (false advertising claim alleging "generally that Defendants' conduct was 'committed willfully, maliciously and intentionally,'" was subject to the heightened pleading requirements of Rule 9(b)).

21

STRIS | 725 S. FIGUEROA ST, STE 1830
MAHER | LOS ANGELES, CA 90017

1    Grasshopper's allegations do not remotely satisfy Rule 9(b). Far from alleging

2    the "who, what, when, where, and how" of each Defendant's conduct, *Vess*, 317 F.3d

3    at 1106, the Complaint does not allege "who" spoke at all. Instead, it lumps all three

4    Defendants together. *See, e.g.*, Compl. ¶¶ 28-54. That is not a coincidence. As the

5    Complaint alleges, *Sober Media* "owns and operates" *The Fix. Id.* ¶ 7. Meanwhile,

6    Cliffside "operates a residential treatment center," and Mr. Taite is a person who owns

7    both businesses. *Id.* ¶¶ 8-9. Grasshopper does not and could not allege that either

8    Cliffside or Mr. Taite is a writer, editor, contributor, or publisher of *The Fix*. Nor does

9    Grasshopper allege that either made any statement *ever* on *The Fix*—let alone the

10   reviews, ratings, and other representations challenged here.[9]

11   Because Grasshopper's claims are "grounded in fraud and its allegations fail to

12   satisfy the heightened pleading requirements of Rule 9(b)," this Court should dismiss

13   the claims against Cliffside and Mr. Taite. *Vess*, 317 F.3d at 1107.

14   **B.     The allegations against Cliffside and Mr. Taite do not establish civil**

15   **conspiracy or agency.**

16   The conclusory allegations of civil conspiracy and agency in the Complaint do

17   not rescue the claims against Cliffside and Mr. Taite. Grasshopper has alleged that

18   Defendants conspired to commit fraud. Although the Complaint is not a model of

19   clarity, it also suggests that Cliffside and Mr. Taite committed fraud through their agent

20   Sober Media. *See* Compl. ¶ 10.

21   But when a plaintiff seeks to impose liability for fraud based on conspiracy or

22   agency, she must plead the existence of the conspiracy or agency relationship with

23   particularity to satisfy Rule 9(b). *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d

24   989, 990-91 (9th Cir. 2006) (heightened pleading requirement where "the object of the

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

---

26      9     For this reason, the Complaint also fails to plausibly allege claims against

27   Cliffside and Mr. Taite in violation of Rule 8. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

28   Dismissal is also warranted on that basis.

1  alleged conspiracy is fraudulent"); *RPost Holdings*, 2011 WL 4802372, at \*4
2  ("[B]ecause Rule 9(b) applies to the underlying [false advertising] claim, Plaintiff must
3  plead all facts necessary to support the claim with particularity, including facts
4  explaining [defendant's] role as a principal in the deception.").

5      Again, Grasshopper does not remotely satisfy Rule 9(b). Most of the relevant
6  allegations are boilerplate legal conclusions. *See, e.g.*, Compl. ¶ 11 ("Defendants
7  conspired and acted in concert with each other with respect to the conduct that gives
8  rise to the claims in this action"); *id.* ¶ 10 ("Defendants acted as the agent of the other
9  Defendants with respect to the conduct that gives rise to the claims in this action").
10  Grasshopper also alleges that when Recovery Media owned *The Fix* years ago, it
11  somehow conspired with Cliffside (and, apparently, all its other advertisers). *Id.* ¶ 15.
12  But Grasshopper bases this speculative allegation on bankruptcy filings that do not
13  even support a plausible inference of conspiracy. In any event, a plausible inference
14  does not suffice: Grasshopper must allege sufficient factual detail about a purported
15  agreement to meet the heightened standard of Rule 9(b).

16      At bottom, Grasshopper wants to hold Mr. Taite and Cliffside liable based solely
17  on the fact that Mr. Taite owns both Sober Media and Cliffside. *See* Compl. ¶¶ 9, 16.
18  But common ownership alone does not make individual entities liable as co-
19  conspirators. *See, e.g.*, *Donini*, 2004 WL 1574645, at \*4 (common ownership of trade
20  magazine for dry cleaning and laundry industry and dry cleaning equipment distributor
21  not sufficient factual basis to allege distributor was responsible for offending articles
22  under conspiracy theory). Nor does ownership in and of itself create an agency
23  relationship. *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824,
24  838-39 (Cal. Ct. App. 2000) (agency relationship requires more than control incident
25  to ownership). And Grasshopper cannot predicate a conspiracy claim on the bare fact
26  that Mr. Taite may have acted on behalf of Sober Media as an officer of the company.
27  *See AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947-48
28  (N.D. Cal. 2003).

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

23

Because Grasshopper does not and cannot allege that Cliffside or Mr. Taite is legally responsible for any content on *The Fix*, the Court should dismiss the claims against them.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed.

Respectfully submitted,

Dated: February 28, 2018

**STRIS & MAHER LLP**

/s/ Peter K. Stris
Peter K. Stris
Brendan S. Maher
Elizabeth Rogers Brannen
Dana Berkowitz
Victor O'Connell

725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Shaun P. Martin

5998 Alcala Park, Warren Hall
University of San Diego School of Law
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:18-CV-923 SVW (RAOx)