Jason Levin (161807)
*jlevin@steptoe.com*
Bennett Evan Cooper (128544)
*bcooper@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 700
Los Angeles, California 90071
Telephone:  (213) 439-9400
Facsimile:   (213) 439-9599

Attorneys for Plaintiff
Grasshopper House, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Grasshopper House, LLC, a California limited liability company,<br><br>             Plaintiff,<br><br>       vs.<br><br>Clean & Sober Media LLC, a California limited liability company; Cliffside Malibu, a California corporation; Richard L. Taite, an individual; and Does 1-10.<br><br>             Defendants. | No. 2:18-CV-00923-SVW-RAO<br><br>**FIRST AMENDED COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, LIBEL PER SE, AND VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE**<br><br>**DEMAND FOR JURY TRIAL** |

**JURISDICTION AND VENUE**

1.      This is an action for (1) false and misleading representations in advertising in violation of section 43(a)(1)(B) of the Trademark Act of July 5, 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a)(1)(B); (2) libel per se under California law; (3) false advertising in violation of section 17500 of the California Business and Professions Code; and (4) unfair competition in violation of section 17200 of the California Business and Professions Code. This Court has jurisdiction over the subject matter of this action under 28

U.S.C. § 1331 (federal-question jurisdiction), 15 U.S.C. § 1121 (actions under the Lanham Act), and 28 U.S.C. § 1367 (supplemental jurisdiction). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state-law claims for libel per se and violation of the California Business and Professions Code because they arise from the same facts as Plaintiff's Lanham Act claim.

2. Venue is proper in the Central District of California because (a) all Defendants reside in the State of California and at least one of the Defendants resides in this District, and (b) substantial parts of the events or omissions giving rise to the claims occurred in this District.

## INTRODUCTION

3. This action for damages and injunctive relief arises from the use of false and misleading statements on a website known as "The Fix" (www.thefix.com). The Fix purported to provide the public with disinterested reviews and ratings of drug rehabilitation centers, but The Fix was not a disinterested actor. The Fix was, in fact, owned and controlled by Defendants for the purpose of boosting sales at a particular drug rehabilitation center, Cliffside Malibu, which Defendants also owned and operated. The Fix provided the public false and misleading information to increase its own advertising and to boost sales at Cliffside Malibu.

4. Defendants misled the public in two ways. First, The Fix kept secret its affiliation with Cliffside Malibu so that readers would think The Fix was unbiased. To further that impression, The Fix falsely stated its "editorial mission – and sole bias – is to destigmatize all forms of addiction and mental health matters, support recovery, and assist toward humane policies and resources." The Fix also offered positive reviews and ratings of Cliffside Malibu, and negative reviews and ratings of its most significant competitor, Passages Malibu, giving that facility a "one-star" rating for patient treatment.

The reviews and ratings were tainted by the undisclosed affiliation between The Fix and Cliffside Malibu.

5. Second, The Fix told the public that its negative rating of Passages Malibu was based on its former clients' responses to written surveys. In fact, Defendants had no such surveys from clients of Passages Malibu.

6. The Fix misled the public to drive down the business of Passages Malibu and drive up the business of its affiliate, Cliffside Malibu. Defendants' scheme succeeded in diverting business to Cliffside Malibu from Passages Malibu. Plaintiff, which owns Passages Malibu, has sustained in excess of $50 million in damages because of patients diverted by false and misleading information on The Fix. Defendants' misconduct, unless enjoined, will continue to irreparably injure Plaintiff and its reputation.

