**STRIS & MAHER LLP**
PETER K. STRIS (SBN 216226)
peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
brendan.maher@strismaher.com
ELIZABETH BRANNEN (SBN 226234)
elizabeth.brannen@strismaher.com
DANA BERKOWITZ (SBN 303094)
dana.berkowitz@strismaher.com
VICTOR O'CONNELL (SBN 288094)
victor.oconnell@strismaher.com
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
smartin@sandiego.edu
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>CLEAN & SOBER MEDIA LLC, et al.,<br><br>     Defendants. | Case No. 2:18-CV-923 SVW (RAOx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ALL CAUSES OF ACTION IN FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Date:       July 2, 2018<br>Time:      1:30 p.m.<br>Location:  Courtroom 10A<br>Judge:    Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. iii

Preliminary Statement ............................................................................................... 1

Applicable Legal Standards ...................................................................................... 3

Allegations and Background ..................................................................................... 4

    A.   In 2011, *The Fix* reviews Passages. ......................................................... 5

    B.   In 2012, *The Fix* reviews Cliffside. ......................................................... 6

    C.   Inaccuracies related to the 2012 Cliffside Review and Recovery Media's review process. ............................................... 6

    D.   In 2013, Sober Media buys *The Fix* out of bankruptcy. ......................... 7

    E.   In 2016, Grasshopper agrees to a Passages re-review but never returns surveys. ................................................................... 7

    F.   In 2017, The Verge writes about *The Fix*'s ownership. .......................... 9

    G.   In 2018, Grasshopper files suit, and the Court dismisses. ..................... 9

    H.   Grasshopper files an Amended Complaint. ........................................... 10

Argument ................................................................................................................. 10

I.   Grasshopper's Amended Complaint Fails to Remedy the Defects the Court Previously Concluded Were Fatal to Its False Advertising Claims. ...................................................... 10

    A.   Any Claim Based on the Process Statement Is Time-Barred for the Reasons the Court Previously Explained. .................. 11

    B.   Any Claim Based on the Mission Statement Is Time-Barred for the Reasons the Court Previously Explained. .................. 12

        1.   The Court Has Already Rejected Grasshopper's Argument. ...... 13

        2.   Grasshopper Has Not Remedied the Flaw in Its Discovery Rule Argument With Respect to the Mission Statement. ............................................................... 13

    C.   The Amended Complaint Contains the Same Vague and Conclusory" Allegations of Harm the Court Previously Found Inadequate. ..................................................................... 15

II.   Grasshopper's False Advertising Claims Fail for Many Additional Reasons. ................................................................... 17

i

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

A.   The Ratings of Passages and Cliffside Are Unactionable Opinions ......17

B.   Grasshopper Has Identified No False Statement of Fact. .....................18

C.   The Failure to Disclose Common Ownership Is Not Actionable. .........20

D.   The Process and Mission Statements Are Not Commercial
     Advertising or Promotion .....................................................................20

E.   Grasshopper Itself Has Said It Is the Ratings, Not the
     Process and Mission Statements, that Are Material to Consumers. ......21

F.   Sober Media Acquired *The Fix* Free of Successor Liability. ...............22

III.   Grasshopper's Remaining State Law Claims Also Fail. ...............................22

IV.   At Minimum, All Claims Against Taite and Cliffside
      Must Be Dismissed. .....................................................................................24

Conclusion ..................................................................................................................25

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003)............................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................3

*Baby Trend, Inc. v. Playtex Prods., LLC*,
  No. 5:13-CV-00647, 2013 WL 4039451 (C.D. Cal. Aug. 7, 2013)...........11, 12, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................3

*Boca Raton Firefighters v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) .......................................................................19

*Christoff v. Nestlé USA, Inc.*,
  213 P.3d 132 (Cal. 2009).................................................................................23

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ..............................................................2, 17, 22

*Donini Int'l, S.P.A. v. Satec (USA) LLC*,
  No. 03-CV-9471, 2004 WL 1574645 (S.D.N.Y July 13, 2004) .....................17, 25

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012)..............................................................24

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
  194 F. Supp. 3d 263 (S.D.N.Y. 2016) ...............................................................21

*Erlich v. Etner*,
  36 Cal. Rptr. 256 (Cal. Dist. Ct. App. 1964).....................................................23

*Gen. Bedding Corp. v. Echevarria*,
  947 F.2d 1395 (9th Cir. 1991) ....................................................................11, 14

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 1991) ..........................................................................21

iii

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

*Hofmann Co. v. E.I. du Pont de Nemours & Co.*,
248 Cal. Rptr. 384 (Ct. App. 1988) ...................................................................23

*Kwikset Corp. v. Sup. Ct.*,
246 P.3d 877 (Cal. 2011)....................................................................................24

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
114 F. Supp. 3d 852 (N.D. Cal. 2015)..........................................................23, 24

*Lamothe v. Atl. Recording Corp.*,
847 F.2d 1403 (9th Cir. 1988) ...........................................................................20

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) .............................................................................21

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990)...............................................................................................17

*In re Motors Liquidation Co.*,
568 B.R. 217 (S.D.N.Y. Bankr. 2017) ...............................................................22

*Novation Ventures, LLC v. J.G. Wentworth Co., LLC*,
No. 15-CV-00954, 2015 WL 12765467 (C.D. Cal. Sept. 21, 2015).....................20

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ...............................................................................4

*Prager Univ. v. Google LLC*,
No. 5:17-CV-06064, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018).....................19

*Register.com, Inc. v. Domain Registry of Am., Inc.*,
No. 02-CV-6915, 2002 WL 31894625 (S.D.N.Y. Dec. 27, 2002)........................20

*Saaremets v. Whirlpool Corp.*,
No. 2:09-CV-02337, 2010 WL 11571214 (E.D. Cal. Mar. 19, 2010) .............12, 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,
806 F.2d 1393 (9th Cir. 1986) .............................................................................4

*Shores v. Chip Steak Co.*,
279 P.2d 595 (Cal. Dist. Ct. App. 1955) ............................................................22

*Skydive Arizona, Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) ......................................................................21, 22

iv

*Sonora Diamond Corp. v. Superior Court*,
  99 Cal. Rptr. 2d 824 (Cal. Ct. App. 2000)..............................................25

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .................................................................16

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .....................................................................4

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...................................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).....................................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................4

*Virginia State Bd. of Pharmacy v.*
  *Virginia Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)...................................................................................21

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) .................................................................24

*Yaeger v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) .................................................................11

*Yumul v. Smart Balance, Inc.*,
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) .................................................12

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..............................................................4, 16


**Constitution:**

U.S. Const. amend. I ...........................................................................17, 21


**Statutes, rules, and regulations:**

11 U.S.C. § 363(f)......................................................................................22

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

v

Lanham Act,

    15 U.S.C. § 1051 *et. seq.* ..................................................................*passim*

    15 U.S.C. § 1125(a)(1)(B) ................................................................20

Cal. Code Civ. P. § 340(c) ...............................................................23

Fed. R. Civ. P. 9(b) ......................................................................4, 24

Fed. R. Civ. P. 12(b)(6) ...............................................................3, 5, 9

Unfair Competition Law,

    Cal. Bus. & Prof. Code § 17200 ..................................................23, 24


**Other Authorities**

*Bias*, *Merriam-Webster Online Dictionary* (updated May 17, 2018) ........................19

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:18-CV-923 SVW (RAOx)

Defendants Clean & Sober Media LLC ("Sober Media"), Cliffside Malibu ("Cliffside"), and Richard L. Taite submit this memorandum in support of their motion to dismiss Plaintiff Grasshopper House, LLC's ("Grasshopper") First Amended Complaint ("Amended Complaint" or "FAC"). Defendants have concurrently filed a Special Motion to Strike ("Anti-SLAPP Motion") seeking to strike all state-law claims.

