1

**STRIS & MAHER LLP**
PETER K. STRIS (SBN 216226)
peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
brendan.maher@strismaher.com
ELIZABETH BRANNEN (SBN 226234)
elizabeth.brannen@strismaher.com
DANA BERKOWITZ (SBN 303094)
dana.berkowitz@strismaher.com
VICTOR O'CONNELL (SBN 288094)
victor.oconnell@strismaher.com
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
smartin@sandiego.edu
University of San Diego School of Law
5998 Alcalá Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.

2

3

4

5

6

7

8

9

10

11

12

13

14

## UNITED STATES DISTRICT COURT

15

## CENTRAL DISTRICT OF CALIFORNIA

16

## WESTERN DIVISION

17

GRASSHOPPER HOUSE, LLC,

18

   Plaintiff,

19

  v.

20

CLEAN & SOBER MEDIA
LLC, et al.,

21

   Defendants.

22

23

24

25

26

27

28

Case No. 2:18-CV-923 SVW (RAOx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' RENEWED SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND, THIRD, AND FOURTH CLAIMS FOR RELIEF AS STRATEGIC LAWSUITS AGAINST PUBLIC PARTICIPATION [CAL. CIV. P. CODE § 425.16]**

Date:  July 2, 2018
Time:  1:30 p.m.
Location: Courtroom 10A
Judge:  Hon. Stephen V. Wilson

# TABLE OF CONTENTS

**Page**

Table of Authorities ....................................................................................ii

Preliminary Statement ..............................................................................1

Applicable Legal Standards ......................................................................2

Argument ....................................................................................................3

I.     Defendants Meet Their Anti-SLAPP Burden. ....................................4

    A.     Defendants' Conduct Qualifies Under Section
        425.16(e). ....................................................................................4

    B.     The Section 425.17(c) Exception Does Not Apply. ...............6

        1.     Defendants Fall Within *Both* Prongs of the
              Carve-out ........................................................................7

            a.     Prong (1) of the Carve-out Applies. ...................7

            b.     Prong (2) of the Carve-out Applies. ...................9

        2.     The Statutory Exception Does Not Apply
              on Its Own Terms. ........................................................10

II.    Grasshopper Cannot Meet Its Anti-SLAPP Burden. .........................12

    A.     Grasshopper Cannot Establish a Probability that
        It Will Prevail on the Libel *Per Se* Claim. .............................13

        1.     Grasshopper Fails to State a Claim. ............................13

         2.     The Claim Is Not Supported by Sufficient
              Evidence. ......................................................................16

    B.     Grasshopper Cannot Establish a Probability that
         It Will Prevail on the False Advertising Claim. .....................18

    C.     Grasshopper Cannot Establish a Probability that
        It Will Prevail on the Unfair Competition Claim. ..................24

Conclusion ................................................................................................25

S T R I S | 725 S. FIGUEROA ST., STE 1830<br>M A H E R | LOS ANGELES, CA 90017

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Fed. Republic of Nigeria,*
  219 F.3d 869 (9th Cir. 2000) .................................................................23

*Baral v. Schnitt,*
  376 P.3d 604 (Cal. 2016) ................................................................3, 4

*Barnes-Hind, Inc. v. Superior Court,*
  181 Cal. App. 3d 377 (Cal. Ct. App. 1963) .........................................13

*Barrett v. Rosenthal,*
  146 P.3d 510 (Cal. 2006) ......................................................................6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .............................................................................19

*Benson v. Kwikset Corp.,*
  62 Cal. Rptr. 3d 284 (Cal. Ct. App. 2007) ............................................6

*Briggs v. Eden Counsel for Hope & Opportunity,*
  969 P.2d 564 (Cal. 1999) ......................................................................3

*Cairns v. Franklin Mint Co.,*
  107 F. Supp. 2d 1212 (C.D. Cal. 2000) ...............................................25

*Carver v. Bonds,*
  37 Cal. Rptr. 3d 480 (Cal. Ct. App. 2005) .............................................6

*Christoff v. Nestlé USA, Inc.,*
  213 P.3d 132 (Cal. 2009) .....................................................................14

*Club Members for an Honest Election v. Sierra Club,*
  196 P.3d 1094 (Cal. 2008) .....................................................................1

*D.A.R.E. Am. v. Rolling Stone Magazine,*
  101 F. Supp. 2d 1270 (C.D. Cal. 2000) ...............................................15

*DC Comics v. Pac. Pictures Corp.,*
  706 F.3d 1009 (9th Cir. 2013) ...............................................................3

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

ii

*Demetriades v. Yelp, Inc.*,
    228 Cal. App. 4th 294 (2014) ...................................................................11, 12

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...................................................25

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................................................25

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ...................................................................................3

*Erlich v. Etner*,
    36 Cal. Rptr. 256 (Cal. Dist. Ct. App. 1964) .......................................16

*Franklin v. Dynamic Details, Inc.*,
    10 Cal. Rptr. 3d 429 ...............................................................................15

*General Bedding Corp. v. Echevarria*,
    947 F.2d 1395 (9th Cir. 1991) ...............................................................19

*Grasshopper House v. Accelerated Recovery*,
    No. 09-CV-8128 (C.D. Cal.) ............................................................16, 17

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ...................................................................5

*Hodsdon v. Mars, Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016) .................................................22

*Hofmann Co. v. E.I. du Pont de Nemours & Co.*,
    248 Cal. Rptr. 384 (Cal. Ct. App. 1988) ...............................................15

*In re Jamster Mktg. Litig.*,
    No. 05-CV-0819, 2009 WL 1456632 (S.D. Cal. May 22, 2009) ...........20

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2010) ........................................................................24

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
    114 F. Supp. 3d 852 (N.D. Cal. 2015) ...................................................24

*L.A. Taxi Coop. v. Indep. Taxi Owners Ass'n of L.A.*,
    239 Cal. App. 4th 918 (2015) ...................................................................5

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

iii

*Major v. Silna*,
    134 Cal. App. 4th 1485 (2005) ...................................................................8

*In re Motors Liquidation Co.*,
    568 B.R. 217 (S.D.N.Y. Bankr. 2017) ....................................................14

*Navellier v. Sletten*,
    52 P.3d 703 (Cal. 2002) .................................................................3, 4, 12

*Nygard, Inc. v. Uusi-Kerttula*,
    72 Cal. Rptr. 3d 210 (Cal. Ct. App. 2008) ...............................................5

*O'Grady v. Superior Court*,
    44 Cal. Rptr. 3d 72 (Cal. Ct. App. 2006) ..................................8, 9, 10

*Parsons v. Tickner*,
    31 Cal. App. 4th 1513 (1995) .................................................................19

*Roberts v. McAfee, Inc.*,
    660 F.3d 1156 (9th Cir. 2011) ...............................................................14

*Robinson v. HSBC Bank USA*,
    732 F. Supp. 2d 976 (N.D. Cal. 2010) ...................................................15

*San Diegans for Open Gov't v. San Diego State
    Univ. Research Found.*,
    13 Cal. App. 5th 76, 99 (2017) .................................................................8

*Seelig v. Infinity Broad. Corp.*,
    119 Cal. Rptr. 2d 108 (Cal. Ct. App. 2002) .............................................3

*Selkirk v. Grasshopper House*,
    No. BC706281 (L.A. Sup. Ct.) ...............................................................18

*Shores v. Chip Steak Co.*,
    279 P.2d 595 (Cal. Dist. Ct. App. 1955) ...............................................13

