STEPTOE & JOHNSON LLP
633 West Fifth Street, Suite 700
Los Angeles, California 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599
jlevin@steptoe.com
bcooper@steptoe.com

Jason Levin (161807)
Bennett Evan Cooper (128544)

Attorneys for Counterclaim Defendants
Grasshopper House, LLC, Passages Silver Strand, LLC,
Chris Prentiss, and Pax Prentiss

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Grasshopper House, LLC, | Case No. 2:18-CV-923 SVW (RAOx) |
| Plaintiff, | **COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS [FED. R. CIV. P. 12(b)(6)]** |
| v. | |
| Clean & Sober Media LLC, et al., | Date: Sept. 24, 2018 |
| Defendants. | Time: 1:30 p.m. |
| Cliffside Malibu, et al., | Location: Courtroom 10A |
| Counterclaim Plaintiffs, | Judge: Hon. Stephen V. Wilson |
| v. | |
| Grasshopper House, LLC, et al., | |
| Counterclaim Defendants. | |

**TO COUNTERCLAIM PLAINTIFFS AND THEIR ATTORNEYS:**

**PLEASE TAKE NOTICE** that on September 24, 2018, at 1:30 p.m. in Courtroom 10A of the United States District Court, Central District of California, located at 350 W. 1st Street Los Angeles, California 90012, Counterclaim Defendants will and hereby do move under Fed. R. Civ. P. 12(b)(6) for dismissal of the Counterclaims on the ground that they fail to state a claim for relief. Specifically, the Counterclaims fail to specifically and plausibly allege false

1

12119920

factual statements that actually deceive or tend to deceive readers in a material manner, or a competitive injury caused by the Counterclaim Defendants' conduct.

This motion is based on this Notice of Motion, the supporting Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice ("MTD RJN") with exhibits, the concurrently filed anti-SLAPP motion and accompanying Request for Judicial Notice with exhibits, the pleadings and records on file in this matter, and such other evidence and argument as may be presented at the hearing on this Motion.

This motion is made following the conference of counsel pursuant to Civil L.R. 7-3, which took place on August 8, 2018.

DATED: August 22, 2018.

STEPTOE & JOHNSON LLP

s/ Jason Levin
Jason Levin
Bennett Evan Cooper
633 West Fifth Street, Suite 700
Phoenix, Arizona 85004-2382

Attorneys for Counterclaim Defendants
Grasshopper House, LLC, Passages Silver
Strand, LLC, Chris Prentiss, and Pax
Prentiss

## TABLE OF CONTENTS

*Page*

Table of Authorities ............................................................................................. iv

Introduction ........................................................................................................... 1

Factual Background of Counterclaim Allegations ................................................ 3

    A.   The Website Counterclaims .......................................................... 3

    B.   The Cure Counterclaims .............................................................. 8

    C.   Cliffside's Alleged Injuries .......................................................... 8

Argument ............................................................................................................... 9

  I.    The Websites do not contain false statements of fact that would plausibly affect purchasing decisions. ............................................................................ 9

    A.   The Counterclaims fail to allege a false statement of fact. ..................... 9

    B.   The Counterclaims fail to plausibly allege that the Websites actually deceived or tend to deceive readers. ....................................................... 11

  II.   The Counterclaims fail to allege a plausible injury. ................................. 13

Conclusion .......................................................................................................... 16

MOTION TO DISMISS COUNTERCLAIMS

12119920

**TABLE OF AUTHORITIES**

*Pages*

**Cases**

*Balance Dynamics Corp. v. Schmitt Indus.*,
 204 F.3d 683 (6th Cir. 2000) ............................................................. 15

*Cannarella v. Volvo Car USA LLC*,
 No. CV 16–6195, 2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) .................... 13

*Delux Cab, LLC v. Uber Techs., Inc.*,
 No. 16-CV-3057, 2017 WL 1354791 (S.D. Cal. Apr. 13, 2017) ................ 1, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
 572 U.S. 118 (2014) ...................................................................... 13

*Plan P2 Promotions, LLC v. Wright Bros., Inc.*,
 No. 16-CV-2795 JLS (AGS), 2017 WL 1838943 (S.D. Cal. May
 8, 2017) ................................................................................. 13, 14

*Southland Sod Farms v. Stover Seed Co.*,
 108 F.3d 1134 (9th Cir. 1997) .................................... 9, 10, 11, 12, 15

*Stahl Law Firm v. Judicate W.*,
 No. C13-1668 TEH, 2013 WL 6200245 (N.D. Cal. Nov. 27,
 2013) ......................................................................................... 14

*TrafficSchool.com, Inc. v. Edriver Inc.*,
 653 F.3d 820 (9th Cir. 2011) ......................................................... 14, 15

*Trilink Saw Chain, LLC v. Blount, Inc.*,
 583 F. Supp. 2d 1293 (N.D. Ga. 2008) ............................................... 15