## PARTIES

7. Plaintiff Grasshopper House, LLC is a California limited liability company with its principal place of business in Malibu, California. Plaintiff owns and operates Passages Malibu, a holistic addiction treatment and rehabilitation facility in Malibu, California. Founded in 2001, Passages Malibu includes alcohol, drug, and prescription-drug rehab and detox centers for the treatment of clients. It has been rated by *Healthcare Global* magazine as No. 1 in its list of the "Top 10 Rehab Clinics In The World," and it has been named by *Forbes* magazine as one of the most luxurious rehab centers in the world. Passages Malibu has earned the coveted Joint Commission Accreditation of Healthcare Organizations. Only 6% of behavioral healthcare organizations in the country have earned the Joint Commission Accreditation. The Joint Commission Accreditation is the standard-bearer in healthcare facilities, which assures the consumer that the accredited facility has achieved and continually maintains clinical and professional practices that are superior in its specialized field of treatment.

8. Upon information and belief, defendant Clean & Sober Media LLC ("CSM") is a California limited liability company with its principal place of business in Woodland Hills, California. CSM operates The Fix, an Internet website that claims to be "the world's leading premier [*sic*] about addiction and recovery."

9. Upon information and belief, defendant Cliffside Malibu is a California corporation with its principal place of business in Malibu, California. Cliffside Malibu operates a residential treatment center also known as Cliffside Malibu. Cliffside Malibu and Passages Malibu directly compete with each other for clients in the same market for luxury alcohol and drug addiction treatment services.

10. Upon information and belief, defendant Richard L. Taite is the manager and sole member of CSM. In addition, Taite was the founder and is or was, at all relevant times, the owner, Chief Executive Officer, Secretary, and Chief Financial Officer of defendant Cliffside Malibu. Upon information and belief, Taite controls and is directly responsible for the actions of CSM and Cliffside Malibu, both of which are closely held corporations. Taite also has acted in his personal and individual capacity as to, and actually directed, authorized, and personally participated in, the conduct that gives rise to the claims in this action.

11. Upon information and belief, each of the above-identified Defendants acted as the agent of the other Defendants with respect to the conduct that gives rise to the claims in this action.

12. Upon information and belief, each of the above-identified Defendants conspired and acted in concert with each other with respect to the conduct that gives rise to the claims in this action.

13. Does 1-10 are persons and business entities, presently unknown, who acted as the agents of the above-identified Defendants, or conspired and

acted in concert with them, with respect to the conduct that gives rise to the claims in this action.

## FACTUAL ALLEGATIONS

14. In 2011, The Fix was owned and operated by Recovery Media, LLC. The Fix at that time posted a narrative review of Passages Malibu together with several ratings. The narrative review contained positive information on the treatment offered by Passages Malibu, with one former patient describing his stay at the facility as a "God-send" and a second patient reporting that his experience at Passages Malibu was "inspiring." The Fix nonetheless gave Passages Malibu a one-star rating for the treatment it offered.

15. Plaintiff contacted The Fix to complain about the ratings for Passages Malibu but was told that an upgrade would cost $50,000. Plaintiff refused to pay, and the low ratings for Passages Malibu remained. On the other hand, Recovery Media provided Cliffside Malibu four-star "Overall" and "Treatment" ratings because Cliffside Malibu was willing to enter into a commercial relationship with Recovery Media.

16. Recovery Media placed the review and ratings of Cliffside Malibu, Passages Malibu, and other treatment facilities in a section of The Fix called "Rehab Reviews." While owned by Recovery Media, The Fix did not make any representations about the methodology used to create the reviews and ratings.

17. Recovery Media filed for bankruptcy in 2013, and The Fix was acquired by CSM in October 2013. CSM did not publicly disclose on The Fix that it was an affiliate of Cliffside Malibu and owned by Taite. (As alleged further below, that material information was not known to Plaintiff until 2017.)

1  18. When Defendants took over operation of The Fix, Plaintiff contacted it to obtain a fair rating for Passages Malibu. In the spring of 2014, The Fix agreed to take down the Passages Malibu review and rating, but the removal never happened. Instead, in May 2014, The Fix tried to barter for the removal. The Fix's Senior Account Representative, Kris Harrison, asked Plaintiff, "If I was able to have [the bad ratings] take[n] down would you be interested in listing within some of our categories or maybe on[e] of our banner positions?"