## PRELIMINARY STATEMENT

Grasshopper filed this lawsuit because it dislikes the reviews and star ratings that *The Fix*, a rehab review website, published about Passages Malibu and its competitor Cliffside. Grasshopper concedes those reviews were published more than six years ago—before Sober Media purchased the site out of bankruptcy in 2013. It alleges that both reviews have remained identical under Sober Media's ownership, although both facilities' star ratings have increased slightly. And it has neither identified a false factual statement in the reviews, nor argued that the star ratings are inconsistent with the reviews they accompany. Grasshopper nonetheless contends that these ratings—which, along with the reviews, constitute unactionable protected opinion—have somehow caused it $50,000,000.00 in damages.

In opposing Defendants' motion to dismiss the original complaint, Grasshopper argued that two supposedly false statements *elsewhere* on *The Fix*—both published in 2014—transformed the ratings and reviews into statements of fact actionable under the Lanham Act and California law. Grasshopper's Opp. to Mot. to Dismiss ("MTD Opp.") 3, 9, ECF No. 17. Those statements are:

1. That *The Fix* possessed at least five completed 20-question surveys from alumni of Passages Malibu and Cliffside whose individual star ratings were averaged to form the exclusive basis for the star ratings posted on *The Fix*. FAC ¶¶ 23, 26(b)-(c) (the "Process Statement"), ECF No. 30; and

2. That *The Fix*'s "stated editorial mission—and sole bias—is to destigmatize all forms of addiction and mental health matters, support recovery, and assist toward humane policies and resources." FAC ¶ 26(a) (the "Mission Statement").

The Court rejected Grasshopper's arguments and dismissed the case. It concluded that the state and federal false advertising claims based on the Process or Mission Statements were time-barred. Order 5-7, ECF No. 29. It also concluded the false advertising claims failed because Grasshopper's "allegations of harm were vague and conclusory." Specifically, the Court stated that Grasshopper failed to explain how slightly increasing the facilities' ratings "caused a diversion of sales from Passages to Cliffside or a lessening of the goodwill associated with Plaintiff's products when *The Fix* had always given Cliffside a substantially higher rating than Passages." Order 7 (citation, brackets, and ellipsis omitted).

Grasshopper's Amended Complaint, which relies on the same two allegedly false statements, fails to remedy *any* of these defects.

***First***, as to the Process Statement, *The Fix* says it "invite[s] *selected centers* to solicit former clients to complete a detailed, 20-question survey," FAC ¶ 21 (emphasis added), and Grasshopper itself claims "[n]o one ever contacted Passages or gave them a survey to pass out to their alumni." Request for Judicial Notice ("RJN") Ex. B at 4. As the Court put it, this means Grasshopper "knew or reasonably could have discovered whether *The Fix* ever sent surveys to Passages [for it to then send to its] alumni," and thus "whether it had a claim for false advertising when it had constructive notice of the review policy on October 1, 2014." Order 6. Any claim based on the Process Statement is accordingly time-barred for the same reasons the Court has already explained.

***Second***, claims related to the Mission Statement also are time-barred. As the Court previously held, to avoid the statute of limitations with respect to those claims, Grasshopper must show not only that it was unaware of Sober Media and Cliffside's common ownership, but also "that it could not have discovered this relationship through reasonable diligence." Order 7. And just as "[t]here [were] no such allegations in the [original] complaint," so too in the Amended Complaint. *Id.* Although Grasshopper has added further allegations regarding its *lack of knowledge*, conspicuously absent are any allegations that it *undertook the required investigation*.

2

That is because no such investigation was undertaken. Claims based on the Mission Statement are thus time-barred for the same reasons the Court has already explained.

*Third*, as to harm, the Amended Complaint offers *materially identical* "vague and conclusory" allegations as the original complaint—it just rearranges them slightly. *Compare* Compl. ¶ 27, ECF No. 1, *with* FAC ¶¶ 27-29. Once again, Grasshopper has not alleged, because it cannot allege, "facts explaining how the addition of a single star to Cliffside's rating" caused it harm—let alone how *increasing* Passages' rating caused it harm. Order 7.

Nor has it alleged how the Process or Mission Statements caused it harm. It remains implausible that any consumer forwent treatment at Passages based on these statements rather than the review and rating; by Grasshopper's own admission, "[v]ery frequently, they don't even read [anything] beyond the rating." Hrg. Tr. 16, ECF No. 31. Thus, even if Grasshopper's false advertising claims were not time-barred, as the Court already has explained, they still would fail because there is no nexus between the complained-of conduct and the $50,000,000.00 in alleged damages.

These arguments apply with equal force to Grasshopper's remaining state law claims, all of which flow from the same alleged false statements. The Court should therefore dismiss the Amended Complaint—this time with prejudice—for the same reasons it dismissed Grasshopper's original complaint.

## APPLICABLE LEGAL STANDARDS

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Further, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "plausibly suggest an entitlement to relief, such that

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Courts "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Courts may properly consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Courts also may consider a document if it "is integral to the plaintiff's claims and its authenticity is not disputed," even if the plaintiff does not attach that document or reference it in the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 & n.4 (9th Cir. 1998).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, under Rule 9(b), "averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). When such a claim "fail[s] to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107.

Courts should deny leave to amend where "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). And "[a]s here, where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## ALLEGATIONS AND BACKGROUND

Although the Court is already familiar with the events giving rise to this lawsuit, this section summarizes the factual background. It also identifies allegations in the Amended Complaint that are implausible or contradicted by materials the Court may consider at this stage. As explained in the RJN, the Court may take notice of Exhibits

4

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

A-D in determining whether the allegations in the Amended Complaint fail to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.    In 2011, *The Fix* reviews Passages.

The events giving rise to this lawsuit began in 2011 when *The Fix*—at that time owned by Recovery Media LLC (related in no way to any Defendant)—published a review and rating of Passages on its website (the "2011 Passages Review"). The 2011 Passages Review contained 916 words of facts and editorial copy. RJN Ex. A at 2-3. It also included an overall star rating, along with star ratings for three service components (accommodations, food, and treatment). *Id.* at 2. Passages received 5/5 stars for both accommodations and food, but 1/5 stars for treatment. *Id.* It received an overall rating of 2/5. *Id.* at 5. Only after Sober Media purchased *The Fix* in 2013 did Passages' overall rating increase to 2.5 stars. *Id.* at 9.