*Standing Comm. on Discipline of U.S. Dist. Court
    for Cent. Dist. of Cal. v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ...............................................................15

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) .................................................................3

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

iv

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009).................................................................24, 25

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..........................................................................15

*Verizon Del., Inc. v. Covad Commc'ns. Co.*,
    377 F.3d 1081 (9th Cir. 2004) ...........................................................2

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................................22

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
    673 F. Supp. 2d 1073 (E.D. Cal. 2009) .........................................18, 20

*Walter & Zanger, Inc. v. Paragon Indus., Inc.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007)..............................................18

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015) ..............................................19

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..............................................24

*White v. Lieberman*,
    103 Cal. App. 4th 210 (2002) .............................................................2

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...........................................................25

*Wong v. Tai Jing*,
    189 Cal. App. 4th 1354 (Cal. Ct. App. 2010)........................................5

*In re WorldCom Secs. Litig.*,
    308 F. Supp. 2d 338 (S.D.N.Y. 2004) ................................................15

**Statutes, rules, and regulations:**

11 U.S.C. § 363(f)............................................................................14

15 U.S.C. § 1125(a) .........................................................................25

Cal. Bus. & Prof. Code § 17200 ..........................................1, 12, 24, 25

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

v

Cal. Bus. & Prof. Code § 17500 ............................................................. 1, 12

Cal. Civ. Code § 1783 ............................................................................. 19

Cal. Code Civ. P. § 340(c) ...................................................................... 13

Cal. Code Civ. P. § 425.16 *et. seq.* .................................................... *passim*

Cal. Code Civ. Proc. § 338(a) ................................................................. 19

Cal. Evid. Code § 1070 ....................................................................... 7, 8, 9

**Constitution:**

Cal. Const., art. I, § 2 .............................................................................. 7, 8

**Other Authorities**

*Article*, *Merriam-Webster Online Dictionary* (updated May 21, 2018) ...................... 10

Jenna Johnson *et al.*, *Trump Declares the Opioid Crisis a Public Health Emergency*, Wash. Post (Oct. 26, 2017) ...................................................... 5

*Magazine*, *Merriam-Webster Online Dictionary* (updated May 20, 2018) ................ 10

Mark Groubert, *Buying the Cure at Passages, Malibu: June 27, 2008*, L.A. Weekly (Mar. 27, 2011) ...................................................................... 18

Melissa Healy, *Trifecta of opioids, alcohol and suicide are blamed for the drop in U.S. life expectancy*, L.A. Times (Feb. 8, 2018) .................................... 5

*Newspaper*, *Merriam-Webster Online Dictionary* (updated May 17, 2018) .................................................................................................... 10

*Policies and Standards*, "The Seven Principles for the Conduct of a Newspaper" ¶ 5, Wash. Post (Jan. 1, 2016) .......................................... 12

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

Defendants Clean & Sober Media LLC ("Sober Media"), Cliffside Malibu ("Cliffside"), and Richard L. Taite submit this memorandum in support of their Renewed Special Motion to Strike Plaintiff's Second (Libel Per Se), Third (California Business & Professions Code § 17500), and Fourth (California Business & Professions Code § 17200) Claims for Relief (the "State Law Claims") in the First Amended Complaint ("Amended Complaint" or "FAC") pursuant to the anti-strategic lawsuit against public participation (anti-SLAPP) provisions of California Code of Civil Procedure § 425.16 *et seq*.

## PRELIMINARY STATEMENT

California's anti-SLAPP statute facilitates the "early dismissal of unmeritorious claims" that "interfere with the valid exercise of the constitutional rights of freedom of speech and petition." *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094, 1098 (Cal. 2008). Like the original complaint, the Amended Complaint seeks to suppress a seven-year-old opinion that Grasshopper does not like. That is precisely the type of abuse that the anti-SLAPP statute is designed to dissuade.

In response to Grasshopper's original complaint, Defendants filed a motion to dismiss and an anti-SLAPP motion to strike the State Law Claims. Unable to dispute that all factual statements in the reviews of Passages Malibu are true and the star ratings are non-actionable opinions, Grasshopper's opposition re-characterized its claims. Specifically, Grasshopper asserted that this lawsuit is actually about two innocuous statements first published on *The Fix* in 2014 that it contends are "provably false *factual* assertions about the source, nature, or basis of the opinions expressed." Grasshopper's Opp. to Mot. to Dismiss ("MTD Opp.") 9, ECF No. 17 (emphasis in original). The Amended Complaint focuses on those same two statements, which are:

1. That *The Fix* possessed at least five completed 20-question surveys from alumni of Passages Malibu and Cliffside whose individual star ratings were averaged to form the exclusive basis for the star ratings posted on *The Fix*. FAC ¶¶ 23, 26(b)-(c) (the "Process Statement"), ECF No. 30; and

2. That *The Fix*'s "stated editorial mission—and sole bias—is to destigmatize all forms of addiction and mental health matters, support recovery, and assist toward humane policies and resources." FAC ¶ 26(a) (the "Mission Statement").

In ruling on Defendants' prior motions, the Court rejected Grasshopper's arguments about the Process and Mission Statements and dismissed the complaint. The Court recognized that "[a]lthough Defendants prevailed on their motion to dismiss, resolution of the motion does not moot the anti-SLAPP motion." Order 8, ECF No. 29. Nonetheless, the Court denied the special motion to strike, reasoning that granting it without first giving Grasshopper leave to amend "would directly collide with" the federal policy favoring liberal amendment. *Id.* (quoting *Verizon Del., Inc. v. Covad Commc'ns. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004)). But the Court cautioned: "If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants." *Id.*

Despite that warning, Grasshopper's Amended Complaint re-alleges the same State Law Claims. *Compare* Compl. ¶ 1, ECF No. 1, *with* FAC ¶ 1. As explained below and in Defendants' concurrently filed motion to dismiss, the Amended Complaint fails to remedy *any* of the defects the Court identified, including that claims based on the allegedly offending statements are time-barred and that Grasshopper's "allegations of harm are vague and conclusory." *See* Order 5-8. Because Grasshopper has had an opportunity to amend, but has neither removed the offending claims nor remedied their defects, the Court should now consider Defendants' anti-SLAPP motion—even if it first addresses and grants Defendants' motion to dismiss. *White v. Lieberman*, 103 Cal. App. 4th 210, 220 (2002). And for the reasons explained below, the Court should strike each of the State Law Claims and award attorney's fees to Defendants.

## APPLICABLE LEGAL STANDARDS

The anti-SLAPP statute creates a two-step process for determining whether a cause of action must be struck and attorney's fees awarded: "First, the court decides

2

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002). Second, if the defendant makes the threshold showing, the burden shifts to the plaintiff to establish, with competent evidence, "a probability that [it] will prevail on the claim[s]." Cal. Code Civ. P. § 425.16(b)(1).[1]

The statute is construed broadly to protect the public interest. Cal. Code Civ. P. § 425.16(a); *Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr. 2d 108, 115 (Cal. Ct. App. 2002) (all sections of Section 425.16 are to be interpreted broadly); *Briggs v. Eden Counsel for Hope & Opportunity*, 969 P.2d 564, 573-74 (Cal. 1999) (broad application of statute enhances efficiency and justice). Its provisions apply in federal court to state-law causes of action pursuant to the *Erie* doctrine, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005).