**Federal Statutes and Rules**

Lanham Act, 15 U.S.C. § 1125(a)(1) ............................................... *passim*

Fed. R. Civ. P. 12(b)(6) .................................................................. 10

Fed. R. Evid. 201 ............................................................................ 6

iv

MOTION TO DISMISS COUNTERCLAIMS

12119920

**Other Authorities**

*American Heritage Dictionary of the English Language* ........................................ 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION TO DISMISS COUNTERCLAIMS

12119920

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

The Counterclaims are a weak tit-for-tat response to Plaintiff's own claim under the Lanham Act. Plaintiff's claims survived a motion to dismiss because they alleged that Cliffside and its owner Richard Taite made objectively false statements in the context of presumptively harmful comparative advertising. The Counterclaims do not allege false statements, comparative advertising, or a plausible injury caused by anything Plaintiff, an affiliated company, and their two individual co-owners, Chris and Pax Prentiss (together, "Passages"), have said or done.

Cliffside secretly bought a drug treatment review website called *The Fix* to lie about its principal competitor, Passages Malibu. Under Cliffside's direction, *The Fix* rated treatment at Passages "one star" and treatment at Cliffside "five stars," falsely telling readers that the ratings were based on alumni surveys. They weren't; Cliffside and *The Fix* lied. Because Cliffside had engaged in false comparative advertising, there was no need for Plaintiff to specifically allege it incurred economic losses caused by Cliffside. "In cases of false comparative advertising it is reasonable to presume that every dollar defendant makes has come 'directly out of plaintiff's pocket.'" *Delux Cab, LLC v. Uber Techs., Inc.*, No. 16-CV-3057, 2017 WL 1354791, at *7 (S.D. Cal. Apr. 13, 2017).

The Counterclaims are different. There, Cliffside and four affiliated companies (together, "Cliffside") present two theories, which they entitle "The Prentisses Pose as Trusted Institutions on the Internet" and "The Prentisses Falsely Claim to Have a Non-Existent Cure for Addiction." (Counterclaims 17, 25, ECF No. 53.) Neither theory alleges objectively false statements or comparative advertising. Both theories lack factual allegations of an injury caused by the Passages' conduct.

1

MOTION TO DISMISS COUNTERCLAIMS

12119920

In the "Prentisses Pose as Trusted Institutions" Counterclaims, Cliffside alleges that five websites owned by Passages (the "Websites") promoted Passages without a disclosure of ownership. (Counterclaims ¶¶ 21-44, ECF No. 53.) But importantly, the Websites did not have any content similar to *The Fix*'s false and misleading representations:

- They did not make any false statements of fact.
- They did not claim any lack of bias.
- They did not offer ratings.
- They did not purport to reflect the results of patient surveys.
- They did not do comparative advertising.
- They did not disparage Cliffside Malibu's treatment—indeed, to the extent they said anything about it, they praised it.

As such, the Website Counterclaims fail in their intended purpose of establishing the parties' moral equivalence in operating websites. Cliffside doesn't come close to alleging Lanham Act, UCL, or FAL violations.

Similar problems taint the "The Prentisses Falsely Claim to Have a Non-Existent Cure for Addiction" Counterclaims. (Counterclaims ¶¶ 45-55, ECF No. 53.) There, Cliffside alleges it was harmed when Chris and Pax Prentiss declared that addiction was "curable." But the ability of therapy to cure addiction is a nonactionable opinion (not fact) that medical experts and Cliffside itself share.[1] More to the point of this Motion, Cliffside doesn't allege the Prentisses engaged in comparative advertising, i.e., they never stated or suggested that Cliffside's therapy couldn't cure addiction. That's why Cliffside's allegations of causation and injury are facially implausible.

---

[1] This is addressed in the Counterclaim Defendants' concurrently filed anti-SLAPP Special Motion to Strike.

MOTION TO DISMISS COUNTERCLAIMS

12119920

1    In sum, Cliffside's Counterclaims are missing plausible factual allegations

2 of either false factual statements or injuries proximately caused by Passages and

3 the Prentisses. The Court can take judicial notice of documents that show that the

4 Counterclaims are downright implausible. They should be dismissed.

5              **FACTUAL BACKGROUND OF COUNTERCLAIM ALLEGATIONS**

6    A.    **The Website Counterclaims**

7    Stripped of the surrounding hyperbole, Cliffside asserts Lanham Act false

8 advertising, UCL, and FAL counterclaims based on the alleged promotion of

9 Passages on the five Websites:

10         • https://www.baltimorehealth.org/

11         • https://www.denverijournal.com/

12         • https://www.westerncollege.com

13         • https://www.ghctotalhealth.org/

14         • https://www.discoveryretreats.com

15   (Counterclaims ¶ 22, ECF No. 53.)