19. Plaintiff refused to give The Fix money, so the The Fix maintained the negative rating for Passages Malibu. It soon became clear why: the Passages Malibu name was driving website traffic to The Fix.

20. Plaintiff had spent in excess of $100 million dollars on advertising Passages Malibu, and that advertising resulted in Passages Malibu having significant brand recognition. As a result, consumers looked for and could find Passages Malibu online more easily than its competitors. But there was a downside. Kris Harrison of The Fix wrote in July 2014 that when consumers used Google to search the Internet for Passages Malibu, they were finding first the Passages Malibu website and second a link to The Fix and its negative rating of Passages Malibu. Defendants did not want to remove Passages Malibu from The Fix because the Google ranking benefited them in two ways. First, as additional readers clicked on the link to The Fix, The Fix could increase its advertising rates and expand its advertising base. Second, readers of The Fix seeing the one-star Treatment rating of Passages Malibu would find attractive Cliffside Malibu's lofty five-star Overall and Treatment ratings, thereby driving up that facility's revenue at the expense of Passages Malibu. If The Fix had done the right thing and removed the Passages Malibu ratings, Defendants would not have seen the same financial boost.

21. By the summer or fall of 2014, The Fix had failed to remove the Passages Malibu ratings and had not changed the one-star rating for Treatment. The Fix did, however, increase the Overall rating of Passages Malibu from two stars to two and a half stars. The Fix then posted for the first time the methodology it purportedly used to generate its ratings of Passages Malibu and other facilities:

> To create our reviews, we invite selected centers to solicit former clients to complete a detailed, 20-question survey. The Fix requires at least five completed surveys before a review is generated…. The surveys include questions about accommodations, meals, residents, staff, activities, and more…. For each of the above metrics - accommodations, food, and treatment - we then rate each center on a five-star scale, based on the alumni's chosen star ratings and comments. The overall rating for the particular center being reviewed is created based on the three component star ratings, client comments, and other information obtained through the survey process.

22. The Fix subsequently provided a copy of the 20-question survey referenced in its posted methodology. Exhibit 1. The survey permitted alumni to rate facilities in various categories from five stars ("excellent") to one star ("terrible"), and to provide comments with respect to the categories.

23. Based on the rating methodology described on The Fix, readers of the Rehab Reviews would reasonably infer the following facts about Passages Malibu: (1) The Fix had in its possession at least five completed 20-question surveys from Passages Malibu alumni; (2) most, if not all, surveyed alumni gave Passages Malibu one star for Treatment, or provided comments indicating that it provided terrible treatment; and (3) the ratings and other

- 7 -
FIRST AMENDED COMPLAINT

11520413

survey responses from Passages Malibu alumni support a two-and-a-half-star Overall rating. In fact, none of these facts is true because there are no completed written surveys of Passages Malibu clients, and, at all relevant times, Defendants knew this to be the case. The Fix did not disclose this fact to the public until 2017, when it placed a difficult-to-find information icon—an "i" in a circle—which, when touched by the cursor, generates the following pop-up: "Reviews completed prior to October 25th, 2013 were completed under prior editorial control. Some reviews and star ratings may have been completed at different times and under different criteria."

24. The Fix not only denigrated the treatment provided by Passages Malibu, but also promoted its most significant competitor, Cliffside Malibu, without disclosing it was a Cliffside Malibu affiliate. Sometime in 2014, soon after Defendants assumed control of The Fix, the website changed Cliffside Malibu's Treatment and Overall ratings from four stars to five stars, even though the facility review itself remained word-for-word identical. On information and belief, this change of ratings was not the result of any new patient surveys, but instead the direct result of the now-common ownership of The Fix and Cliffside Malibu.