The 2011 Passages Review expressed opinions about each service component based on stated facts. Unsurprisingly, given the accompanying star ratings, the opinions expressed regarding accommodations and food were quite positive, while the opinions about Passages' treatment were quite negative. For example:

> Neither of the Prentisses have bothered to seek degrees in the field of addiction treatment, but their best-selling book reduces the road to lifelong sobriety to three simple steps: 1) believe in a cure, 2) discover and heal your inner problems, and 3) embrace a philosophy based on universal truth. (It also doesn't hurt if you're able to pony up nearly $100,000 a month.)

> Though Passages widely advertises [its] alleged 80% "cure rate," several former clients and ex-employees energetically dispute that number. . . . [O]ne in-the-know employee estimates the Center's success rate at closer to 10%. So Prentiss's insistence that he has discovered the "cure" for addiction—and the volley of late-night TV ads promoting that claim—has outraged many colleagues in the recovery industry. . . . Not that the

STRIS MAHER | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

> Prentisses much care. . . . Their much-maligned "Addiction Cure" book reportedly earns them extra millions of dollars a year. Whenever they're on the premises, father and son both park their matching fire-engine red Porsches side-by-side on Passage's winding driveway.

RJN Ex. A at 6.

The Amended Complaint alleges that Grasshopper disliked and, beginning in 2011, repeatedly complained about the review. FAC ¶¶ 15, 18. But Grasshopper has never identified or disputed *any* factual statement in the 2011 Passages Review as false or misleading.

## B.    In 2012, *The Fix* reviews Cliffside.

In 2012, *The Fix* published a review of Cliffside Malibu that consisted of 674 words of facts and editorial copy (the "2012 Cliffside Review"). RJN Ex. A at 13-14. It included star ratings for food (4/5), accommodations (5/5), treatment (4/5) and overall (4/5). *Id.* at 13. The Amended Complaint contains numerous references to the 2012 Cliffside Review. *See, e.g.*, FAC ¶ 24. But, again, Grasshopper has never alleged that *any* factual statement in the 2012 Cliffside Review is false or misleading.

## C.    Inaccuracies related to the 2012 Cliffside Review and Recovery Media's review process.

The Amended Complaint contains two inaccurate allegations regarding the 2012 Cliffside Review and *The Fix*'s review process under Recovery Media. First, the Amended Complaint alleges (conclusorily) that Recovery Media gave Cliffside Malibu a positive review "because Cliffside Malibu was willing to enter into a commercial relationship with Recovery Media." FAC ¶ 15. This is a re-run of the "native advertising" allegation from the original complaint. *Compare* Compl. ¶¶ 4, 15, 25(b), *with* FAC ¶¶ 15, 26(b). But as the Court explained in its previous dismissal order, Recovery Media's bankruptcy filings "contradict" this allegation. Order 7 n.3. "According to the judicially noticed filings, Cliffside [first] paid Recovery Media for advertising in 2013—almost one year after The Fix published the Cliffside Review in

S T R I S
M A H E R | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

6

March 2012." *Id.* The Court should again decline to "accept as true factual allegations that are contradicted by documents subject to judicial notice." *Id.*[1]

The Amended Complaint also alleges that "[w]hile owned by Recovery Media, *The Fix* did not make any representations about the methodology used to create the reviews and ratings." FAC ¶ 16. Again, not so. Judicially noticeable materials show that Recovery Media stated, "We offer rigorously reported Rehab Reviews, with input from thousands of alumni." RJN Ex. A at 17.[2]

**D.     In 2013, Sober Media buys *The Fix* out of bankruptcy.**

In 2013, Recovery Media filed for bankruptcy, through which *The Fix* was sold to Defendant Sober Media. FAC ¶ 17. After the sale, *The Fix* maintained pre-existing content, including the 2011 Passages Review and the 2012 Cliffside Review. *See* Compl. ¶ 16 (after the sale, the Cliffside "review itself remained word-for-word identical"); *id.* ¶ 26 (Defendants "maintain[ed] the review of Passages Malibu").

The star ratings of both facilities also remained except for three *increases*. Cliffside's treatment and overall ratings were each raised from 4 to 5 stars, while Passages' overall rating was raised from 2 to 2½ stars. RJN Ex. A at 6, 9 (showing that Passages' overall rating increased to 2½ stars in September 2014).

**E.     In 2016, Grasshopper agrees to a Passages re-review but never returns surveys.**

On June 8, *The Fix*'s Editor-in-Chief, Allison McCabe—who had been told that Grasshopper was interested in a re-review of Passages—emailed Grasshopper to explain that process. RJN Ex. B at 1; *see also* FAC ¶ 35. On July 21, Grasshopper

---

[1]    As Defendants previously explained, the fact that rehabilitation centers advertise on a website about addiction treatment in no way plausibly suggests that reviews of those centers are somehow false or "native advertising." Mot. to Dismiss 12-13, ECF No. 11-1.

[2]    That matters because it makes Grasshopper's theory—that the disclosure of "input from thousands of alumni" did not make the reviews on *The Fix* misleading, but disclosure of "five completed surveys" did—even less tenable. It also underscores that the statute of limitations ran long ago.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

1   replied with a threat to sue if the 2011 Passages Review was not removed within two

2   weeks. RJN Ex. B at 4. Grasshopper did not assert that anything in the 2011 Passages

3   Review was false or misleading. Instead, Passages insisted that this Review did not

4   comply with *The Fix*'s internal processes for compiling reviews. *Id.*; *see also* FAC

5   ¶ 35. It explained that "[n]o one ever contacted Passages or gave them a survey to pass

6   out to their alumni." RJN Ex. B at 4.[3]

7   In response, Ms. McCabe wrote a detailed email explaining *The Fix*'s policy of

8   hosting pre-acquisition reviews in the absence of something more current:

9   > When new management took over after the bankruptcy, we kept the prior

10  > reviews up. That's what we do unless we have something more current to

11  > replace them with, which is where the re-review process comes in. It is

12  > fair and quick, with facilities selecting the alumni to whom surveys are

13  > sent. . . . If you decide to participate, participation is free, you'll get a

14  > survey link to give to your alumni, and we will move promptly to prepare

15  > and post a new review using their survey responses.

16  RJN Ex. B at 2.

17  Shortly after Ms. McCabe's email, Grasshopper agreed to engage in the re-

18  review process. RJN Ex. B at 6-7. Ms. McCabe asked Grasshopper to send the survey

19  to Passages alumni. *Id.* at 14. But even after repeated apologies, promises, and

20  excuses—including a vacation, pneumonia, and a "busy" year—Grasshopper never

21  delivered the surveys. *Id.* at 17, 19, 21.