## ARGUMENT

Defendants in this case make their threshold showing that the State Law Claims arise from protected activity because those claims all arise from the publication of written statements concerning a matter of public interest. Indeed, protecting publications from lawsuits seeking to suppress their views is the core reason for the anti-SLAPP statute's existence. The burden thus shifts to Grasshopper to show it will prevail on the merits. But for precisely the reasons the Court has already articulated, Grasshopper cannot make that showing. As such, the Court should strike each of the State Law Claims. *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013) ("The statute provides for a special motion to strike that is intended to stop . . . lawsuits early in the litigation process."). It should also award attorney's fees. Cal.

---

[1]   This process applies to each distinct cause of action, not to the suit as a whole. Thus, if the Court concludes some of Grasshopper's claims survive Defendants' anti-SLAPP motion, it nonetheless must strike any defective ones. *See Baral v. Schnitt*, 376 P.3d 604, 616 (Cal. 2016) ("[I]n cases involving allegations of both protected and unprotected activity, the plaintiff is required to establish a probability of prevailing on any claim for relief based on allegations of protected activity. Unless the plaintiff can do so, the claim and its corresponding allegations must be stricken.").

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

Code Civ. P. § 425.16(c)(1) (requiring an award of attorney's fees against a losing plaintiff); *Baral v. Schnitt*, 376 P.3d 604, 611 (Cal. 2016) ("significant effects" of the anti-SLAPP provisions include "an award of attorney's fees if the moving party prevails").

## I.     Defendants Meet Their Anti-SLAPP Burden.

Grasshopper has asserted three state-law claims each based on statements made on *The Fix*—an online periodical covering addiction and recovery, now published by defendant Sober Media. *See, e.g.*, FAC ¶¶ 1, 3-6. The central question at the first step of the anti-SLAPP analysis is whether these claims arise out of activity protected by the First Amendment. To make this showing, Defendants must establish that the activity fits "one of the categories spelled out in . . . section 425.16, subdivision (e)." *Navellier*, 52 P.3d at 708. It does, and no exception applies.

### A.     Defendants' Conduct Qualifies Under Section 425.16(e).

Section 425.16(e) lists four categories of conduct that are covered by the statute. This action involves two of them: subsections (e)(3) and (e)(4). They provide:

> (e)     As used in this section, "acts in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes: . . . .
>
> > (3)     any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
> >
> > (4)     any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. P. §§ 425.16(e)(3)-(4).

The content on *The Fix*, including the Process and Mission Statements, address "issue[s] of public interest," as both subsections (e)(3) and (e)(4) require. Those

4

S T R I S
M A H E R | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

subsections apply to "any issue in which the public is interested" and "need not be 'significant' to be protected by the anti-SLAPP statute." *Nygard, Inc. v. Uusi-Kerttula*, 72 Cal. Rptr. 3d 210, 220 (Cal. Ct. App. 2008). Even subjects of marginal public interest qualify—"the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice." *Hilton v. Hallmark Cards*, 599 F.3d 894, 905 (9th Cir. 2010).

*The Fix* is dedicated to publishing information about the drug abuse epidemic that grips the nation, one of the most salient public issues of the day. *See, e.g.*, Melissa Healy, *Trifecta of opioids, alcohol and suicide are blamed for the drop in U.S. life expectancy*, L.A. Times (Feb. 8, 2018) ("The opioid epidemic, which claimed the lives of 64,000 Americans in 2015 alone, 'is the tip of an iceberg' . . . ."); Jenna Johnson *et al.*, *Trump Declares the Opioid Crisis a Public Health Emergency*, Wash. Post (Oct. 26, 2017). The publication is a serious contributor to the public discourse about that epidemic and how to address it, including how to assess whether providers are doing a good job treating patients.

In opposing Defendants' special motion to strike the State Law Claims in the original complaint, Grasshopper argued that the offending statements did not address a matter of public interest but rather "commercial speech about a specific product or service." Grasshopper's Opp. to Special Mot. to Strike ("Anti-SLAPP Opp.") 8 (citing *L.A. Taxi Coop. v. Indep. Taxi Owners Ass'n of L.A.*, 239 Cal. App. 4th 918, 928 (2015)). Not so. The Mission Statement appears on the "About Us" page of the website and expresses the journalistic focus of *The Fix* itself. *See* RJN Ex. A at 17. The Process Statement appears toward the bottom of the "Terms & Conditions" page, which explains how *The Fix* reviews facilities' quality and efficacy *generally*. *See* Grasshopper RJN Ex. A at 1, ECF No. 19-1. Neither statement targets Passages Malibu. And to the extent that Grasshopper admits that the offending speech is really the star rating given to Passages Malibu, that *opinion* also addresses a public issue of significant importance. *Cf. Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1367 (Cal. Ct.

S T R I S · 725 S. FIGUEROA ST., STE 1830
M A H E R · LOS ANGELES, CA 90017

5

App. 2010) (holding that even a review that specifically targets one business raises larger issues of public interest in treatment approaches).

All of the remaining prerequisites are met. With respect to Section 425.16(e)(3): Grasshopper's claims arise out of statements published by *The Fix*, FAC ¶ 3; the contents of *The Fix* are "written . . . statement[s]," Cal. Code Civ. P. § 425.16(e)(3); and the statements were made on the internet, "a place open to the public or a public forum." *Id.*; *see also Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."); FAC ¶ 3. And with respect to Section 425.16(e)(4): *The Fix*'s conduct entails the exercise of "the constitutional right of free speech." *See Carver v. Bonds*, 37 Cal. Rptr. 3d 480, 492 (Cal. Ct. App. 2005) (noting that "challenges to 'pure speech' would *always* involve 'conduct' within the meaning of subdivision (e)(4)").

The anti-SLAPP statute clearly applies to this action.

### B.     The Section 425.17(c) Exception Does Not Apply.

Section 425.17(c) creates a limited exception to the anti-SLAPP statute. It was enacted to prevent corporations from invoking the statute against (typically) class action plaintiffs alleging that a corporation made material misrepresentations about its products (e.g., falsely claiming that their goods were "Made in the USA"). *See, e.g.*, *Benson v. Kwikset Corp.*, 62 Cal. Rptr. 3d 284, 293 (Cal. Ct. App. 2007).[2]

---

[2]   Section 425.17(c) provides:

(c)     Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist:

> (1)     The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services;

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

6

To prevent the exception from swallowing the rule where anti-SLAPP is *most* critical, however, the legislature expressly carved out (1) actions against any "person connected with or employed upon a newspaper, magazine, or other periodical publication," Cal. Evid. Code § 1070; Cal. Const., art. I, § 2 (same); and (2) actions against "any person or entity based upon . . . an article published in a newspaper or magazine of general circulation," Cal. Code Civ. P. § 425.17(d). As to actions against *these* types of defendants, the anti-SLAPP statute remains categorically available.[3]

### 1. Defendants Fall Within *Both* Prongs of the Carve-out.

Broadly speaking, the carve-out from the Section 425.17(c) exception ensures that the anti-SLAPP statute remains available to publications that are targeted for expressing their opinions or otherwise carrying out their business as a free press outlet. Both prongs apply here.

### a. Prong (1) of the Carve-out Applies.

Prong (1) of the statutory carve-out to Section 425.17(c) applies to "[a]ny person enumerated in subdivision (b) of Section 2 of Article I of the California Constitution or Section 1070 of the Evidence Code . . . while engaged in the gathering, receiving, or processing of information for communication to the public." The California

---

(2)   The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . .

Cal. Code Civ. P. § 425.17(c).