16   The Counterclaims assert that the Websites are owned by Passages, but that

17 fact is not disclosed on the Websites. (*Id.*) Critically, the Counterclaims do not

18 allege that any of the Websites made any false or misleading factual statements

19 about Passages or its services, or about Cliffside or its services. Only one of the

20 Websites, www.ghctotalhealth.org, mentions Cliffside's services, and its

21 statements praise them. One posting on that website, *Top 5 Luxury Rehab Centers*

22 *in Malibu, California*, states:

23         3. **Cliffside Malibu**

24    Your first impression? A stunning setting! The aptly named
     Cliffside is a solid rehab center with a three phase approach that,
25    while being nothing new, does lead the recovering addict through
     the early stages of recovery, preparing them for a new and better
26    life. For some, its pet-friendly policy (provided you don't plan to
     bring a huge dog along) is a definite bonus.

27

28                                    3

12119920

1
2

> In terms of its treatment program, a strong range of therapies is offered and there appears to be a certain amount of individualized therapy programming instead of a uniform approach that won't work for everybody.

3
4
5

> As for the facilities, they're home-like and attractive without aspiring to the heights of interior décor you'll find at the super-smart Passages center. The food is good, and inpatients have plenty of relaxation facilities at their disposal as they rest up between therapy sessions.[2]

6   Another posting on the same website, *5 Luxury Rehab Centers in Malibu,*

7   *California*, states:

8       2. **Cliffside Malibu**

9
10

> Cliffside Malibu has its services and client base close to that of Passages Malibu. Cliffside also takes a holistic approach to treating addiction and offer a range of treatment options including; yoga, acupuncture, and equine therapy.

11
12

> With one to four staff to client ratio, the clients' needs are catered for perfectly. They offer the best one-on-one treatment and unlimited access to computers.[3]

13       The Counterclaims cannot deny, and even admit or graphically depict, that

14   the Websites contain editorial content about substance addiction and treatment for

15   it, as well as links to government websites and other resources. (MTD RJN Exs.

16   A-O; *see, e.g.*, Counterclaims ¶¶ 24(d), 33(c), 38, 40, ECF No. 53.) Rather, as

17   discussed below, the Counterclaims hinge on Cliffside's subjective belief that the

18   websites "look like" something else, even if they do not claim to be something

19   else.

20       **1.**    **https://www.baltimorehealth.org**

21       According to the Counterclaims, the website titled "Baltimore Health

22   Resource Center" "***looks like*** a publication of the City of Baltimore" just because

23   it includes the city shield, even though the website does not assert a municipal

24   affiliation. (*Id.* ¶¶ 24, 24(b).) Indeed, as admitted, the website states only that it is

25
26

    [2]   https://www.ghctotalhealth.org/rehab-review/top-5-luxury-rehab-centers-in-malibu-california/ (last visited Aug. 21, 2018), MTD RJN Ex. G.

27

    [3]   https://www.ghctotalhealth.org/rehab-review/5-luxury-rehab-centers-in-malibu-california/ (last visited Aug. 21, 2018), MTD RJN Ex. H.

28                                 4

"a resource guide for the residen[ts] of Baltimore," (*id.* ¶ 24(c)), encourages readers to "[p]lease visit Baltimore Department of Health for more information" (*id.*), and includes eight "hyperlinks to government websites" (*id.* ¶¶ 24(d), 26(b)). Indeed, in addition to links to local, state, and federal websites, the website contains editorial content about local health issues, from articles on "Asthma in Baltimore" to listings of local health clinics and services for a range of medical issues from dental care and various kinds of diseases to substance abuse treatment and needle exchange programs. (MTD RJN Ex. A.)

The only references to Passages are a statement in a posting, under "Online Resources," that, "[f]or example, Passages Malibu, a drug addiction center in Malibu, California, has made all of their videos available online for anyone to view,"[4] and brief home-page links to Passages websites under "Resources." (MTD RJN Exs. A-B; Counterclaims ¶ 26(b), ECF No. 53.) The only item related in any way to Cliffside is a link (which does not even mention Cliffside) to *The Verge* website's article on connections between review websites and the rehab clinics they promoted. (*Id.* ¶¶ 27-29; MTD RJN Ex. A.) The Counterclaims do not allege that the *The Verge* article is false or misleading.

### 2.   https://www.denverijournal.com

The Counterclaims assert that the website, titled "DenveriJournal," "pretends to be a local publication for residents of the City of Denver" and "a local, independent journal" (Counterclaims ¶¶ 31, 32(d), ECF No. 53), but they do not cite any content of the site that supports their claim. Rather, they admit that the site's "About" section states that "DenveriJournal.com is a blog that covers marijuana news across the country." (*Id.* ¶ 31.) Indeed, the home page of the

---

[4] *Choose an Inpatient Rehab Center That is Just Right For You*, https://www.baltimorehealth.org/choose-an-inpatient-rehab-centre-that-is-just-right-for-you/ (last visited Aug. 21, 2018), MTD RJN Ex. B.