25. On the Rehab Reviews webpage, under a "Featured Centers" banner, Cliffside Malibu was consistently ranked as the top-rated facility and was given the most prominent page placement. A reader would have needed to look carefully to find and scroll over a small information icon to reveal this statement: "Featured centers have paid for placement of their reviews in this section; however, the content and ratings contained in those reviews are editorial content created by The Fix."

26. In sum, The Fix contains several false and misleading statements about the reviews and ratings of Cliffside Malibu and Passages Malibu:

a. The Fix affirmatively represents, "Our stated editorial mission – and sole bias – is to destigmatize all forms of addiction and mental health matters, support recovery, and assist toward humane policies and resources." At the same time, The Fix conceals another critical source of "bias" that would be material to users: the common ownership of The Fix and Cliffside Malibu.

b. The Fix states that its reviews and ratings for Cliffside Malibu are based on the results of written customer surveys. They are not. Cliffside Malibu's favorable review and rating followed from its advertising in and then affiliation with The Fix.

c. The Fix states that its reviews and ratings for Passages Malibu are based on at least five written customer surveys. They are not. The purported written customer surveys do not exist.

d. The Fix misleads readers by failing to disclose that its reviews and ratings of Cliffside Malibu and Passages Malibu are really advertising. The reviews and ratings are a form of "native advertising," a term used by the Federal Trade Commission to describe advertisements indistinguishable from news, feature articles, product reviews, editorial, entertainment, and other regular content. The FTC's enforcement policy states that it considers native advertising to be misleading in the absence of a "sufficiently prominent and unambiguous" disclosure of made in "simple, unequivocal" language. The Fix did not and does not contain sufficient disclosures of its native advertising.

27. As a result of the false and misleading statements alleged above, Passages Malibu has suffered a decline of business, diversion of clients, loss of goodwill, and injury to business reputation, causing damages to Plaintiff in excess of $50 million.

28. Upon information and belief, as a result of the false and misleading statements alleged above, Cliffside Malibu has experienced an increase in patient inquiries and enrollments.

29. Upon information and belief, as a result of the false and misleading statements alleged above, The Fix has experienced increased traffic and increased advertising revenue.

30. For economic benefit, Defendants directed and controlled the false and misleading statements alleged above, knowing they were false and misleading to consumers, or recklessly disregarding the issue. As a result, Defendants acted with malice, oppression, conscious disregard of Plaintiff's rights, and either knowledge that the statements were false or reckless disregard of the truth or falsity of the statements.

**PLAINTIFF'S DISCOVERY OF DEFENDANTS' MISCONDUCT**

31. When The Fix was acquired by CSM in October 2013, Plaintiff did not know and was not on inquiry notice that CSM was owned and controlled by Taite. Media coverage of CSM's purchase of The Fix in 2013 did not mention Taite. And neither The Fix's masthead, nor its "About Us" section, nor its "Terms & Conditions" section ever mentioned Taite. CSM's own website (www.cleanandsobermedia.com) did not disclose Taite's ownership or role, much less its affiliation with Cliffside Malibu. Instead, CSM's "About Us" section stated and continues to state only that "Clean & Sober Media was launched in 2013 by Delphine Robertson in order to acquire a public trust in TheFix.com."

32. It was not until November 2017 that Plaintiff discovered that CSM was owned and controlled by Taite. Plaintiff learned the information from an online article published in November 2017 by an independent website called The Verge. The Verge published an article entitled "Review Sites Have Deep Ties to the Rehabs They Promote." The article reported, "According to an

investigation by The Verge, … Rehab Reviews and The Fix are controlled by Cliffside Malibu founder Richard Taite." It further reported that "people reading [The Fix] had no way to know the connection (until disclaimers appeared after The Verge approached the sites for comment)." Only after The Verge published its article did The Fix update its small information icon to disclose the common ownership of The Fix and Cliffside Malibu.