22  The Amended Complaint alleges "Plaintiff reasonably inferred [from Ms.

23  McCabe's emails] that written surveys from Passages Malibu clients did not exist and

24  never existed." FAC ¶ 35. But the emails support no such inference, and the underlying

25  assertion is false; the review *itself* discloses that at least five patients of Grasshopper

26

27  _____

    [3]   As discussed below (*infra* 11-12), this email demonstrates that Passages knew
28  all along whether it received surveys to distribute to alumni. This admission thoroughly
    undermines Grasshopper's attempt to invoke the discovery rule.

S T R I S   | 725 S. FIGUEROA ST., STE 1830
M A H E R   | LOS ANGELES, CA 90017

8

were surveyed. RJN Ex. A at 6; *see* Anti-SLAPP Motion at 21-22. Defendants again invite the Court to review the handful of emails between Ms. McCabe and Grasshopper (RJN Ex. B), alongside the survey results quoted in the review (*id.* Ex. A at 6).

### F.    In 2017, *The Verge* writes about *The Fix*'s ownership.

In November of 2017, *The Verge* published an article entitled *Review Sites Have Deep Ties to the Rehabs They Promote*. FAC ¶ 32; RJN Ex. C. The article reported that Sober Media and Cliffside are both owned by Mr. Taite. RJN Ex. C at 1. It also noted that this fact was "well-known in the industry" and that the practice of overlapping ownership was common among numerous other rehab centers. *Id.* at 2.[4]

### G.    In 2018, Grasshopper files suit, and the Court dismisses.

Grasshopper filed this action several months later, in 2018. The complaint asserted a federal false advertising claim under the Lanham Act, along with false advertising, trade libel, and unfair competition claims under California law. Defendants filed a motion to dismiss under Rule 12(b)(6) and a special motion to strike the state law claims under the anti-SLAPP statute. The Court granted Defendants' motion to dismiss, holding that Grasshopper's federal and state false advertising claims based on the Process and Mission Statements were time-barred. Order 5-8. The Court also held that Grasshopper's "allegations of harm were vague and conclusory" because Grasshopper failed to explain how slightly increasing the facilities' ratings "caused a diversion of sales from Passages to Cliffside or a lessening of the goodwill associated with Plaintiff's products when *The Fix* had always given Cliffside a substantially higher rating than Passages." Order 7 (citations, brackets, and ellipsis omitted).[5]

---

[4]    As explained in the contemporaneously filed Anti-SLAPP Motion, Grasshopper itself owns at least five websites that give the impression they are published by trusted institutions, but in fact exist to promote Passages. *See* Anti-SLAPP Motion 22-23.

[5]    The Court explained that because "claims of unfair competition and false advertising under state statutory and common law are substantially congruent to claims under the Lanham act[, . . .] the analysis of Plaintiff's federal and state false advertising claims are consolidated for this order." Order 5.

S T R I S  |  725 S. FIGUEROA ST., STE 1830
M A H E R  |  LOS ANGELES, CA 90017

9

The Court declined to exercise supplemental jurisdiction over Grasshopper's remaining state law claims. Order 7-8. The Court also declined to resolve Defendants' anti-SLAPP motion without first giving Grasshopper a chance to amend. The Court noted, however, that "[i]f the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants." *Id.* at 8.

### H.   Grasshopper files an Amended Complaint.

Grasshopper then filed an Amended Complaint, asserting the same claims as the original complaint, again based on the Process and Mission Statements. At the hearing on Defendants' original motions, counsel for Grasshopper made several statements that remain critical to understanding the Amended Complaint. Most importantly, counsel repeatedly stressed that Grasshopper's case is ultimately premised on Passages' rating, and is particularly "focused on the rating for treatment" (which was given by Recovery Media in 2011 and never changed by any Defendant). Hrg. Tr. 11; *id.* at 9 ("the lawsuit, specifically the Lanham Act claim, is not directed at the review, it's directed at the ratings"). Counsel for Grasshopper also underscored that the ratings themselves, not any statements elsewhere on *The Fix*, are the only thing that matters to consumers: "Very frequently, they don't even read reviews or whatever additional information that is contained within an advertisement beyond the rating itself." *Id.* at 16.

### ARGUMENT

### I.   Grasshopper's Amended Complaint Fails to Remedy the Defects the Court Previously Concluded Were Fatal to Its False Advertising Claims.

In dismissing Grasshopper's federal and state false advertising claims, the Court spoke clearly about their defects and gave explicit instructions about what Grasshopper must do to remedy them. In sum, the Court told Grasshopper to explain (1) why it could not reasonably have discovered its claims based on the Process and Mission Statements within the statute of limitations period, and (2) how it actually suffered any harm at the hands of Defendants. Order 5-8.

Despite the Court's clear instructions, Grasshopper's Amended Complaint fails

10

STRIS | 725 S. FIGUEROA ST., STE 1830
MAHER | LOS ANGELES, CA 90017

to remedy these defects. This should be unsurprising: the defects the Court identified cannot be remedied by more artful pleading; they are fundamental flaws in Grasshopper's claims. The Court should therefore dismiss the false advertising claims for the same reasons it dismissed them before.

## A.   Any Claim Based on the Process Statement Is Time-Barred for the Reasons the Court Previously Explained.

In its dismissal order, the Court held that Grasshopper's false advertising claims based on the 2011 Passages Review and the Process Statement were time-barred because (1) the review and ratings were published in March 2011, and (2) the Process Statement was posted on *The Fix* website by October 1, 2014, which gave Grasshopper actual or constructive notice. Order 5-6. Both these acts of publication occurred more than three years before Grasshopper's complaint was filed.[6]

The Court also rejected Grasshopper's attempt to invoke the discovery rule—*i.e.*, that Grasshopper "was unaware that *The Fix* failed to use surveys in its review until the email exchange between Plaintiff and McCabe in 2016." Order 6. The Court reasoned, correctly, that Grasshopper "knew or reasonably could have discovered whether *The Fix* ever sent surveys to Passages' alumni," and thus "whether it had a claim for false advertising when it had constructive notice of the review policy on October 1, 2014." Order 6; *see Baby Trend, Inc. v. Playtex Prods., LLC*, No. 5:13-CV-00647, 2013 WL 4039451, at *4 (C.D. Cal. Aug. 7, 2013) (citing *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)).[7]

---

[6]   The Court correctly explained that "the three-year statute of limitations begins to run on the initial publication of the actionable statement." Order 5 (citing *Yaeger v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012)). It also noted that although "[r]epublication of a statement can reset the statute of limitations," the "Passages review itself has not been substantially altered since its initial publication in 2011," and *The Fix*'s "alteration [of the star ratings] was before September 15, 2014, which does not save Plaintiff's claim." Order 5 n.2.