[3]   Section 425.17(d) reads in full:

(d)   Subdivisions (b) and (c) do not apply to any of the following:
(1)   Any person enumerated in subdivision (b) of Section 2 of Article I of the California Constitution or Section 1070 of the Evidence Code . . . while engaged in the gathering, receiving, or processing of information for communication to the public.
(2)   Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of . . . an article published in a newspaper or magazine of general circulation.

Cal. Code Civ. P. § 425.17(d).

7

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

Constitution and Evidence Code, in turn, identify "[a] publisher, editor, reporter, or other person connected with or employed upon a newspaper, magazine, or other periodical publication . . . or any person who has been so connected." Cal. Const. art. I, § 2; Cal. Evid. Code § 1070(a).

All Defendants fall within this definition. Grasshopper has explicitly pleaded that Sober Media, Cliffside, and Mr. Taite "owned and controlled"—i.e., were connected with—*The Fix*. FAC ¶¶ 3, 8-12. And *The Fix* is "a newspaper, magazine, or other periodical publication" within the meaning of Section 425.71(d)(1); *see O'Grady v. Superior Court*, 44 Cal. Rptr. 3d 72, 100-05 (Cal. Ct. App. 2006) (holding that a website similar to *The Fix* fell within the meaning of "newspaper, magazine, or other periodical publication"). It publishes at least six news articles and one long feature piece *every day*. Declaration of Allison McCabe ("McCabe Decl.") ¶ 3, ECF No. 13-7. Even a cursory glance at the website confirms that *The Fix* is, as its Google listing states, a "daily website for alcohol and addiction recovery news and information." *See O'Grady*, 44 Cal. Rptr. 3d at 77 (concluding a website that published daily articles about computers and software fell within the definition).[4]

In opposing Defendants' first special motion to strike, Grasshopper argued that prong (1) does not apply because Defendants are not individual journalists engaged in news reporting. Anti-SLAPP Opp. 14 (citing *San Diegans for Open Gov't v. San Diego State Univ. Research Found.*, 13 Cal. App. 5th 76, 99 (2017) and *Major v. Silna*, 134 Cal. App. 4th 1485, 1497 (2005)). This argument borders on frivolous. The text of the statute is not limited to individuals, and the only case interpreting Section 425.71(d)(1) that Grasshopper cited applied the carve-out to two *entities*, a nonprofit corporation and a department of San Diego State University. *See San Diegans*, 13 Cal. App. 5th at

---

[4]   Section 425.17(d)(1) also applies to "any person engaged in the dissemination of ideas or expression in any book or academic journal." Each Defendant again qualifies under this provision. Although *The Fix* is an online publication, it properly qualifies as a book or academic journal under the same rationale articulated in *O'Grady*: that this publication is online is irrelevant. *Cf.* 44 Cal. Rptr. 3d at 100-05.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

8

1  82-85; *see also O'Grady*, 44 Cal. Rptr. 3d at 100-05 (applying Section 1070 of the
2  Evidence Code to a website similar to *The Fix*). Furthermore, the statute protects any
3  "person connected with . . . a . . . periodical publication" who is "engaged in the
4  gathering, receiving, or processing of information for communication to the public"—
5  precisely what *The Fix* does when it reviews treatment facilities, explains its review
6  process, or describes its mission statement. Cal. Code Civ. P. § 425.17(d)(1).
7  Grasshopper's "news reporting" gloss is inaccurate.

8              **b.      Prong (2) of the Carve-out Applies.**

9         Prong (2) of the carve-out to Section 425.17(c) also applies because this lawsuit
10  arises out of the "creation" and "dissemination" of *"an article published in a newspaper
11  or magazine of general circulation"* within the meaning of Section 425.17(d)(2). *The
12  Fix* is a newspaper or magazine of widespread and general circulation, available to
13  readers across the nation and around the world. McCabe Decl. ¶ 2. And this lawsuit is
14  "based upon the . . . creation, dissemination . . . or other similar promotion of" the 2011
15  Passages Review in *The Fix*. According to Grasshopper, the Process and Mission
16  Statements render that review "false, misleading, and libelous" by supposedly "lying
17  about *whose* opinions they were presenting." Anti-SLAPP Opp. 1-2. But if *The Fix* had
18  not created and disseminated the 2011 Passages Review, there would be nothing for
19  Grasshopper to complain about in the first place.

20         Grasshopper argued in opposition to Defendants' first anti-SLAPP motion that
21  *The Fix* is not a "newspaper or magazine" and that the "suggestion of one-star surveys
22  for Passages Malibu was not part of any 'article.'" But this argument distorts the
23  meaning of those words, and the statutory language, beyond recognition. *See* Anti-
24  SLAPP Opp. 14.

25         As an initial matter, Grasshopper misleadingly suggests that prong (2) applies
26  *only* to an article published, in print, in a magazine or newspaper. Not so. The statute's
27  language is in fact far broader. This prong of the carve-out to Section 425.17(c) applies
28  to "*[a]ny* action against *any* person or entity based upon the creation [or] dissemination

of *any* dramatic, literary, musical, political, or artistic work, *including, but not limited to*, . . . an article published in a newspaper or magazine of general circulation." Cal. Code. Civ. P. § 425.17(d). The idea that *The Fix* falls outside this broad definition simply because it is a website that publishes articles online, rather than on paper, has no support in the case law. *Cf. O'Grady*, 44 Cal. Rptr. 3d at 100-05.

In any event, *The Fix* qualifies as a "newspaper or magazine" that publishes "articles" within the ordinary meaning of those words. A "newspaper" is "a paper that is printed and distributed usually daily or weekly and that contains news, articles of opinion, features, and advertising." *Newspaper*, *Merriam-Webster Online Dictionary* (updated May 17, 2018). And a "magazine" is "a periodical containing miscellaneous pieces (such as articles, stories, poems) . . . *also*: such a periodical published online." *Magazine*, *Merriam-Webster Online Dictionary* (updated May 20, 2018).

*The Fix* fits either definition. It publishes news items, articles of opinion, features, and advertising. McCabe Decl. ¶ 3. Case law clarifies that for the purposes of the exception, whether the paper is printed or published online is irrelevant. *See O'Grady*, 44 Cal. Rptr. 3d at 100-05.

Moreover, the multi-hundred-word rated reviews, of which the star ratings form a part, are "articles" in any sense of the word. "Article" means "a nonfictional prose composition usually forming an independent part of a publication (such as a magazine)." *Article*, *Merriam-Webster Online Dictionary* (updated May 21, 2018). The reviews of treatment facilities on *The Fix* are nonfictional prose compositions, and they form an independent part of the publication. Accordingly, under any reasonable interpretation of the statute, this action falls within Prong (2) of the carve-out.

### 2.     The Statutory Exception Does Not Apply on Its Own Terms.

Even if Defendants were *not* carved out from Section 425.17(c), however, that exception would not apply here on its own terms against any of the Defendants. Section 425.17(c) renders the anti-SLAPP statute unavailable (unless either prong of the carve-out applies) in lawsuits against "a person primarily engaged in the business of selling

10

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

or leasing goods or services" who makes "representations of fact about that person's or a business competitor's business operations."

By its plain language, the exception cannot apply to Cliffside or Mr. Taite because they did not make the statements at issue. *See* Cal. Code Civ. P. § 425.17(c)(1) (exempting "statement or conduct by that person . . . about that person's or a business competitor's business operations . . .."). Cliffside and Mr. Taite have made no statements of any kind on *The Fix*, which is published by Sober Media.