MOTION TO DISMISS COUNTERCLAIMS

12119920

website cited by the Counterclaims contains postings titled "E-cig Devices Being Used by Teens to Smoke Substances Other than Nicotine," "Obama is Commuting Hundreds of Sentences for Nonviolent Drug Offenders," and "Naloxone & Baltimore's Fight Against Opioids." (MTD RJN Ex. C.)

The Counterclaims allege that three of the eight links under "Drug Addiction Resources" are to the Passages website, and that the website contains postings about Passages Malibu. (Counterclaims ¶¶ 32(c), ECF No. 53.) The only reference to Cliffside is a factually true statement linking to *The Verge* article, at the end of a posting on *Warning signs that a friend or loved one is abusing drugs*:

**Be Careful Researching Rehab Centers:**

Rehab review websites may not be as independent as you may think. In a recent article by The Verge, rehab centers such as Cliffside Malibu owns review websites such as theFix.com. When researching, a good starting point would be SAMHSA: https://www.samhsa.gov/find-help/national-helpline.[5]

### 3.      https://www.westerncollege.com

The Counterclaims assert only that the website's internet address and the two words "Western College" in a heading suggest that it is associated with a college because the Prentisses acquired a web address that was once associated with "Western Career College" (Counterclaims ¶¶ 34-36, ECF No. 53)—before the school changed its name to Carrington College California in 2010.[6] The Counterclaims do not identify any claims that the website or its content is affiliated with an educational institution. The website is titled "Drug and Alcohol Addiction Blog" site and contains editorial content in such postings as

---

[5] https://www.denverijournal.com/top-right-news/warning-signs-that-a-friend-or-loved-one-is-abusing-drugs/ (last visited Aug. 21, 2018), MTD RJN Ex. D. The name Cliffside Malibu is a link to *The Verge* article. (

[6] The Court may take judicial notice of this generally known fact under Fed. R. Evid. 201. *See* https://en.wikipedia.org/wiki/Carrington_College_(US) (last visited Aug. 21, 2018), MTD RJN Ex. P.

MOTION TO DISMISS COUNTERCLAIMS

12119920

1  *Conquering Substance Abuse: Opiate Addiction Treatment* and *Road to Recovery:*
2  *Alcohol Addiction Treatment*. (MTD RJN Ex. E.)

3      Far from alleging that the website claims to be unbiased or independent, the
4  Counterclaims admit that "the ***only*** rehab center" mentioned is Passages Malibu,
5  and that it is the subject of three postings: *Recover from Drug Addiction with*
6  *Passages Malibu Center*, *Passage Malibu Rehab Center Review*, and *Passages*
7  *Malibu Outpatient Center*. (Counterclaims ¶ 36(a)-(b), ECF No. 53; MTD RJN
8  Ex. E.) Given the prominence of the postings, it would be implausible for a
9  reasonable reader to assume that Passages Malibu was *not* associated with the
10 blog. The website does not mention either Cliffside or *The Verge* article.

11     **4&5.  https://www.ghctotalhealth.org;**
12 **https://www.discoveryretreats.com**

13     The Counterclaims claims that these two websites "***look[] like*** a blog
14 covering topics related to drug and alcohol treatment" and "a treatment blog."
15 (Counterclaims  ¶¶ 22(d)-(e),  37-44,  ECF  No.  53.)  The  first  site,
16 www.ghctotalhealth.org, titled "GHC Total Health," does not describe itself as a
17 "blog," while https://discoveryretreats.com is titled "Discovery Retreats" with the
18 small subtitle "Addiction Treatment Blog." (MTD RJN Exs. F, K.) The
19 Counterclaims do not allege any definition of what a "blog" is or explain why
20 these are not blogs. Indeed, a "blog" is defined as merely "[a] website that
21 displays posting by one or more individuals in chronological order and usually
22 has links to comments on specific postings." *American Heritage Dictionary of the*
23 *English Language*, https://www.ahdictionary.com/word/ search.html?q=blog (last
24 visited Aug. 21, 2018). GHC Total Health includes editorial content in such
25 postings as *Drug War: How did we get into this mess?*[7] and *Drug Addiction*

26 _____

27     [7]   https://www.ghctotalhealth.org/uncategorized/drug-war-how-did-we-get-into-
this-mess/ (last visited Aug. 21, 2018), MTD RJN Ex. I.

28                                      7
     _____
                 MOTION TO DISMISS COUNTERCLAIMS

*Treatment*,[8] while Discovery Retreats includes such postings as *The War on Drugs: a War on the poor?*[9] and *Marijuana Treatment Centers: The Essentials.*[10]

The Counterclaims allege that GHC Total Health also includes the postings identified above that list (rather than rank) luxury rehab centers in Malibu and that praise Passages Malibu (as well as Cliffside). Discovery Retreats contains such postings as *Passages Malibu Suggest Reaching Out is Key to Recovery*,[11] *Passages Malibu Rehab Center.*[12] Aside from the positive comments on Cliffside, GHC Total Health's only mention of Cliffside is a link under "Resources" described as "The Verge: Cliffside Malibu Conflict of Interest in Rehab Review Sites" that links to *The Verge* website. (MTD RJN Ex. F.) Discovery Retreats does not mention Cliffside at all.