33. As of October 2013, then, Plaintiff had no reason to believe that The Fix was being controlled or directed by a competitor of Passages Malibu. Therefore, when The Fix announced its new ratings methodology in the summer or fall of 2014, Plaintiff had no reason to believe that the methodology was false, misleading, or biased. Specifically, when the new methodology indicated that The Fix had received completed 20-question surveys from Passages Malibu alumni, Passages Malibu had no reason to believe The Fix was lying or was motivated to lie. The Fix presumably had obtained written survey responses from the Passages Malibu clients who were apparently interviewed in 2011 for the initial narrative evaluation.

34. From the summer or fall of 2014 through June 2016, Passages Malibu had no reason to doubt the veracity of the new methodology or ability to discover whether it had been followed by The Fix. The truth was known only to Defendants. There was no reasonable way for Plaintiff to have learned whether any Passages Malibu clients interviewed in 2011 really existed and, if so, whether they had in fact completed 20-question written surveys and declared that Passages Malibu had provided them terrible treatment.

35. In June 2016, Plaintiff received an email from The Fix's editor-in-chief, Allison McCabe, inviting Passages Malibu to solicit survey responses from its clients to permit The Fix to re-review Passages Malibu. This email led Plaintiff to suspect that The Fix had not previously obtained survey responses from Passages Malibu clients and therefore had not been complying with its

own published methodology. When challenged on the point, McCabe wrote in a July 31, 2016, email: "Under prior management, the review process may have been different" and "When new management took over after the bankruptcy, we kept the prior reviews up…." From McCabe's response, Plaintiff reasonably inferred that written surveys from Passages Malibu clients did not exist and never existed. Before July 31, 2016, Plaintiff did not know and could not have reasonably known that The Fix had lied and had not received client surveys from Passages Malibu clients.

### FIRST CLAIM FOR RELIEF
### (Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))

36. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

37. By their acts set forth above, including both affirmative statements and omissions, Defendants have used and continue to use false and misleading descriptions or representations of fact, in the context of commercial advertising or promotion, that are directed to the nature, characteristics, or qualities of Plaintiffs' services or commercial activities and Defendants' own services or commercial activities, in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Defendants' false and misleading statements are related to material elements of purchasers' decisions and are likely to influence such decisions.

38. Defendants' false and misleading statements actually deceived or are likely to deceive a substantial segment of the relevant market for clients or purchasers of alcohol or drug rehab services.

39. Defendants' false and misleading statements have entered "commerce," as that term is defined in section 45 of the Lanham Act, 15 U.S.C. § 1127.

40. Plaintiff was injured and will continue to be injured as a result of Defendants' false and misleading statements, both by direct diversion and loss of sales and profits, and by a lessening of the goodwill associated with Plaintiff's name, business, and services.

41. The injury to Plaintiff's business and goodwill from Defendants' false and misleading statements is irreparable because the full extent of such injury, which would extend far into the future, cannot be precisely measured and compensated for.

42. Defendants continue to do the acts complained of in this Complaint, and, unless restrained and enjoined, Defendants will continue to do so, all to Plaintiff's irreparable injury. Plaintiff's remedy at law is not adequate to compensate it for the future injuries received and threatened.

43. Defendants' conduct has been willful and committed with the intent to deceive prospective clients or purchasers of alcohol or drug rehab services and the public.

44. Defendants' conduct has caused Plaintiff to lose in excess of $50 million in revenue. Damages continue to accrue.

**SECOND CAUSE OF ACTION**
**(Libel Per Se)**

45. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

46. Defendants' review of Passages Malibu includes statements that were false and disparaged the quality of the treatment services that Plaintiff provides to clients at Passages Malibu.

47 Defendants made such false and disparaging statements to clients, prospective clients, and the public by including and maintaining the statements in The Fix.

48. Defendants' single-star rating of Passages Malibu for "Treatment" constitutes libel per se under California Civil Code §§ 45 and 45a because it defames Plaintiff by stating, without the necessity of explanatory matter, that Passages Malibu is completely incompetent at its core function of treating addiction.