[7]   In *Baby Trend*, the court dismissed where the plaintiff "fail[ed] to show that it took steps to investigate the validity" of a claim that a Playtex product was 'Proven #1

STRIS
MAHER | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

1    Nothing has changed in Grasshopper's Amended Complaint. Grasshopper

2    continues to rely on the Process Statement as a basis for its false advertising claims,

3    and it continues to assert, based on the email exchange with Ms. McCabe, that "[b]efore

4    July 31, 2016, Plaintiff did not know and could not have reasonably known that *The*

5    *Fix* had lied and had not received client surveys from Passages Malibu clients." FAC

6    ¶ 35. But the Amended Complaint still entirely fails to explain why Grasshopper could

7    not have discovered "whether *The Fix* ever sent surveys" to Passages for it to forward

8    to its alumni. Order 6. That is because it cannot do so.

9    As of October 2014, the Process Statement said that *The Fix* "invite[s] *selected*

10   *centers* to solicit former clients to complete a detailed, 20-question survey," FAC ¶ 21

11   (emphasis added), meaning that Passages knew or should have known *at that time*

12   whether it received such an invitation. *See* Order 6; *Baby Trend*, 2013 WL 4039451, at

13   *4. Indeed, Grasshopper itself asserts it has known all along that *The Fix* did not send

14   it surveys to distribute to its alumni: it claimed in 2016 that *The Fix* failed to comply

15   with the Process Statement because "[n]o one ever contacted Passages or gave them a

16   survey to pass out to their alumni." RJN Ex. B at 4. Grasshopper cannot plead its way

17   around these facts. Accordingly, any false advertising claim based on the Process

18   Statement is time-barred for the same reasons the Court has already explained.

19   **B.    Any Claim Based on the Mission Statement Is Time-Barred for the**

20        **Reasons the Court Previously Explained.**

21   Grasshopper fares no better with respect to the Mission Statement. As it did

22   _____

23   in Odor Control.'" 2013 WL 4039451, at *4. The plaintiff had also failed to allege "any explanation for how they lacked means of obtaining that knowledge or how the facts

24   could not have been discovered at an earlier date." *Id.* Other cases impose a similarly stringent burden. *See, e.g., Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133

25   (C.D. Cal. 2010) (dismissing where plaintiff failed to prove that "she had no actual or constructive knowledge of facts sufficient to put her on inquiry" before discovery of

26   defendant's fraudulent action); *Saaremets v. Whirlpool Corp.*, No. 2:09-CV-02337, 2010 WL 11571214, at *5 (E.D. Cal. Mar. 19, 2010) ("[W]hen the plaintiff . . . has the

27   opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run.").

28

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:18-CV-923 SVW (RAOx)

1 before, Grasshopper alleges it first learned of Sober Media and Cliffside's common
2 ownership from a November 2017 article on *The Verge.* FAC ¶ 32. But once again, the
3 Amended Complaint contains *no* allegation that Grasshopper could not have
4 discovered this fact through the exercise of reasonable diligence.

5              **1.**      **The Court Has Already Rejected Grasshopper's Argument.**

6       As an initial matter, both the Mission Statement and Grasshopper's discovery
7 rule argument are old news. In its original papers, Grasshopper identified the "sole
8 bias" language in the Mission Statement as a false factual assertion grounding its
9 Lanham Act claim. MTD Opp. 6, 9. Grasshopper originally alleged (as it does again)
10 that the relationship between Mr. Taite and *The Fix* "was unknown to Plaintiff until
11 approximately November, 2017, when an independent website called The Verge
12 published an article on the issue." Compl. ¶ 17. And Grasshopper, while admitting the
13 Mission Statement was added no later than September 8, 2014, previously contended
14 the limitations period was tolled until it learned Mr. Taite owned The Fix in November
15 2017. MTD Opp. 6; McCauley Decl. ¶ 3, ECF No. 20.

16       The Court rejected Grasshopper's argument. It held that allegations of
17 Grasshopper's ignorance were "not enough" to invoke the discovery rule. Order 7.
18 Rather, "the Plaintiff must also plead that it could not have discovered this relationship
19 through reasonable diligence or that this information was not otherwise publicly
20 available." *Id.* This requirement was fatal to the original claim because "[t]here [were]
21 no such allegations in the . . . complaint." *Id.* So too with the Amended Complaint.

22              **2.**      **Grasshopper Has Not Remedied the Flaw in Its Discovery Rule**
23                      **Argument With Respect to the Mission Statement.**

24       Despite the Court's explicit instruction, Grasshopper did not fix its discovery
25 rule problem in the Amended Complaint. Grasshopper again alleges it did not discover
26 the relationship between Cliffside and *The Fix* until the November 2017 article in *The*
27 *Verge.* FAC ¶ 32. The Amended Complaint adds an allegation that *The Verge* "further
28 reported that 'people reading [*The Fix*] had no way to know the connection (until

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

13

disclaimers appeared after The Verge approached the sites for comment).'" *Id.* But this "allegation" is nothing more than a quotation of ***The Verge's*** view that website readers had no way of discerning the connection until disclaimers were added to the site. That is a critical distinction, particularly given that *The Verge* also said, in the *very same sentence* from which the Amended Complaint selectively quotes, that this information was "relatively well-known within the industry." RJN Ex. C at 2.

It is thus telling that there is *no* allegation, not even a conclusory one (much less a factual one), that *Grasshopper* could not have discovered the relationship through reasonable diligence, and *no* allegation that *Grasshopper* "took steps to investigate the validity" of the sole-bias claim. *Baby Trend*, 2013 WL 4039451, at *4. The Court's original holding thus applies equally to the Amended Complaint—the discovery rule is not met, and any claim based on the Mission Statement is time-barred.

The absence of even minimal affirmative allegations of the discovery rule elements is alone enough to defeat Grasshopper's claim. But it is worth noting that Grasshopper's new allegations point to the reason it did not fix the defect in the original complaint: It did not because it could not. By alleging that *The Verge* discovered through investigation that *The Fix* was owned by Mr. Taite, Grasshopper tacitly acknowledges that it, too, could have discovered this information by exercising reasonable diligence. FAC ¶ 32. Grasshopper admitted it had ready access to *The Fix*'s staff, and discussed the 2011 Passages Review with them, both before and after Sober Media purchased the site in 2013 and posted the Mission Statement in 2014. Compl. ¶¶ 20–21. And Grasshopper had every reason to investigate in light of the grievous harm it alleges from the Passages review, which had been on *The Fix* since 2011. But Grasshopper has not alleged it undertook the required investigation, because no such investigation was undertaken. *Baby Trend, Inc.,* 2013 WL 4039451, at *4 (citing *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)) (dismissing where plaintiff "fail[ed] to show that it took steps to investigate the validity" of a claim that a Playtex product was "Proven #1 in Odor Control" and failed to provide "any

14

explanation for how they lacked means of obtaining that knowledge or how the facts could not have been discovered at an earlier date."); *Saaremets*, 2010 WL 11571214, at *5 ("[W]hen the plaintiff . . . has the opportunity to obtain knowledge from sources open to his investigation . . . the statute commences to run."). Any false advertising claim based on the Mission Statement is time-barred.

## C.   The Amended Complaint Contains the Same "Vague and Conclusory" Allegations of Harm the Court Previously Found Inadequate.