Nor can the exception apply to Sober Media, which is not "a person *primarily* engaged in the business of selling or leasing goods or services." Cal. Code Civ. P. § 425.17(c) (emphasis added). As Grasshopper admits, Sober Media operates a website (FAC ¶ 8); although it sells advertisements, it is not *primarily* in the business of selling goods or services. In this respect, Sober Media is like any other periodical publisher and different from aggregating platforms like Yelp. In *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 305 (2014), the court rejected Yelp's argument that it was "primarily engaged in providing a free public forum for members to read and write reviews." The user-created reviews form an essential part of the advertising platform for the reviewed business to which Yelp sells advertising. Yelp is not a news publication and creates little if any original content. On that basis, the court concluded that "Yelp is primarily in the business of providing advertising to businesses; the user reviews of businesses are a device whereby prospective users and reviewers are attracted to Yelp's Web site." *Demetriades*, 228 Cal. App. 4th at 312.

*The Fix* and other periodical publications are different. The content on Yelp, and the "public forum" it purported to provide, were ancillary to the site's primary purpose of selling ads. *See id.* Publications that produce their *own* content—dedicated to news, analysis, and opinion on issues of significant public importance—are precisely inverse: Although both *The Fix* and *The Washington Post* sell ads, their *primary* business is actually to produce and publish content. No one could conclude that *The Fix* publishes

STRIS MAHER | 725 S. FIGUEROA ST., STE 1830 | LOS ANGELES, CA 90017

1  *six* news items and one feature daily as a "device" to attract advertisement, any more

2  than one could conclude that *The Washington Post* publishes news for that reason.

3  In any event, none of the statements at issue in this case falls within the scope of

4  the exception. The Mission and Process Statements were not "made for the purpose of"

5  promoting commercial transactions. *See* Cal. Code Civ. P. § 425.17(c). The Mission

6  Statement is just that—a statement of the mission of *The Fix*, not an attempt to sell

7  anything. It closely resembles the mission statement of *The Washington Post*, which

8  discloses that its "duty is . . . not to the private interests of its owners." *Policies and*

9  *Standards*, "The Seven Principles for the Conduct of a Newspaper" ¶ 5 (Jan. 1, 2016).

10  That statement is protected regardless of whether content in *The Washington Post*

11  actually advances the interests of Jeff Bezos. Moreover, if *The Washington Post*'s

12  editorial guidelines stated that it "requires at least five interviews with various sources

13  before an article is published," that statement would not constitute advertising or

14  promotion regardless of whether it was true. These facts again distinguish

15  *Demetriades*, where claims about the technological capability of the review filter

16  constituted commercial speech because Yelp made them to induce commercial

17  transactions. *See* 228 Cal. App. 4th at 309-10. A periodical's explanation of how it

18  arrives at *its own* opinions expressed in *its own* reviews and articles is different.

19  ## II.   Grasshopper Cannot Meet Its Anti-SLAPP Burden.

20  The burden thus shifts to Grasshopper. For each cause of action (and against

21  each Defendant), Grasshopper must establish that it has pleaded a legally sufficient

22  cause of action that is supported by sufficient evidence to sustain a favorable judgment.

23  *Navellier*, 52 P.3d at 712. If it cannot, the Court must dismiss that claim with prejudice.

24  Cal. Code Civ. P. § 425.16(b)(1).

25  Grasshopper has re-alleged the original complaint's three State Law Claims in

26  the Amended Complaint: (1) libel *per se*; (2) false advertising in violation of Section

27  17500 of the California Business and Professions Code; and (3) unfair competition in

28  violation of Section 17200 of the California Business and Professions Code. FAC ¶¶ 1,

S T R I S  |  725 S. FIGUEROA ST., STE 1830
M A H E R  |  LOS ANGELES, CA 90017

12

45-58. But as explained next, Grasshopper cannot establish the substantive merit of any. Cal. Code Civ. P. § 425.16(b)(1).

### A. Grasshopper Cannot Establish a Probability that It Will Prevail on the Libel *Per Se* Claim.

Grasshopper alleges "libel *per se*" against all three Defendants on the grounds that the 2011 Passages Review "includes statements that were false and disparaged the quality of the treatment services that Plaintiff provides to clients at Passages Malibu." FAC ¶ 46. The sole allegedly offending statement is the "single-star rating of Passages Malibu for 'Treatment'" first published on *The Fix* in 2011. *Id.* ¶ 48; RJN Ex. A at 2.

#### 1. Grasshopper Fails to State a Claim.

Grasshopper originally alleged "trade libel *per se*," a tort that does not exist in California. Compl. ¶¶ 1, 38-45. *See* Defs.' Mem. Supp. Special Mot. to Strike ("Anti-SLAPP Mot.") 9, ECF No. 12-1. Although the Amended Complaint now styles its libel claim as "libel *per se*," the allegations continue to pertain to trade libel instead. "The distinction between libel and trade libel is that the former concerns the person or reputation of the plaintiff and the latter relates to his goods." *Shores v. Chip Steak Co.*, 279 P.2d 595, 597 (Cal. Dist. Ct. App. 1955). *See also Barnes-Hind, Inc. v. Superior Court*, 181 Cal. App. 3d 377, 385-86 (Cal. Ct. App. 1963) (distinguishing libel *per se* and trade libel of business). The statements at issue in *this* lawsuit are about the quality of Grasshopper's services, not about its honesty or integrity. FAC ¶ 48 (alleging that single-star rating defames Grasshopper by stating "that Passages Malibu is completely incompetent at its core function of treating addiction").

Grasshopper has not pleaded a legally sufficient cause of action for trade libel for at least five independent reasons:

***Outside Statute of Limitations.*** First, any claim for trade libel is time-barred. California law imposes a one-year statute of limitations on the cause of action. Cal. Code Civ. P. § 340(c). Grasshopper has alleged that Recovery Media published the offending star rating in 2011. FAC ¶ 14. Accordingly, the statute of limitations elapsed

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

almost *six years* ago. *See Christoff v. Nestlé USA, Inc.*, 213 P.3d 132, 137-38 (Cal. 2009) (California abides by a "single-publication rule," meaning the time to sue runs from the initial publication of a single mass communication).[5]

***Extinguished by Bankruptcy Sale.*** Second, Sober Media bought *The Fix* "free and clear" of successor liability pursuant to a competitive bankruptcy sale under 11 U.S.C. § 363(f). RJN Ex. D at 59-60 (listing potential purchasers); *id.* at 63-77 (order authorizing section 363(f) sale). The sale bars any claims resulting from pre-petition conduct fairly giving rise to those claims, including those arising from the one-star rating for treatment in the 2011 Passages Review. *See In re Motors Liquidation Co.*, 568 B.R. 217, 230 (S.D.N.Y. Bankr. 2017). Having failed to present these claims before the bankruptcy court, Grasshopper cannot revive them now.[6]

***No Statement by any Defendant.*** Third, no Defendant made the allegedly libelous statement. As Grasshopper concedes, the one-star rating was published before Sober Media acquired *The Fix* in late-2013. FAC ¶¶ 14, 17. Grasshopper tries to avoid that bar by alleging that Defendants "include[ed] and maintain[ed] the statements" on the website. FAC ¶ 47. But the Ninth Circuit rejected precisely that argument in *Roberts v. McAfee, Inc.*, 660 F.3d 1156 (9th Cir. 2011), holding that the failure to remove a press release from a website after receiving "substantial indications of falsity" did not create liability under California law. *Id.* at 1166-69 (citing, *inter alia*,

---

[5] Grasshopper cannot rely on the "maintenance" of the old review on *The Fix* to defeat the statute of limitations. *See* FAC ¶ 47 (alleging that Defendants "include[ed] and maintain[ed] the statements" on the website). As this Court has explained, republication could in principle reset the statute of limitations. Order 5 n.2. But Grasshopper has not actually alleged that Defendants republished the Passages review. *See id.* Nor could it, as "judicially noticed documents demonstrate that the Passages review itself has not been substantially altered or added to since its initial publication in 2011." *Id.* And as with the original complaint, the FAC includes no factual allegations "that *The Fix* has been redirected to a new audience." *See id.*

[6] To the extent that Grasshopper predicates other claims on conduct that occurred before Sober Media acquired *The Fix* out of bankruptcy in 2013, the bankruptcy sale also extinguished those claims. *See* 11 U.S.C. § 363(f).