### B. **The Cure Counterclaims**

According to Cliffside, the Prentisses have claimed that addiction can be cured when "there is in fact no 'cure' for substance addiction." (Counterclaims ¶ 1, ECF No. 53.) Addiction cannot be cured because, purportedly, it is a "chronic disease." (*Id.* ¶ 46.) Chronic diseases can be managed but not cured. (*Id.* ¶ 47.)

### C. **Cliffside's Alleged Injuries**

With respect to both counterclaim theories, Cliffside alleges: "Potential customers were deceived, and Cliffside suffered loss of sales (including diversion

---

[8] https://www.ghctotalhealth.org/drug-addiction/drug-addiction-treatment-2/ (last visited Aug. 21, 2018), MTD RJN Ex. J.

[9] https://www.discoveryretreats.com/the-war-on-drugs-a-war-on-the-poor/ (last visited Aug. 21, 2018), MTD RJN Ex. L.

[10] https://www.discoveryretreats.com/marijuana-treatment-centers-the-essentials/ (last visited Aug. 21, 2018), MTD RJN Ex. M.

[11] https://www.discoveryretreats.com/passages-malibu-suggest-reaching-out-is-key-to-recovery/ (last visited Aug. 21, 2018), MTD RJN Ex. N.

[12] https://www.discoveryretreats.com/passages-malibu-rehab-center/ (last visited Aug. 21, 2018), MTD RJN Ex. O.

8

12119920

of business) and goodwill." (*Id.* ¶ 56(a).) The Counterclaims do not, however, allege facts demonstrating how Cliffside knows this to be true.

**ARGUMENT**

**I.     The Websites do not contain false statements of fact that would plausibly affect purchasing decisions.**

     **A.     The Counterclaims fail to allege a false statement of fact.**

As this Court has recognized, a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1), requires five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

(ECF No. 29, at 4-5 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)); ECF No. 51, at 7 (citing *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)).) Moreover, as this Court noted in this case with respect to FAL and UCL claims, "the analysis of federal and state false advertising claims" can be "consolidated" because, "'[i]n the Ninth Circuit, claims of unfair competition and false advertising under state statutory and common law are "substantially congruent" to claims made under the Lanham

9

12119920

1   Act.'" (ECF No. 29, at 5 (quoting *Walker & Zanger, Inc. v. Paragon Indus.*, 549

2   F. Supp. 2d 1168, 1182 (N.D. Cal. 2007)).)[13]

3        The Counterclaims' first problem is their failure to allege "a false statement

4   of fact by the defendant in a commercial advertisement about its own or another's

5   product." *Southland Sod Farms*, 108 F.3d at 1139. Instead, one counterclaim

6   theory is based on the design and appearance of websites, and the other is based

7   on a nonactionable opinion.

8        The Counterclaims contrast sharply with Plaintiff's own Lanham Act claim.

9   The Court denied Defendants' motion to dismiss because Plaintiff's claims did

10  *not* rely on any negative or positive "opinion" about this or that facility's

11  treatment. Plaintiff's claims, instead, were based on allegations that "Defendants

12  attributed the one-star rating to Passages Malibu's own clients, which was both

13  false and misleading," and "The Fix then intimated that its ratings were unbiased,

14  when in fact The Fix was an affiliate of Passages Malibu's direct competitor."

15  (ECF No. 51, at 7.) As the Court explained, "The Fix proclaimed in its mission

16  statement it was unbiased when it was directly affiliated with Cliffside, which

17  Plaintiff adequately alleges." (*Id.* at 9.) The Court recognized that "websites

18  violate the Lanham Act when they take advantage of their purported lack of bias

19  of to disseminate false or misleading information," and "a failure to disclose bias

20  can be actionable under the Lanham Act 'where that failure renders some other

21  affirmative statement false or misleading.'" (*Id.* at 9 (quoting *Casper Sleep, Inc. v.

22  Mitcham*, 204 F. Supp. 3d 632, 638 (S.D.N.Y. 2016)).)

23

24

25

---

26      [13] Moreover, as this Court previously recognized, if the Court dismisses a party's

27  Lanham Act claims, it may decline in its discretion to exercise supplemental jurisdiction over the party's state-law UCL and FAL claims. (ECF No. 29, at 7-8.)

28                      10

12119920

Here, on the other hand, the Counterclaims fail to allege an affirmative statement of fact that is either false or misleading. The Counterclaims therefore fail to satisfy the threshold element of a Lanham Act false advertising claim.