49. Defendants knew or should have recognized that someone else might act in reliance on their false and disparaging statements, causing Plaintiff financial loss.

50. By publishing such false and disparaging statements, Defendants induced others who relied on the statements to avoid obtaining services at Passages Malibu, causing Plaintiff to suffer direct financial harm.

51. Defendants' conduct was a substantial factor in causing Plaintiff's harm, including in excess of $50 million in revenue. Damages continue to accrue.

52. Defendants' conduct was undertaken with malice, oppression, conscious disregard of Plaintiff's rights, and either knowledge that the statements were false or reckless disregard of the truth or falsity of the statements, thereby permitting the imposition of punitive damages against them.

**THIRD CAUSE OF ACTION**
**(California Business and Professions Code § 17500)**

53. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

54. Defendants have made statements in advertising that are untrue or misleading.

55. Defendants knew, or by the exercise of reasonable care should have known, that their statements were untrue or misleading.

56. Members of the public are likely to be deceived by Defendants' untrue or misleading statements.

57. Defendants conduct constitutes false advertising in violation of section 17500 of the California Business and Professions Code.

58. Defendants' misconduct will continue or reoccur unless it is restrained and enjoined.

## FOURTH CAUSE OF ACTION
### (California Business and Professions Code § 17200)

59. Plaintiff incorporates by reference the allegations of the preceding paragraphs.

60. Defendants' conduct is unlawful and fraudulent and therefore in violation of section 17200 of the California Business and Professions Code (also known as the Unfair Competition Law). Defendants' conduct was unlawful in that it was in violation of (a) section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (b) section 17500 of the California Business and Professions Code. Defendants' conduct was fraudulent, as that term is understood under the California Unfair Competition Law, because a significant number of reasonable readers of The Fix are likely to be misled by its false statements and nondisclosures.

61. Defendants knew, or by the exercise of reasonable care should have known, that their statements were false or misleading.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A. Issuance of temporary, preliminary, and permanent injunctive relief restraining Defendants, their officers, employees, agents, affiliates, parents, and subsidiaries, and all other persons who act in concert with them from making false, misleading, or deceptive statements or representations about Plaintiff, Passages Malibu, Cliffside Malibu, or any other treatment facility, on or in connection with

the operation of The Fix;

B. Damages in an amount to be proved at trial under 15 U.S.C. § 1117, but in no event less than $50 million, based on, among other things, lost business revenues from prospective clients who selected other addiction treatment facilities after reading The Fix's review and rating of Passages Malibu alone or in comparison with Cliffside Malibu's review and rating;

C. An accounting to determine the profits Defendants have made in connection with their services provided to customers who were diverted from Passages Malibu by Defendants' false and misleading statements, and an award to Plaintiff of such profits and trebling of such award under 15 U.S.C. § 1117(a);

D. An award of punitive damages for libel per se;

E. An award to Plaintiff of its costs and attorneys' fees incurred in this action under 15 U.S.C. § 1117(a) on the ground that this is an exceptional case; and

F. Such other relief as the Court may deem just and equitable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b)(1), Plaintiff demands a trial by jury.

DATED: May 16, 2018

                      STEPTOE & JOHNSON LLP

                      By s/ Bennett Evan Cooper
                         Jason Levin
                         Bennett Evan Cooper
                         633 West Fifth Street, Suite 700
                         Los Angeles, California 90071

                      Attorneys for Plaintiff
                      Grasshopper House, LLC

# SERVICE LIST

*Grasshopper House, LLC v. Clean & Sober Media LLC, et al.*
CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:18-CV-00923 SVW (RAO)

Peter K. Striss
Brendan S. Maher
Elizabeth Brannen
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299
Peter.stris@strismaher.com
Brendan.maher@strismaher.com
Elizabeth.brannen@strismaher.com
Dana.berkowitz@strismaher.com
Victor.oconnel@strismaher.com

Shaun P. Martin
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

Attorneys for Defendants
Clean & Sober Media LLC, et al.