In addition to the fatal statute of limitations defects, the Court held that "Plaintiff's factual allegations of harm [were too] vague and conclusory" to "state a claim for false advertising." Order 7. The Court concluded that "Plaintiff fail[ed] to allege sufficient facts explaining how the addition of a single star to Cliffside's rating caused a 'diversion of sales from Passages to Cliffside or a lessening of the goodwill associated with Plaintiff's Products' when *The Fix* had always given Cliffside a substantially higher star rating than Passages." Order 7 (citation omitted).[8]

Grasshopper's Amended Complaint does not remedy this defect. The allegations of harm in the Amended Complaint are *materially identical* to the allegations in the original complaint. The original complaint alleged:

> 27. Defendants' false and misleading statements about Passages Malibu, particularly in comparison to the glowing review and rating for Cliffside Malibu, have caused Plaintiff to suffer a decline of business, diversion of clients, loss of goodwill, and injury to business reputation, causing damages in excess of $50 million. Upon information and belief, in this same time period, Cliffside Malibu has experienced an increase in patient inquiries and enrollments.

Compl. ¶ 27; *see also* Compl. ¶ 25 ("The Fix did not want to remove the false Passages Malibu review and rating because it would decrease traffic to The Fix, and by

---

[8]   This reasoning applies with still greater force to Defendants increasing Passages' rating—Grasshopper cannot possibly allege that this somehow caused it harm.

S T R I S
M A H E R   | 725 S. FIGUEROA ST., STE 1830   | LOS ANGELES, CA 90017

extension, the website's advertising revenue.").

Adding nothing, the Amended Complaint only rearranges these allegations:

27. As a result of the false and misleading statements alleged above, Passages Malibu has suffered a decline of business, diversion of clients, loss of goodwill, and injury to business reputation, causing damages to Plaintiff in excess of $50 million.

28. Upon information and belief as a result of the false and misleading statements alleged above, Cliffside Malibu has experienced an increase in patient inquiries and enrollments.

29. Upon information and belief as a result of the false and misleading statements alleged above, The Fix has experienced increased traffic and increased advertising revenue.

FAC ¶¶ 27-29.

Turning two paragraphs into three—without adding any new facts—does not make those allegations any less vague or conclusory. Grasshopper still has not alleged "facts explaining how the addition of a single star to Cliffside's rating" caused it harm—let alone how *increasing* Passages' rating caused it harm. Order 7; *see Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see also* Hrg. Tr. 9 (confirming that Grasshopper's false advertising claims stem from "the ratings"); *id.* at 16.

Accordingly, even if Grasshopper's false advertising claims were not barred by the statute of limitations (they are), they independently fail for the same reasons the Court has already explained. Dismissal of such vague and conclusory allegations with prejudice is particularly appropriate "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims." *Zucco Partners*, 552 F.3d at 1007.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

16

* * *

Because Grasshopper's amended false advertising claims suffer from the identical flaws of the original false advertising claims, the Court should grant Defendants' motion and dismiss these claims with prejudice.

## II.   Grasshopper's False Advertising Claims Fail for Many Additional Reasons.

The Court need go no further than its earlier reasoning in order to dismiss Grasshopper's amended false advertising claims. But those claims independently fail for a litany of additional reasons.

### A.   The Ratings of Passages and Cliffside Are Unactionable Opinions.

Despite its shifting theories and allegations, Grasshopper has repeatedly made one thing clear: its false advertising claims are ultimately premised on the negative star ratings *The Fix* gave Passages (particularly the one-star rating for treatment) and the positive star ratings it gave Cliffside. *See, e.g.*, Hrg. Tr. 9 ("Just to clarify, the lawsuit, specifically the Lanham Act claim, is not directed at the review, it's directed at the ratings."). But it is black-letter law that non-provable opinions (i.e., statements of subjective belief based on true facts) are categorically protected by the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (using the example: "In my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin."). And star ratings on *The Fix* are a paradigmatic example of non-provable opinions. If declaring a movie or cheeseburger is "great—five stars" or "terrible—one star" is protected by the First Amendment (which no one would deny), so are similar ratings of luxury rehabilitation treatment programs.

Put simply, opinions such as those here can never support a claim for false advertising under the Lanham Act. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statements not "capable of being proved false or of being reasonably interpreted as a statement of objective fact" cannot give rise to Lanham Act liability); *Donini Int'l, S.P.A. v. Satec (USA) LLC*, No. 03-CV-9471, 2004 WL 1574645, at *7 (S.D.N.Y July 13, 2004) (critical articles in trade magazine

S T R I S
M A H E R
725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

17

not commercial speech under Lanham Act).

**B.      Grasshopper Has Identified No False Statement of Fact.**

To the extent Grasshopper attempts to argue the Process and Mission Statements somehow transform the ratings into actionable statements, it is also wrong. Not only does the "transformation" theory fail as a matter of law and common sense, but the Amended Complaint does not adequately allege that *either* statement is actually false. As to the Process Statement, the purported admission upon which Grasshopper relies is no admission at all, and the 2011 Passages Review on its face shows that five alumni were surveyed. As to the Mission Statement, Grasshopper concedes the 2011 Passages and 2012 Cliffside Reviews were published by an independent third party and not materially changed by Defendants. That means Grasshopper cannot plausibly allege the reviews are "biased" due to Cliffside and Sober Media's common ownership today.

*Process Statement.* Grasshopper bases its allegation that the Process Statement is false on an email exchange with Ms. McCabe in 2016, stating that "Plaintiff reasonably inferred [from Ms. McCabe's emails] that written surveys from Passages Malibu clients did not exist and never existed." FAC ¶ 35. But the emails warrant no such inference. They simply say that the survey process may have been different under previous management. RJN Ex. B at 2. Nor is it true that *The Fix* published its reviews and ratings in the absence of client surveys; the Passages review, for example, *on its face* discloses that at least five Grasshopper alumni were surveyed. RJN Ex. A at 6; Anti-SLAPP Motion at 21-22. Grasshopper has never disputed the authenticity of the patient comments quoted in the 2011 Passages Review or the 2012 Cliffside Review. *E.g.*, FAC ¶ 14. Those comments could only have come through a "survey process."

Moreover, Grasshopper continues to suggest that the Process Statement requires *The Fix* to generate its reviews and ratings formulaically, based exclusively on alumni survey results. *See, e.g.*, FAC ¶¶ 23, 26. But the Process Statement makes perfectly clear that the reviews and ratings are *not* solely the aggregation of survey results, but also consider "*other information* obtained through the survey process." FAC ¶ 21

18

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

(emphasis added). The reviews on their face discuss things that would not have come from client ratings or comments, but rather other publicly available sources that came to *The Fix*'s attention during the survey process—from details like a facility's address or physical surroundings, to broad observations about the facility's reputation in the industry. RJN Ex. A at 5-6. *The Fix* of course incorporated this "other information" into its reviews and ratings, like any responsible publication would, and as the Process Statement said it would. Grasshopper's suggestion that *The Fix* purported to blind itself to anything outside the narrow confines of the surveys themselves is implausible.