S T R I S
M A H E R | 725 S. FIGUEROA ST., STE 1830   LOS ANGELES, CA 90017

*D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000) (publisher not liable for defamation merely "because it fails to retract a statement upon which grave doubt is cast after publication")).

It is even less debatable that defendants Cliffside and Mr. Taite made no libelous statement. *The Fix* is owned and operated by Sober Media alone. FAC ¶ 8. Statements are not imputed even to corporate relatives, let alone businesses with common owners, or corporate owners. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."); *cf. In re WorldCom Secs. Litig.*, 308 F. Supp. 2d 338, 342-43, 345 (S.D.N.Y. 2004) (concluding a parent company could not be held liable for alleged "misleading statements" of a corporate relative (citing *Bestfoods*, 524 U.S. at 61)). Grasshopper's boilerplate allegations of control are therefore irrelevant. *See* FAC ¶¶ 10-12.

**No False Statement of Fact.** Fourth, Grasshopper expressly bases its libel claim on the "single-star rating of Passages Malibu for 'Treatment.'" FAC ¶ 48. But as Defendants have explained at length, that star rating is an unprovable opinion. *See, e.g.*, MTD at 17-18. "If [Defendants'] statements about [Plaintiff] are opinions, the cause of action for trade libel must of course fail." *Hofmann Co. v. E.I. du Pont de Nemours & Co.*, 248 Cal. Rptr. 384, 387 (Cal. Ct. App. 1988). Grasshopper's allegations that the rating of Passages Malibu resulted from improper motivations cannot transform that opinion into an actionable statement of fact.[7]

---

[7]   Although malice—"intentional disparagement" of another's business, *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 984 (N.D. Cal. 2010)—is a necessary element of trade libel, "[a] statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." *Franklin v. Dynamic Details, Inc.*, 10 Cal. Rptr. 3d 429, 438 (quoting *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995)). An opinion, even if motivated by an intent to disparage, cannot form the basis of a trade libel claim. *See id.*

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830
LOS ANGELES, CA 90017

***No Allegation of Actionable Harm.*** Finally, Grasshopper has not adequately alleged, nor can it prove, that it suffered direct financial harm:

> It is nearly always held that it is not enough to show a general decline in his business resulting from the falsehood, even where no other cause is apparent, and it is only the loss of specific sales that can be recovered. This means, *in the usual case, that the plaintiff must identify the particular purchasers who have refrained from dealing with him*, and specify the transactions of which he claims to have been deprived.

*Erlich v. Etner*, 36 Cal. Rptr. 256, 259 (Cal. Dist. Ct. App. 1964) (emphasis added). Although Recovery Media published the one-star rating of Passages Malibu nearly *seven years* ago, Grasshopper still has not identified a single individual who obtained treatment elsewhere as a result of that rating. *Cf.* FAC ¶¶ 45-52. Its cartoonish and conclusory claim to have lost "$50 million in revenue" is patently insufficient. *Id.* ¶ 51.

### 2.    The Claim Is Not Supported by Sufficient Evidence.

Nor, on the merits, can Grasshopper point to sufficient evidence to sustain a trade libel judgment in its favor. Any statements of fact about Passages on *The Fix* were true, made in good faith, and did not harm Grasshopper.

***No False Statement of Fact.*** Star ratings are unprovable opinions and thus not actionable. That said, if any star rating were *ever* provably true, the one-star indictment of Passage's treatment would be it. That much was clear from the public record at the time of the 2011 Passages Review. For example:

In 2009, Grasshopper filed (another) baseless complaint against one of its competitors, Accelerated Recovery Centers LLC ("Accelerated"). *Grasshopper House v. Accelerated Recovery*, No. 09-CV-8128 (C.D. Cal.). In mid-2010, Grasshopper moved to dismiss *its own case* on the grounds that it had "made the determination that the basis for filing this action no longer exists." Grasshopper's Mot. to Dismiss, *Grasshopper House*, No. 09-CV-8128, 2010 WL 4772275, at *3 (C.D. Cal. Sept. 2, 2010). Accelerated opposed that motion, noting the following:

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)

STRIS MAHER | 725 S. FIGUEROA ST, STE 1830 | LOS ANGELES, CA 90017

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

While assuming Accelerated would fold and settle as others had done before it, Grasshopper got more than it bargained for. Accelerated vigorously defended Grasshopper's trademark claims, and filed counterclaims on its own alleging, *inter alia*, that Grasshopper and its owners (Chris and Pax Prentiss) w[e]re engaged in false advertising under the Lanham Act, including by falsely claiming they can "cure" alcoholism and other addiction disease.

Accelerated's Opp., *Grasshopper House*, No. 09-CV-8128, 2010 WL 4772276, at *2 (C.D. Cal. Sept. 13, 2010). In its opposition, Accelerated revealed powerful evidence that Grasshopper's claims about its "Addiction Cure" were knowingly false. Notably:

- "Prentiss [] claims in his book that Grasshopper has an 84.4% cure rate. This [is] a lie." *Id.* at 6 (Prentiss admitted at his deposition "that Grasshopper hasn't monitored any of its clients for years after they were released" and that its only monitoring happened "when Grasshopper was first opened, and then only by making random telephone calls to a select number of released patients for *a month or two after they left treatment . . . .*" (emphasis in original)).

- "Chris and Pax Prentiss maintain that Pax has now been "cured" from heroin addiction for over a decade. Yet, this too is a lie." *Id.* ("correspondence has been obtained from a third party which Chris Prentiss himself wrote to a California regulatory agency in which Prentiss states *that his son was continuing to be treated for addiction years after Chris Prentiss claims he was cured.*" (emphasis in original)).

Thus, even if a star rating could *ever* constitute a "false statement," *The Fix*'s 1/5 (treatment) rating of Passages (FAC ¶ 48) would not.

**No actual malice.** Similarly, Grasshopper cannot establish that Defendants acted with actual malice of any kind. As Grasshopper admits, Sober Media in fact *increased*

17

Passages' overall star rating to 2½ stars, from the 2 stars it held under prior ownership. FAC ¶ 21. Moreover, Sober Media offered Passages the opportunity to do a "re-review" based on surveys from customers to be hand-selected by Passages itself. McCabe Decl. ¶¶ 9, 12; RJN Ex. B at 2. Passages agreed to engage in a re-review and distribute surveys. McCabe Decl. ¶¶ 13-21; RJN Ex. B at 6-7. Passages, however, never delivered the surveys it promised to, apologetically referencing a vacation, pneumonia, and a "busy" year. McCabe Decl. ¶¶ 22-25; RJN Ex. B at 17, 19, 21. This not only undermines any allegations of falsity or malicious intent, but it also breaks the causal chain for any damages. Grasshopper cannot claim that it was harmed by the absence of surveys after refusing to engage in the process to produce them. (In any event, as discussed below, *The Fix* did use five surveys in creating the 2011 Passages Review.)