B.   **The Counterclaims fail to plausibly allege that the Websites actually deceived or tend to deceive readers.**

In addition, the Counterclaims fail to plausibly allege other elements of the Lanham Act claim, including that "(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience" and "(3) the deception is material, in that it is likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139. Given that the Counterclaims do not allege any false *content* on any of the Websites, the Counterclaims could only be claiming that patients would be diverted from Cliffside to Passages simply because they think one or more of the Websites is a government site, a local journal, a college site, or blogs that are unbiased and independent of Passages Malibu.

As this Court recognized, "[i]n order to survive [a] motion [to dismiss under Rule 12(b)(6)], a plaintiff's complaint must allege facts that make it plausible, not merely conceivable, that the plaintiff is entitled to relief." (ECF No. 51 at 4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).) The Court continued, "Mere conclusory statements are enough; a plaintiff must provide sufficient facts to allow the court to infer culpability from the facts pleaded in the complaint. 'The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" (*Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation omitted).) As well, "the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences." (*Id.* (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).) Similarly, "[l]egal conclusions are not accepted as true and

11

12119920

'[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (*Id.* (quoting *Iqbal*, 556 U.S. at 678).) In particular, the Court noted, "[c]laims based in fraud must meet the heightened pleading requirements of Rule 9(b), which means that "a complaint 'must adequately specify the statements it claims were false or misleading, [and] give particulars as to the respect in which plaintiff contends the statements were fraudulent ….'"" (*Id.* (quoting *In re GledFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc)).)

The Counterclaims' bare allegations as to any "tendency to deceive a substantial segment of its audience" or "likel[ihood] to influence the purchasing decision" are not plausible. *Southland Sod Farms*, 108 F.3d at 1139. To begin, the Websites do not claim to be unbiased and objective, and the Counterclaims rely on conjecture on what minor details might lead someone to think they were that. The Counterclaims do not plausibly allege that readers of the Websites would believe that the City of Baltimore, a Denver (or Denveri) paper, a college, or two independent blogs had endorsed Passages Malibu, or that such perceived endorsements would drive people from Baltimore, Denver, or elsewhere to Malibu for drug treatment.

But even more critically, the Counterclaims' thesis that the simple failure to disclose affiliation would drive purchasing decisions because the website contain reviews of Passages or links to its website defies logic or proof, as well as the Court's prior ruling on Plaintiff's claim. It is the same as if Plaintiff had claimed that *The Fix* violated the Lanham Act and state law simply by praising Cliffside without disclosing their affiliation, even if *The Fix* said nothing false—or nothing at all—about Passages.

In fact, although Plaintiff never sought to make such a claim, this Court dismissed any claim based on *The Fix*'s "adjust[ing] of Cliffside's rating from

12

12119920

four to five stars under CSM's ownership without disclosing this common ownership." (ECF No. 29, at 6.) The Court concluded that any "factual allegations of harm are vague and conclusory" because there are no "sufficient facts explaining how the addition of a single star to Cliffside's rating cause a 'diversion from [Passages] to [Cliffside or … a lessening of the goodwill associated with [Plaintiff's] products' when *The Fix* had always given Cliffside a substantially higher star rating than Passages." (*Id.* at 7.) What makes Plaintiff's claims valid and plausible with respect to the effect on a prospective client's purchasing decision is not *The Fix's* endorsement of its undisclosed affiliate, but, as the Court later reasoned, its having "attributed the one-star rating to Passages Malibu's own clients, which was both false and misleading," and its having "then intimated that its ratings were unbiased, when in fact The Fix was an affiliate of Passages Malibu's direct competitor." (ECF No. 51, at 7.) The Counterclaims allege no similarly plausible cause for diverting patients from one treatment center to another.

## II.   The Counterclaims fail to allege a plausible injury.

Both the Website and Cure Counterclaims also fail to allege plausible facts establishing the fifth element of a Lanham Act false advertising claim: that Cliffside and each of its four affiliates were injured, or are likely to be injured, as a result of false statements. *Southland Sod Farms*, 108 F.3d at 1139. Cliffside alleges, "Potential customers were deceived, and Cliffside suffered loss of sales (including diversion of business) and goodwill." (Counterclaims ¶ 56(a), ECF No. 53.) But these are just conclusions. The Counterclaims fail to allege any facts— e.g., surveys, complaints, or even anecdotal evidence—suggesting that consumers would tend to select Passages over Cliffside if, for example, they thought the Websites were affiliated with municipalities or academia. Indeed, the entire idea that addicts in Baltimore, Denver, or other cities would come to Malibu based on

1   such allegedly perceived affiliations is implausible on its face.

2          Injury to the claimant is the *sine qua non* of a false advertising case: the

3   Lanham Act authorizes suit only by one "who believes that he or she is likely to

4   be damaged" by a defendant's false advertising. 15 U.S.C. § 1125(a)(1). The U.S.