*Mission Statement.* The Mission Statement likewise cannot ground Grasshopper's false advertising claims because it is likewise not a false statement of fact. First, The Fix said nothing false in stating that its "sole bias" is to destigmatize, support, and assist people in recovery. "Bias" means "an inclination of temperament or outlook." *Bias*, *Merriam-Webster Online Dictionary* (updated May 17, 2018). Grasshopper has offered no reason to believe that the "inclination" of The Fix was something other than what it stated—to help people without judging them.

To the extent Grasshopper's theory is that the "sole bias" statement is deceptive with respect to the Passages or Cliffside Reviews in light of Mr. Taite's ownership of Cliffside, it also fails. These reviews and ratings were posted on *The Fix* well before Sober Media acquired it, and have not been altered since (except that *both* facilities' ratings have been increased slightly). It is therefore beyond dispute that Sober Media's common ownership with Cliffside had no effect on the 2011 Passages or 2012 Cliffside Reviews. In suggesting *The Fix* should have told its readers that the 2011 Passages and 2012 Cliffside Reviews were somehow shaped by *The Fix*'s common ownership with Cliffside, it is *Grasshopper* that is demanding a false statement be made to the public.

In any event, assertions that a business has no "bias" are textbook non-actionable puffery. *See, e.g., Prager Univ. v. Google LLC*, No. 5:17-CV-06064, 2018 WL 1471939, at *11 (N.D. Cal. Mar. 26, 2018) ("statements about YouTube's viewpoint neutrality . . . [we]re non-actionable puffery under the Lanham Act."); *Boca Raton*

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

19

*Firefighters v. Bahash*, 506 F. App'x 32, 34 (2d Cir. 2012) (representations that company used "'transparent and independent decision-making' to produce 'independent and objective analysis' . . . [we]re mere commercial puffery").

**C.      The Failure to Disclose Common Ownership Is Not Actionable.**

Given that the Mission Statement cannot possibly be false in relation to the 2011 Passages and 2012 Cliffside Reviews, *The Fix*'s failure to disclose common ownership is unactionable under the Lanham Act. "A simple failure to disclose is not a violation of the Lanham Act because the absence of any statement is neither 'false' nor a 'representation.'" *Novation Ventures, LLC v. J.G. Wentworth Co., LLC*, No. 15-CV-00954, 2015 WL 12765467, at *7 (C.D. Cal. Sept. 21, 2015) (dismissing Lanham Act claim premised on failure to disclose common ownership) (citation omitted). Only where that failure renders some other *affirmative* statement false or misleading is it actionable. *Compare Register.com, Inc. v. Domain Registry of Am., Inc.*, No. 02-CV-6915, 2002 WL 31894625, at *14 (S.D.N.Y. Dec. 27, 2002) (rejecting Lanham Act claim premised on failure to disclose common ownership where nondisclosure did not alter the character of any affirmative representation), *with Lamothe v. Atl. Recording Corp.*, 847 F.2d 1403, 1407 (9th Cir. 1988) (denying motion to dismiss Lanham Act claim premised on partial but incomplete disclosure of authorship, where incomplete disclosure deprived additional authors of recognition). But here, because both reviews were in fact published by an independent third party, and Sober Media's lone action was to slightly increase *both* facilities' ratings, the failure to disclose common ownership does not render the Mission Statement false or misleading.

**D.      The Process and Mission Statements Are Not Commercial Advertising or Promotion.**

Neither the Process Statement nor the Mission Statement qualifies as commercial advertising or promotion, because *The Fix* made neither statement for the purpose of proposing a commercial transaction of any kind. They accordingly do not trigger the Lanham Act. 15 U.S.C. § 1125(a)(1)(B) (imposing liability on "any person

20

who . . . in commercial advertising or promotion . . . .”). Nor could they without presenting grave First Amendment concerns. *See, e.g.*, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 906 (9th Cir. 2002) (“If speech is not ‘purely commercial’—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection.”); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1185 (9th Cir. 1991) (use of image not pure commercial speech where not “merely for the purpose of selling a particular product”); *see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (commercial speech does “no more than propose a commercial transaction.”).

Grasshopper previously recognized that the Statements were at most “hybrid” communications combining commercial and non-commercial elements, and that to prevail it must show that the communication (1) is an advertisement, (2) refers to a specific product or service, and (3) the speaker has an economic motivation for the speech. MTD Opp. 11 (citing *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 293-94 (S.D.N.Y. 2016)). But the challenged statements have none of these features. On the contrary, the statements advertise *nothing* and refer to *no* specific product. This case is thus unlike *Enigma*, where posts “unmistakably constitute[d] advertisements for the Affiliate products” and where the poster earned a commission on directed sales of those products. *Enigma*, 194 F. Supp. 3d at 294.

## E. Grasshopper Itself Has Said It Is the Ratings, Not the Process and Mission Statements, that Are Material to Consumers.

The Lanham Act requires that any misleading statement be material to be actionable. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). And here, no one could seriously believe consumers relied on the Process or Mission Statements in deciding to forego treatment at Passages. As Grasshopper itself has said, readers look at *ratings* to determine which treatment facility to attend. *E.g.*, Hrg Tr. 9 (confirming that “the lawsuit, specifically the Lanham Act claim, is . . . directed at the ratings”); *id.* at 16 (“Very frequently [consumers] don’t even read reviews or whatever

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

21

1  additional information is contained within an advertisement beyond the rating itself."). 2  Grasshopper's own statements show that it is the *ratings*, not the Process and Mission 3  Statements, that "influence the purchasing decision" of a customer. *Skydive Arizona*, 4  673 F.3d at 1110. But as noted, the ratings themselves are unactionable opinions that 5  cannot form the basis of a false advertising claim. That leaves Grasshopper with no 6  statement both actionable and material upon which to base its false advertising claims.[9]

7  **F.  Sober Media Acquired *The Fix* Free of Successor Liability.**

8  Grasshopper has repeatedly admitted and alleged that its claims are premised on 9  the one-star treatment rating and other conduct that occurred before Sober Media 10  acquired *The Fix* out of bankruptcy in 2013. *E.g.*, Hrg. Tr. 9; FAC ¶¶ 4, 20, 23, 48. 11  Claims premised on pre-petition conduct are barred, however, because Sober Media 12  bought *The Fix* "free and clear" of successor liability. *See* 11 U.S.C. § 363(f); *In re* 13  *Motors Liquidation Co.*, 568 B.R. 217, 230 (S.D.N.Y. Bankr. 2017).

14  **III.  Grasshopper's Remaining State Law Claims Also Fail.**

15  In addition to its state and federal false advertising claims, Grasshopper asserts 16  "libel per se" and unfair competition claims under California law. For the reasons 17  explained below and in Defendants' concurrently filed Anti-SLAPP Motion, 18  Grasshopper's remaining state law claims also fail.