Finally, it bears emphasis that Grasshopper has not alleged that Passages Malibu received an *inaccurately* low rating. Nor could it: Passages and its owners are notorious within the industry as the "huckster[s]" who prey on vulnerable addicts with the false promise of a "cure." *See, e.g.*, Mark Groubert, *Buying the Cure at Passages, Malibu: June 27, 2008*, L.A. Weekly (Dec. 31, 2008); Compl., *Selkirk v. Grasshopper House*, No. BC706281 (L.A. Sup. Ct. May 14, 2018) (alleging fraud and false advertising based on promise of an addiction "cure") (attached as Exhibit 1 to the Stokes Decl.).

## B. Grasshopper Cannot Establish a Probability that It Will Prevail on the False Advertising Claim.

Grasshopper alleges statutory false advertising against all three Defendants. FAC ¶¶ 53-58. As the Court has explained, false advertising claims under California law are "substantially congruent" with claims under the Lanham Act. *See* Order 5 (citing *Walter & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007)). To state a claim, "a plaintiff must allege (1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009). The

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

18

plaintiff must also plead and prove that ordinary consumers are likely to be deceived. *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1092 (C.D. Cal. 2015).

Like its Lanham Act claim, Grasshopper's false advertising claim is based *not* on the reviews themselves, but on the Process and Mission Statements. FAC ¶¶ 26, 54.[8] This Court has already held that materially identical allegations in the original complaint were time-barred. Order 5-8. And the Court has also held that materially identical factual allegations of harm in the original complaint were "vague and conclusory." *Id.* at 7. The same defects and others infect the Amended Complaint.

**Statute of Limitations.** Defendants' state law false advertising claim has the same three-year statute of limitations as the Lanham Act claim. Cal. Code Civ. Proc. § 338(a); Cal. Civ. Code § 1783. As the Court has held, all the alleged "statements in advertising" that Grasshopper asserts are "untrue or misleading" were made more than three years ago. *See* Order 5. Just as with the Lanham Act claim, to invoke the discovery rule, Grasshopper must show that it could not have discovered the relevant facts "through reasonable diligence or that this information was not otherwise publicly available." *Id.* at 7 (*citing General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 & n.2 (9th Cir. 1991)); *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995). But Grasshopper still has not alleged that it exercised reasonable diligence or that any of the relevant information was not otherwise publicly available. Accordingly, the limitations period for the California false advertising claim was not tolled and the claim is time-barred.

**No Harm.** Nor can Grasshopper plausibly allege that it suffered damages as a result of any false advertising. This Court has already described Grasshopper's

---

[8]   Grasshopper also alleges that *The Fix* made an actionable false statement under state law by writing and publishing the 2012 Cliffside Review while accepting advertisements from Cliffside. FAC ¶¶ 15, 26(d). But that allegation cannot support a false advertising claim. As explained in the concurrently filed Motion to Dismiss, accepting advertising dollars does not convert a magazine's copy about that advertiser into "false advertising." Motion to Dismiss 6-7 & n.1; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

S T R I S   |   725 S. FIGUEROA ST., STE 1830
M A H E R   |   LOS ANGELES, CA 90017

allegations of harm as "vague and conclusory." Order 7. Yet in the Amended Complaint, Grasshopper continues to suggest that if *The Fix produced the same scathing review and low ratings*, yet never described the survey process or the mission of the site, Grasshopper would be $50 million richer. *See* FAC ¶¶ 23, 26. That theory is simply not plausible. Perhaps that is why that Grasshopper has previously admitted that it is not seeking damages pursuant to its false advertising claim. Anti-SLAPP Opp. 17.

   ***Other Defects with the Process Statement.*** Grasshopper cannot predicate a false advertising claim on the Process Statement for additional reasons. Grasshopper has not adequately alleged scienter, that any Defendant "kn[ew], or . . . by the exercise of reasonable care should have known," that its statements were false. *VP Racing Fuels*, 673 F. Supp. 2d at 1088. Generalized, conclusory assertions about the defendant's mental state do not suffice; the plaintiff must establish a concrete factual basis. *See, e.g.*, *In re Jamster Mktg. Litig.*, No. 05-CV-0819, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009) (conclusory allegations that "T-Mobile knew of complaints concerning deceptive marketing" insufficient). Grasshopper's sole allegation about Defendants' knowledge is the paradigmatic conclusory assertion: "Defendants knew, or by the exercise of reasonable care should have known, that their statements were untrue or misleading." FAC ¶ 55. It does nothing more than restate the legal standard.

   The facts further undermine Grasshopper's scienter theory. *The Fix*'s method for writing rated reviews is as follows:

   a.   First, *The Fix* invites selected centers to solicit former clients to complete a detailed survey. It generally asks 15-20 alumni to complete the survey. The alumni are identified by the facilities that agree to be reviewed.

   b.   Second, *The Fix* analyzes the survey results. It requires at least 5 completed surveys to generate a new rated review.

S T R I S
M A H E R

725 S. FIGUEROA ST., STE 1830   LOS ANGELES, CA 90017

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)

c. Third, *The Fix* may reach out to survey respondents by telephone or email for additional information. It also reviews publicly available information about the facilities.

d. Fourth, *The Fix* writes the review. *The Fix* editors decide the appropriate star ratings based on the ratings given by alumni, alumni written and oral comments, and other information collected during the review process.

McCabe Decl. ¶ 7. That process has remained in place since Sober Media acquired *The Fix* from Recovery Media, when Sober Media staff learned the protocol from Recovery Media holdovers. *See id.* ¶ 6. Defendants had no reason to believe that earlier reviews resulted from a different survey process than that described in the Process Statement, let alone one that differed in any material respect.

Grasshopper's claim that Defendants knew or should have known the 2011 Passages Review meaningfully departed from the Process Statement by incorporating feedback from fewer than five alumni surveys is also inconsistent with the review itself. The 2011 Passages Review openly incorporates survey responses and feedback from *at least five alumni in just one paragraph*:

[1] One recent alum slams the therapy as "sub-par," while [2] another says that counselors inevitably chalked up all residents' ills to "childhood trauma." [3] A third resident claims that Passage's doctors took away all her prescription medication, leaving her feeling suicidal and sick for a few weeks. Then "after a complex brainwave analysis," they supplied her with a new mountain of meds including a heavy dose of Adderall, despite her long history of abusing stimulants. But to be fair, not all former clients are so disparaging. [4] "It was a God-send," exults a lawyer and former crack-head who has been sober for five years. "That place changed my life around." [5] Another former client says that his stint at Passages was so inspiring that he went back to school to become a therapist himself.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

21

Seymour Decl. ¶ 2, RJN Ex. A at 6 (numbering added). Thus, not only did the 2011 Passages Review reference at least five survey responses (and more alumni feedback throughout the article), it even took pains to quote favorable comments.