5   Supreme Court rejected "an expansive reading" of the Lanham Act, and "a

6   plaintiff suing under § 1125(a) ordinarily must show economic or reputational

7   injury flowing *directly from the deception wrought by the defendant's advertising*;

8   and that that occurs when deception of consumers causes them to withhold trade

9   from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572

10  U.S. 118, 129, 133 (2014) (emphasis added) (quotation omitted).

11         On this basis, federal courts have dismissed Lanham Act false advertising

12  claims that fail to allege a plausible case for damages. For example, this district

13  has dismissed Lanham Act false advertising claims under the *Twombly/Iqbal*

14  pleading standard where the plaintiff "provides the unsupported legal conclusion

15  that the deception is material" and "has also failed to allege facts showing injury,

16  whether through direct diversion of sales or lessening of goodwill." *Cannarella v.*

17  *Volvo Car USA LLC*, No. CV 16–6195, 2016 WL 9450451, at *10-11 (C.D. Cal.

18  Dec. 12, 2016).

19         Similarly, the Southern District of California dismissed a Lanham Act false

20  advertising claim where the plaintiff's allegations "merely state that Defendants

21  have … engaged in false advertising by falsely claiming to be associated with the

22  Trump organization and this has somehow caused Plaintiff to suffer damages,"

23  but "[t]here are no more specific allegations of, at the very least, lost sales or

24  damage to its reputation." *Plan P2 Promotions, LLC v. Wright Bros., Inc.*, No. 16-

25  CV-2795 JLS (AGS), 2017 WL 1838943, at *5 (S.D. Cal. May 8, 2017). As the

26  court reasoned, "[t]his is insufficient to plead proximate causation to support a

27  Lanham Act claim." *Id.*

28

14

MOTION TO DISMISS COUNTERCLAIMS

And for the same reasons, the Northern District of California dismissed a Lanham Act false advertising claim brought by one ADR provider against another claiming that the defendants "misrepresented their qualifications, experience and reputation" by failing to disclose a public admonishment by regulators. *Stahl Law Firm v. Judicate W.*, No. C13-1668 TEH, 2013 WL 6200245, at *5 (N.D. Cal. Nov. 27, 2013). The court held that the plaintiff "specifically fails to allege facts that satisfy the fifth element of Section 43(a)"—injury—where "[h]e fails to allege …—beyond mere legal conclusions—facts that show he has been or is likely to be injured as a result of Defendants' alleged false statements, either by direct diversion of sales from Plaintiff to Defendants or by a lessening of the goodwill associated with his services." *Id.* at *7. The court reasoned that the plaintiff "fails to allege facts describing how Defendants' alleged false advertising might siphon away customers from him" or "show that … 'his injury isn't "conjectural" or "hypothetical."'" *Id* at *5 (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011)) (brackets omitted).

Here, the Counterclaims do not allege any facts that establish a causal mechanism for injury. They do not allege how websites that do not mention Cliffside, or do not disparage Cliffside, or do not make false statements about Cliffside, could directly and proximately cause "a lessening of the good will associated with [Cliffside's] services." *Id.* at *7. Nor do they explain how websites that link to Passages' website or that favorably *and truthfully* comment on Passages could wrongfully cause a "direct diversion of sales" from Cliffside to Passages. *Id.* at *7. That is true without regard to whether the websites disclose their ownership by the Prentisses. The Counterclaims are bereft of any allegations of specific facts to support the bare conclusion that the Cliffside Counterclaimants suffered any injury based on any attenuated link to a failure to disclose ownership of innocuous websites.

15

MOTION TO DISMISS COUNTERCLAIMS

12119920

The situation would be different if the Counterclaims alleged false or misleading **comparisons** between Cliffside and Passages. "In cases of false comparative advertising it is reasonable to presume that every dollar defendant makes has come 'directly out of plaintiff's pocket.'" *Delux Cab, LLC v. Uber Techs., Inc.*, No. 16-CV-3057, 2017 WL 1354791, at *7 (S.D. Cal. Apr. 13, 2017) (citing *TrafficSchool.com,* 653 F.3d at 831; *see also Southland Sod Farms*, 108 F.3d at 1146 ("Publication of deliberately false comparative claims gives rise to a presumption of actual deception and reliance."); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 694 (6th Cir. 2000) (stating that "the presumptive damages rule [extends] only to cases of comparative advertising where the plaintiff's product was specifically targeted"); *Trilink Saw Chain, LLC v. Blount, Inc.*, 583 F. Supp. 2d 1293, 1321 (N.D. Ga. 2008) ("[A] growing number of courts have also adopted a presumption, in cases where money damages are sought, that willfully deceptive, comparative advertisements cause financial injury to the party whose product the advertisement targets.")

Because the Counterclaims are not based on comparative advertising, Cliffside cannot proceed with conclusory, nonfactual allegations of causation and injury. The Counterclaims should therefore be dismissed.