19  1.  Grasshopper does not state a claim for libel per se for three reasons.[10]

20  ***First***, no Defendant has made a libelous statement. Grasshopper's Amended 21  Complaint *expressly* bases its libel claim on "Defendants' review of Passages Malibu"

22  ---
23  [9]  Grasshopper's own conduct underscores the immateriality of the Process 24  Statement. When offered the opportunity to hand-select Passages alumni to complete surveys upon which a new review and rating would be created and published, Passages failed to follow through. RJN Ex. B at 17, 19, 21.

25  [10]  Grasshopper labels its claim "libel per se," but it actually asserts a claim for trade 26  libel. California law has long been clear that libel per se involves "the person or reputation of the plaintiff," whereas trade libel "relates to his goods" or the services he 27  provides. *Shores v. Chip Steak Co.*, 279 P.2d 595, 597 (Cal. Dist. Ct. App. 1955). Here, Grasshopper's allegations can plausibly be read only to concern the goods or services 28  it provides at Passages Malibu.

and "Defendants' single-star rating of Passages Malibu for 'Treatment.'" FAC ¶¶ 46, 48. But both the review and treatment rating were published by *Recovery Media* and never changed by any Defendant. Moreover, Grasshopper identifies not a single false factual statement in the review, and star-ratings are unprovable opinions that cannot form the basis of a libel claim. *See Hofmann Co. v. E.I. du Pont de Nemours & Co.*, 248 Cal. Rptr. 384, 387 (Ct. App. 1988) ("If [Defendants'] statements about [Plaintiff] are opinions, the cause of action for trade libel must of course fail.").

**Second**, Grasshopper has not adequately alleged that it suffered direct financial harm. This requires "the loss of specific sales," meaning "the plaintiff must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived." *Erlich v. Etner*, 36 Cal. Rptr. 256, 259 (Cal. Dist. Ct. App. 1964). Grasshopper has done nothing of the sort—only alleging (vaguely and fantastically) that it suffered "damages . . . in excess of $50 million." FAC ¶ 27. That is patently insufficient.

**Finally**, given that the allegedly libelous statements were published in 2011, Grasshopper's trade libel claim is time-barred by California's one-year statute of limitations. Cal. Code Civ. P. § 340(c); *see Christoff v. Nestlé USA, Inc.*, 213 P.3d 132, 137-38 (Cal. 2009) (California abides by a "single-publication rule," meaning the time to sue runs from the initial publication of a single mass communication).

2.      Grasshopper fails to state a claim for "unlawful and fraudulent" conduct in violation of Section 17200 of the California Business and Professions Code (UCL). FAC ¶ 60. As a threshold matter, Grasshopper lacks standing to sue under the UCL because its UCL claim stems from Defendants' alleged misrepresentations, but it has not "allege[d] [its] own reliance on the alleged misrepresentations, rather than the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015) (collecting cases). Grasshopper's claim is that "readers of The Fix," *not Grasshopper itself*, relied on *The Fix*'s statements and nondisclosures. FAC ¶ 60. Although another person's reliance may suffice for UCL claims *not*

STRIS
MAHER | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

premised on misrepresentations, the overwhelming weight of authority requires that "a UCL fraud plaintiff . . . allege that *he or she* was motivated to act or refrain from action based on the truth or falsity of a defendant's statement." *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 888 n.10 (Cal. 2011) (emphasis added); *see L.A. Taxi*, 114 F. Supp. 3d at 866. Because Grasshopper does not allege its own reliance, its UCL claim fails.

Nor has Grasshopper adequately alleged a UCL claim on the merits. Its "unlawful" prong claim fails because the violations upon which it is predicated— Lanham Act and false advertising, FAC ¶ 60—fail. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). And its "fraudulent" prong claim fails because Grasshopper cannot establish that Defendants' conduct would mislead "a reasonable consumer." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 (N.D. Cal. 2012). That test is the same under the UCL as it is under California's false advertising law. *Id.* Thus, again, because the false advertising claim fails, the UCL claim does as well.

## IV. At Minimum, All Claims Against Taite and Cliffside Must Be Dismissed.

The Court should, at minimum, dismiss the claims against Taite and Cliffside. Grasshopper previously admitted that it must satisfy Rule 9(b) to establish liability with respect to these Defendants. MTD Opp. 21. But its Amended Complaint does not come close to that standard. Grasshopper offers only the same boilerplate legal conclusions of ownership, agency, and conspiracy that it alleged originally. *Compare, e.g.*, Compl. ¶ 9 ("Taite controls and is directly responsible for the actions of Clean & Sober Media and Cliffside Malibu"), Compl. ¶ 10 ("Defendants acted as the agent of the other Defendants with respect to the conduct that gives rise to the claims in this action."), *and* Compl. ¶ 11 ("Defendants conspired and acted in concert with each other with respect to the conduct that gives rise to the claims in this action."), *with* FAC ¶ 10 ("Upon information and belief, Taite controls and is directly responsible for the actions of CSM and Cliffside Malibu, both of which are closely held corporations."), FAC ¶ 11 ("Defendants acted as the agent of the other Defendants with respect to the conduct that gives rise to the claims in this action."), *and* FAC ¶ 12 ("Defendants conspired and

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

24

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

1  acted in concert with each other with respect to the conduct that gives rise to the claims
2  in this action.").

3      Such form allegations do not suffice—at bottom, Grasshopper continues trying
4  to hold Mr. Taite and Cliffside liable based solely on the fact that Mr. Taite owns both
5  Sober Media and Cliffside. But common ownership alone does not make individual
6  entities liable as co-conspirators. *See, e.g.*, *Donini*, 2004 WL 1574645, at *4 (common
7  ownership of trade magazine for dry cleaning and laundry industry and dry cleaning
8  equipment distributor not sufficient factual basis to allege distributor was responsible
9  for offending articles under conspiracy theory). Nor does ownership in and of itself
10 create an agency relationship. *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 99
11 Cal. Rptr. 2d 824, 838-39 (Cal. Ct. App. 2000) (agency relationship requires more than
12 control incident to ownership). And Grasshopper cannot predicate a conspiracy claim
13 on the bare fact that Mr. Taite may have acted on behalf of Sober Media as an officer
14 of the company. *See AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d
15 941, 947-48 (N.D. Cal. 2003). Put simply, Grasshopper has not offered, because it
16 cannot offer, *any* particularized allegations that would warrant the drastic step of
17 ignoring corporate distinctions or piercing the corporate veil.

18     Because Grasshopper does not allege that Cliffside or Mr. Taite is legally
19 responsible for content on *The Fix*, the Court should dismiss the claims against them.

20                          **CONCLUSION**
21     For the foregoing reasons, the First Amended Complaint should be dismissed
22 with prejudice.

23                          Respectfully submitted,
24 Dated: May 30, 2018      **STRIS & MAHER LLP**

25                          /s/ Peter K. Stris
26                          Peter K. Stris
                            Brendan S. Maher
27                          Elizabeth Rogers Brannen
                            Dana Berkowitz
28                          Victor O'Connell

                                25

725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Shaun P. Martin

5998 Alcala Park, Warren Hall
University of San Diego School of Law
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.