As for the 2012 Cliffside Review, Grasshopper implies that the upward change in Cliffside's rating *must* have resulted from wrongful manipulation. *See* FAC ¶ 24. But there was no impropriety: *The Fix* undertook precisely the re-review process that it offered Grasshopper for Passages. *See* McCabe Decl. ¶ 27. As part of that process, *The Fix* collected surveys from at least 25 Cliffside Malibu alumni. McCabe Decl. ¶ 26. Their ratings and comments supported the new star ratings. *Id.* ¶ 27. Grasshopper's allegation that *The Fix* knowingly misled readers about the process to generate the reviews of Cliffside and Passages is flatly wrong. Grasshopper accordingly cannot establish a probability of prevailing on the merits of its purported cause of action.

***Other Defects with the Mission Statement.*** Nor can Grasshopper predicate a statutory false advertising claim on the Mission Statement. Grasshopper does not allege that anyone at *The Fix* believed that the Mission Statement was false. The statement obviously refers to *The Fix*'s journalistic mission to report on addiction and treatment without victim-shaming and blaming. That the Mission Statement was an honest expression of mission, as opposed to a knowing attempt to deny *The Fix*'s affiliation with a rehabilitation industry veteran like Mr. Taite, is evident in what *The Fix* did not do: It did not say *anything* about its ownership. That is not actionable. *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1231 (C.D. Cal. 2017) ("Courts reject FAL claims premised solely on a defendant's omissions, but a plaintiff may base a FAL claim on an affirmative statement that is misleading in light of the information omitted."); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016) (same) (collecting California state false advertising cases).

***Unclean Hands.*** But even if this omission would *normally* be actionable, the doctrine of "unclean hands" would bar Grasshopper from asserting it here. Unclean hands is an equitable doctrine that prevents a plaintiff from seeking relief for the very

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

22

same conduct it engages in. *See Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 877 (9th Cir. 2000). Here, Grasshopper not only engages in the very practice of which it accuses Mr. Taite—running a site that promotes its centers without disclosing ownership—Grasshopper takes it several steps further.

There are at least five websites that promote Passages addiction centers without disclosing any ownership or affiliation with Passages. Seymour Decl. ¶¶ 6-12. These websites give the impression of being published by trusted institutions such as local governments, schools, and academic journals. *See id.* In the case of the "Baltimore Health Resource Center" page, the website is designed to mislead consumers into thinking it is an information resource *produced by the City of Baltimore. See id.* ¶ 7; RJN Ex. E at 1-6. It even links to eight government sites, including the Baltimore City Health Department, the Centers for Disease Control, and Healthcare.gov. Seymour Decl. ¶ 7.

In fact, the websites exist to promote Passages and to disparage its competitors. For example, alongside links to actual governmental resources, the Baltimore Health Resource Center website includes links to "Best Rehab" and "World's Best Rehab," both of which lead to Passages websites. Seymour Decl. ¶ 7. The *DenveriJournal* similarly mixes occasional news content like the 2016 article, *CVS Agrees to Pay the State of Massachusetts Large Sum for Their Part in the Opioid Epidemic* with pure promotional pieces. *See id.* ¶ 10. Even seemingly journalistic content seeks to disadvantage Passages competitors. *See, e.g., id.* (article entitled *Warning signs that a friend or loved one is abusing drugs* concludes, "In a recent article by The Verge, rehab centers such as Cliffside Malibu own[] review websites such as theFix.com").

Unlike *The Fix*, which publishes at least six news articles and one long feature piece *every day*, the websites controlled by Grasshopper generally do not bother to create new content. *Compare* McCabe Decl. ¶ 3 (describing daily content of *The Fix*), *with* Seymour Decl. ¶ 10 (describing lack of updates on Passages-affiliated sites). The *DenveriJournal*, for example, consists largely of content from years ago, mostly taken

23

from other sources. Seymour Decl. ¶ 12. Grasshopper's non-branded websites are not ongoing, legitimate news outlets like *The Fix*. Equity does not permit Grasshopper to maintain such sites and secure relief against Defendants here.

### C.   Grasshopper Cannot Establish a Probability that It Will Prevail on the Unfair Competition Claim.

Grasshopper alleges that all Defendants committed "unlawful and fraudulent" conduct in violation of Section 17200 of the California Business and Professions Code (UCL). FAC ¶ 60. The UCL claim fails for three independent reasons.

*First*, Grasshopper lacks standing to sue under the UCL. "Most courts have concluded that Plaintiffs must allege their own reliance on the alleged misrepresentations, rather than the reliance of third parties." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015) (collecting cases). To establish reliance, Grasshopper must show that "the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009); *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 888 n.10 (Cal. 2010) ("[A] UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement").

Grasshopper's UCL claim rests on the allegation that "a significant number of reasonable readers of *The Fix* are likely to be misled by its false statements and nondisclosures." FAC ¶ 60. But this allegation invokes the reliance of potential customers, not the reliance of *Grasshopper* itself. The Court should dismiss. And even if reliance by potential customers could establish standing, the Amended Complaint does not include well-pleaded allegations of reliance by *anyone*. *See, e.g.*, FAC ¶ 60 (offering only conclusory allegations that readers of *The Fix* were "likely to be misled"); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1048 (C.D. Cal. 2011) ("All that Plaintiffs assert are conclusory allegations

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)

that do not plausibly show reliance.") Grasshopper offers no reason to believe that the Process or Mission Statements induced a single consumer to make a different choice.

**Second**, Grasshopper has not adequately alleged any "unlawful, unfair or fraudulent business act or practice" in violation of the UCL. Grasshopper does not pursue a claim under the "unfair" prong at all.[9]

The "unlawful" prong requires the plaintiff to establish a violation of another law. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). Grasshopper identifies false advertising under the Lanham Act (First Cause of Action) and under of the FAL (Third Cause of Action) as the predicate violations. FAC ¶ 60. But as explained in the accompanying motion to dismiss and above, Grasshopper has not sufficiently alleged either claim. To establish the "fraudulent" prong based on conduct that would mislead a "reasonable consumer," the plaintiff must meet the test under the FAL. *See* FAC ¶ 60; *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012); *In re Tobacco II*, 207 P.3d at 29. Grasshopper's UCL claim thus fails for the same reasons as the FAL claim. *Elias*, 903 F. Supp. 2d at 854; *see also Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1223 n.6 (C.D. Cal. 2000) ("The Court's conclusion as to plaintiff's claim for false advertising under 15 U.S.C. § 1125(a) governs plaintiff's claims under California Business Code § 17200 which is based on the same conduct by defendants.").

**Third**, for the reasons discussed above, Grasshopper's Lanham Act and FAL claims fail on the proofs, and its UCL claim fails with them.

## CONCLUSION

For the reasons described above, the Court should strike Grasshopper's state-law claims and award attorney's fees.

---

[9]   The "unfair" prong requires the plaintiff to satisfy one of three separate tests. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014). Grasshopper cannot meet any of those tests, and does not plead otherwise. *See* FAC ¶ 60.

S T R I S | 725 S. FIGUEROA ST., STE 1830
M A H E R | LOS ANGELES, CA 90017

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)

Respectfully submitted,

Dated: May 30, 2018

**STRIS & MAHER LLP**

/s/ Peter K. Stris
Peter K. Stris
Brendan S. Maher
Elizabeth Rogers Brannen
Dana Berkowitz
Victor O'Connell

725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Shaun P. Martin

5998 Alcala Park, Warren Hall
University of San Diego School of Law
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants*
Clean & Sober Media LLC, et al.

DEFENDANTS' MEMORANDUM IN SUPPORT OF RENEWED SPECIAL MOTION TO STRIKE
CASE NO. 2:18-CV-923 SVW (RAOx)