## CONCLUSION

The Court should dismiss the Counterclaims with prejudice.

DATED this 22nd day of August, 2018.

STEPTOE & JOHNSON LLP

 s/ Jason Levin
Jason Levin
Bennett Evan Cooper
633 West Fifth Street, Suite 700
Phoenix, Arizona 85004-2382

Attorneys for Counterclaim Defendants Grasshopper House, LLC, Passages Silver Strand, LLC, Chris Prentiss, and Pax Prentiss

16

MOTION TO DISMISS COUNTERCLAIMS

12119920

**PROOF OF SERVICE**
F.R.C.P. 5 / C.C.P. § 1013a(3)/ Cal. R. Ct. R. 2.2060

I am a resident of, or employed in the County of Maricopa, State of Arizona. I am over the age of 18 and not a party to this action. My business address is: Steptoe & Johnson LLP, 201 East Washington Street, Suite 1600, Phoenix, Arizona 85004.

On **August 22, 2018,** I served the following listed document(s), by method indicated below, on the parties in this action: **COUNTERCLAM DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS [FED. R. CIV. P. 12(b)(6)].**

*SEE ATTACHED SERVICE LIST*

☐ **BY U.S. MAIL**
By placing the ☐ original / ☐ a true copy thereof enclosed in a sealed envelope(s), with postage fully prepaid, addressed as per the attached service list, for collection and mailing at Steptoe & Johnson LLP, 633 West Fifth Street, Suite 700, Los Angeles, California 90071, following ordinary business practices. I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, the document is deposited with the United States Postal Service on the same day in the ordinary course of business. Under that practice, the document is deposited with the United States Postal Service on the same day as it is collected and processed for mailing in the ordinary course of business.

☐ **BY OVERNIGHT DELIVERY – Via Federal Express**
By delivering the document(s) listed above in a sealed envelope(s) or package(s) designated by the express service carrier, with delivery fees paid or provided for, addressed as per the attached service list, to a facility regularly maintained by the express service carrier or to an authorized courier or driver authorized by the express service carrier to receive documents. **Note:** Federal Court requirement: service by overnight delivery was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

☐ **BY PERSONAL SERVICE**
☐ By personally delivering the document(s) listed above to the offices at the addressee(s) as shown on the attached service list.
☐ By placing the document(s) listed above in a sealed envelope(s) and instructing a registered process server to personally delivery the envelope(s) to the offices at the address(es) set forth on the attached service list. The signed proof of service by the registered process server is attached.

☐ **BY ELECTRONIC SERVICE via electronic filing service provider LexisNexis**
By electronically transmitting the document(s) listed above to LexisNexis File and Serve, an electronic filing service provider, at www.fileandserve.lexisnexis.com, from the email address pmattar@steptoe.com. To my knowledge, the transmission was reported as complete and without error. *See* Cal. R. Ct. R. 2.253, 2.255, 2.260.

☒ **BY EMAIL**
By electronically transmitting the document(s) listed above to the email address(es) of the person(s) set forth on the attached service list. To my knowledge, the transmission was reported as complete and without error. Service by email was made ☐ pursuant to agreement of the parties, confirmed in writing, or ☒ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order. *See* Cal. R. Ct. R. 2.260.

☐ **BY FACSIMILE**
By transmitting the document(s) listed above from Steptoe & Johnson, LLP in Los Angeles, California to the facsimile machine telephone number(s) set forth on the attached service list. Service by facsimile transmission was made ☐pursuant to agreement of the parties, confirmed in writing, or ☐ as an additional method of service as a courtesy to the parties or ☐ pursuant to Court Order.

I declare under penalty of perjury under the laws of the State of California and the United States of America that I am employed in the office of a member of the bar of this court at whose direction the service is made.

Executed on August 22, 2018, in Phoenix, Arizona.

Paulette Mattar
Name                                                    Signature

17

MOTION TO DISMISS COUNTERCLAIMS

12119920

**SERVICE LIST**

*Grasshopper House, LLC v. Clean & Sober Media LLC, et al.*
CENTRAL DISTRICT OF CALIFORNIA
Case No. 2:18-CV-00923 SVW (RAO)

Peter K. Striss
Brendan S. Maher
Elizabeth Brannen
Dana Berkowitz
Victor O'Connell
STRIS & MAHER LLP
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
Telephone: (213) 995-6800
Facsimile: (213) 261-0299
Peter.stris@strismaher.com
Brendan.maher@strismaher.com
Elizabeth.brannen@strismaher.com
Dana.berkowitz@strismaher.com
Victor.oconnellServ@strismaher.com

Shaun P. Martin
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Facsimile: (619) 260-7933
smartin@sandiego.edu

Attorneys for Defendants
Clean & Sober Media LLC, et al.

18

MOTION TO DISMISS COUNTERCLAIMS

12119920