**STRIS & MAHER LLP**
PETER K. STRIS (SBN 216226)
peter.stris@strismaher.com
BRENDAN S. MAHER (SBN 217043)
brendan.maher@strismaher.com
ELIZABETH BRANNEN (SBN 226234)
elizabeth.brannen@strismaher.com
DANA BERKOWITZ (SBN 303094)
dana.berkowitz@strismaher.com
VICTOR O'CONNELL (SBN 288094)
victor.oconnell@strismaher.com
725 South Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

SHAUN P. MARTIN (SBN 158480)
smartin@sandiego.edu
University of San Diego School of Law
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants and
Counterclaim Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>CLEAN & SOBER MEDIA LLC, et al.<br><br>        Defendants.<br>CLIFFSIDE MALIBU, et al.<br><br>        Counterclaim Plaintiffs,<br><br>    v.<br><br>GRASSHOPPER HOUSE, LLC, et al.<br><br>        Counterclaim Defendants. | Case No. 2:18-CV-923 SVW (RAOx)<br><br>**COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS** |

*left margin:* STRIS MAHER | 725 S. FIGUEROA ST. STE 1830 | LOS ANGELES, CA 90017

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

# TABLE OF CONTENTS

INTRODUCTION .................................................................................1

FACTUAL BACKGROUND ...................................................................3

    A.    The Parties .............................................................................3

    B.    The Prentisses' and Passages' False Advertising ...................3

ARGUMENT .........................................................................................7

I.    Applicable Legal Standards.................................................................7

II.    The Counterclaims Properly Plead Claims for False Advertising
Against Passages' Deceptive Websites .........................................8

    A.    Passages' Misleading Presentation of Advertising as
News Content from Trusted Sources Is Actionable............................8

    B.    With Respect to Deceptiveness, Passages Raises Only
Factual Disputes, Not Grounds for Dismissal....................................11

    C.    Passages' Broad Challenge to the Materiality of
Native Advertising Fails ......................................................14

    D.    Cliffside Pled Injury in More Than Sufficient Detail .......................15

    E.    The Motion to Dismiss Does Not Separately
Address the California Claims ...........................................17

CONCLUSION ...................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................7

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ............................................................................7

*Cannarella v. Volvo Car USA LLC*,
  No. 16-cv-6195, 2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) ......................17

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
  711 F.Supp.2d 1074 (C.D. Cal. 2010) ............................................................12

*Epicor Software Corp. v. Alternative Technology Solutions, Inc.*,
  No. 13-cv-00448, 2013 WL 2382262
  (C.D. Cal., May 9, 2013) ....................................................................11, 12, 16

*Grasshopper House, LLC v. Accelerated Recovery Centers, LLC*,
  No. 09-cv-08128, 2010 WL 11549437
  (C.D. Cal., Mar. 23, 2010)...........................................................................1, 2

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
  No. 14-cv-03954, 2015 WL 476287
  (C.D. Cal., Feb. 5, 2015) ..................................................................................8

*Instant Checkmate, Inc. v. Background Alert, Inc.*,
  No. 14-cv-01182, 2014 WL 12526275
  (S.D. Cal., Dec. 5, 2014) ................................................................9, 10, 11, 13

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*,
  No. 11-cv-0592, 2011 WL 6291793
  (N.D. Cal., Oct. 25, 2011) .........................................................................10, 14

*King Tuna, Inc. v. Anova Food, Inc.*,
  No. 07-cv-7451, 2008 WL 11338617
  (C.D. Cal. 2008)..............................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014)....................................................................................16

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

ii

*Manning Int'l Inc. v. Home Shopping Network, Inc.*,
   152 F. Supp. 2d 432 (S.D.N.Y. 2001) ................................................................. 10

*Massey v. Banning Unified Sch. Dist.*,
   256 F.Supp.2d 1090 (C.D. Cal. 2003) ................................................................. 16

*Newcal Indus., Inc. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ....................................................................... 11, 13

*Promotions, LLC v. Wright Brothers, Inc.*,
   No. 16-cv-2795, 2017 WL 1838943
   (S.D. Cal. May 8, 2017)........................................................................................ 17

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) ............................................................................. 15

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .....................................................................*passim*

*Stahl Law Firm v. Judicate West*,
   No. 13-cv-1668, 2013 WL 6200245
   (N.D. Cal. Nov. 27, 2013) .............................................................................. 16, 17

*Tidenberg v. Bidz.com, Inc.*,
   No. 08-cv-5553, 2009 WL 605249
   (C.D. Cal. Mar. 4, 2009)................................................................................... 7, 12

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
   653 F.3d 820 (9th Cir. 2011) .......................................................................*passim*

*Waste and Compliance Mgmt., v. Stericycle, Inc.*,
   No. 17-cv-0967, 2017 WL 4358145
   (S.D. Cal., Oct. 2, 2017) ..............................................................7, 12, 13, 15

*William H. Morris Co. v. Group W, Inc.*,
   66 F.3d 255 (9th Cir. 1995), *opinion supplemented*,
   67 F.3d 310 (9th Cir. 1995) ................................................................................. 14

*Williams v. Gerber Prods.*,
   552 F.3d 934 (9th Cir. 2012) ........................................................................... 7, 12

**Statutes**

15 U.S.C. § 1125(a) ............................................................................8, 9, 16

iii

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

Fed. R. Civ. P. 8(a) ............................................................................................7

Fed. R. Civ. P. 9(b) ....................................................................................7, 8, 12

Fed. R. Civ. P. 12(b)(6) ...............................................................................7, 16

**Other Authorities**

FTC Guidance, "Native Advertising: A Guide for Businesses,"
    https://www.ftc.gov/tips-advice/business-center/guidance/native-
    advertising-guide-businesses ........................................................................11

5 Wright & Miller, Federal Practice and Procedure § 1356 .....................................7

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

**INTRODUCTION**

The counterclaims allege each and every element of false advertising and unfair competition, in great detail, under theories this Court and the Ninth Circuit Court of Appeals have endorsed, and therefore the motion to dismiss must be denied. Cliffside's[1] false advertising counterclaims are based on two fraudulent schemes run by Counterclaim Defendants Chris and Pax Prentiss (collectively, "the Prentisses") to promote their purported substance abuse treatment facilities, Counterclaim Defendants Passages Malibu and Passages Silver Strand (collectively, "Passages").

First, the Prentisses falsely claim, contrary to medical evidence and with no supporting data, to have found a miracle "cure" for drug addiction that they offer to patients at Passages. Second, they use bogus websites to promote their bogus cure. Specifically, they operate websites that masquerade as trusted sources, such as a municipality, a college and an independent news organization, but are really marketing tools. These sites plant glowing "reviews" and rankings of Passages amid apparent news content and links to actual government resources, without disclosing the site's true ownership. The Prentisses' dishonest methods are effective in luring prospective patients away from competing facilities, including Cliffside, which has suffered severe harm as a result.

Importantly, the Prentisses' and Passages' 12(b)(6) motion does *not* seek dismissal of the counterclaims regarding their phony addiction "cure." That is unsurprising, as they are issue-precluded from doing so. They litigated and lost that precise issue before Judge Gee of this District. *Grasshopper House, LLC v. Accelerated Recovery Centers, LLC*, No. 09-cv-08128, 2010 WL 11549437 (C.D. Cal., Mar. 23,

---

[1] Throughout this opposition, "Cliffside" refers to Counterclaim Plaintiffs Cliffside Malibu, Sunset Malibu, Cliffside Malibu II, Cliffside Malibu Outpatient Services, Cliffside Malibu 3, and Recovery Malibu.

STRIS & MAHER | 725 S. FIGUEROA ST. STE 1830 | LOS ANGELES, CA 90017

2010). As Judge Gee held ***against these Counterclaim Defendants***,[2] a Lanham Act claim brought by a rehabilitation facility over Passages' false promotion of a cure "allege[s] sufficient facts to make its prima facie case." *Id*. at *5-6 ("whether Counterdefendants cure addicts or whether a cure for addiction even exists . . . is ultimately a matter for the trier of fact to determine based on the evidence.").[3]

The pending motion to dismiss accordingly addresses *only* the website-based claims. ECF No. 62 at 2 n.1. But Passages does not attempt to show the counterclaims are deficiently pled. Instead, Passages (irrelevantly) compares the counterclaims to its own claims against Cliffside, arguing the element of false statements about a competitor is lacking. Yet Passages own complaint alleges false advertising on the same theory of misleading advertising it now challenges. First Amended Complaint, ECF No. 30, ¶ 26(d); *see also* July 18, 2018 Order, ECF No. 51 at 9. And both the Ninth Circuit Court of Appeals and district courts in California have found false advertising on facts nearly identical to the present case—promotional websites that create the false appearance they are government or other trusted sources of information. (It is also untrue that Passages does not disparage its competitors—"reviews" on the websites it secretly owns rank it the top rehab facility, and say it is "[t]he only rehab around town where they lift their patients up, not tear them down." Answer and Counterclaims, ECF No. 53 ("Counterclaims"), ¶ 42.)

---

[2] Grasshopper House, LLC, Passages Silver Strand, LLC, Chris Prentiss and Pax Prentiss were all counterclaim defendants in the *Grasshopper House v. Accelerated Recovery* litigation.

[3] Instead, to defeat the bogus cure counterclaims, Passages relies on the theory advanced in their anti-SLAPP motion, namely that such statements are protected opinions on matters of public interest rather than false assertions of fact in a commercial setting. Anti-SLAPP Motion, ECF No. 60. But the argument that claims about a cure are nonactionable under federal law is (1) issue precluded, (2) *not* incorporated by reference in 12(b)(6) motion, and (3) in any event, is self-evidently wrong. Fake cures, the proverbial "snake oil," have been actionable for as long as the law of false advertising has existed. Counterclaim Plaintiffs' Opp. to Special Motion to Strike, at 14-20. Passages' failure to make any persuasive argument as to why the "cure" counterclaims should be dismissed on 12(b)(6) grounds means the entire motion to dismiss must be denied.

S T R I S   725 S. FIGUEROA ST. STE 1830
M A H E R   LOS ANGELES, CA 90017

Otherwise, Passages does not argue the counterclaim allegations are lacking in required specifics (nor could it—they detail Passages' misrepresentations extensively). Rather, it asks the Court to determine as a matter of law that its phony government, college, and news websites are not likely to deceive the public or to affect purchasing decisions. These arguments are not only legally unsupported and implausible on their face—why did Passages pretend to be a municipality or a college if it did not expect the tactic to be effective?—they are completely inappropriate for a motion to dismiss. Deceptiveness and materiality are fact-intensive inquiries to be determined on the evidence. Passages' attack on the injury allegations is likewise meritless. Surveys and other evidence are not required at the pleading stage; Cliffside has more than met the requirement to allege actual or likely harm resulting from Passages' conduct. The motion to dismiss should be denied.

## FACTUAL BACKGROUND

### A.    The Parties

Cliffside operates residential substance abuse treatment facilities located in Malibu, California. Counterclaims ¶¶ 3-9. The Prentisses and Passages also operate substance abuse facilities in Malibu and nearby that compete with Cliffside. *Id.* ¶¶ 10-13, 20-21, 56. Neither Chris Prentiss nor Pax Prentiss has any medical, behavioral, or other training relevant to the treatment of drug and alcohol addiction. *Id.* ¶ 18. Nonetheless, by marketing impossible claims to have a "forever" cure for substance abuse to people desperate to find a treatment for addiction (among other tactics), the Prentisses have lured a wealthy clientele to their facilities. *Id.* ¶¶ 19, 48(a). Passages charges patients up to $100,000 per month for addiction "treatment." *Id.* ¶ 19. As Chris Prentiss has put it: "People mortgage their houses, max out their credit cards, sell assets, whatever it takes to get here." *Id.*

### B.    The Prentisses' and Passages' False Advertising

The Prentisses induce prospective patients to come to Passages using at least two deceptive methods. First, they tout a miraculous "cure" for addiction that Chris Prentiss

3

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

claims to have discovered and used to treat his son Pax, who is said to be "living proof" of its effectiveness. Counterclaims ¶¶ 50, 52(a)-53(c). The Prentisses offer their cure as an alternative to accepted, evidence-based approaches to addiction treatment, which they disparage as "antiquated" and ineffective. *Id.* ¶ 52. Their claims are fraudulent: there is no medical evidence that substance addiction can be cured, no evidence that Chris Prentiss possesses a cure, and indeed, Pax Prentiss is not cured—he remains a drug addict some 18 years after he claims the cure took place. *Id.* ¶¶ 46-47, 50, 54-55.

Second, the Prentisses own and operate websites that pose as trusted institutions and offer content disguised as news and analysis that is, in reality, advertising for Passages. Counterclaims ¶¶ 21-44. None of these sites disclose their affiliation with Passages or their nature as promotional vehicles for Passages.[4]

For example, the website www.baltimorehealth.org presents itself as a publication of the City of Baltimore. The City of Baltimore formerly owned the site, and when the Prentisses acquired it, they maintained its original design in order to create the false impression that it remained a trustworthy government source of information. Counterclaims ¶ 25. The site is titled "Baltimore Health" and places the logo of the City of Baltimore in the top left corner. Counterclaims ¶ 24. The logo even contains the words "City of Baltimore":[5]



---

[4] The counterclaims describe five such websites, but Cliffside believes there are others. ECF No. 53 at 25 ¶43.

[5] After the counterclaims were filed, Passages altered the webpages that Cliffside complains of to omit some of their false material, such as the City of Baltimore's logo, and to add disclosures of the websites' ownership by Passages. *See* the concurrently filed Combined Opposition to Request for Judicial Notice, and Request for Judicial Notice. This conduct is beyond the scope of the counterclaims, and does not retroactively cure Passages' misconduct. It is not a ground on which the Court may grant Defendants' motion to dismiss.

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

The "About" page on the website states that "Baltimore Health is a resource guide for the residen[ts] of Baltimore. Please visit Baltimore Department of Health for more information." *Id.* The bottom of the page lists "Resources," including eight links to government websites such as the Baltimore City Health Department, the Centers for Disease Control, and Healthcare.gov. *Id.* The headlines linked on the page further suggest it is a source of Baltimore health news (e.g., about art therapy for Baltimore veterans and a biomedical discovery at Johns Hopkins University). *Id.*

Interlaced with this content, but not identified as advertising or as anything other than additional health news, are hyperlinks that promote Passages. The "Resources" section, alongside the links to government sites, provides links to "Malibu Luxury Rehab," "Drug Addiction Treatment Center: Passages Malibu," "Luxury Rehab," "California Luxury Rehab," "The Best Rehab," "The Luxury Rehab," "World's Best Rehab," and "Best Rehab California." *Id.* ¶ 26. All of these links redirect users to Passages websites, giving the public the false impression that the City of Baltimore endorses Passages' rehab facilities and considers them superior to others. *Id.*

The Prentisses' other websites use similar trickery to promote Passages' rehab. The website www.westerncollege.com was, until the Prentisses acquired it, associated with Western Career College, a vocational college specializing in healthcare career training. Counterclaims ¶ 35. The address westerncollege.com suggests the site is still affiliated with an academic institution. *Id.* ¶ 34. It is titled "Drug and Alcohol Addiction Blog," and as Passages concedes, it contains articles of the sort one might expect to find on such a blog, for example, "Conquering Substance Abuse: Opiate Addiction Treatment" and "Road to Recovery: Alcohol Addiction Treatment." MTD, ECF No. 62 at 6-7. But westerncollege.com also contains a story and a "review" that are, in substance, advertisements for Passages Malibu. Counterclaims ¶ 36. And it has a "Rehab Reviews" page that reviews only Passages Malibu (three times) and lauds it as the top rehab facility in California. *Id.* ¶ 36. Westerncollege.com nowhere discloses

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

1  that it is owned by Passages. It thus deceptively pretends to be a healthcare college's
2  publication about addiction treatment while promoting Passages' business.

3  www.denverijournal.com masquerades as a Denver-based local publication
4  devoted to marijuana news, which is what it was before the Prentisses bought it.
5  Counterclaims ¶ 31. The site contains articles that appear to be genuine news and
6  commentary, such as "Charities, Support Systems Are Crucial in the Fight Against
7  Addiction" and "CVS Agrees to Pay the State of Massachusetts Large Sum for Their
8  Part in the Opioid Epidemic." *Id.* at 21. Alongside these headlines, presented in the
9  same news-like format, is a "story" entitled "Passages Malibu Revolutionizing
10 Addiction Treatment," which is really an advertorial—although not identified as one—
11 extolling the virtues of Passages. *Id.* As with the Baltimore Health site, there is a list
12 of "Drug Addiction Resources," which combines links to Passages websites with links
13 to legitimate resources, such as the National Institutes of Health website. *Id.* The
14 impression thus created is that an independent news periodical has used its editorial
15 judgment to select the links it believes will be most useful to readers seeking addiction
16 treatment. *Id.* In reality, the site is a surreptitious shill for the Prentisses' purported
17 treatment centers—and one that further creates a false impression of impartiality by
18 cautioning readers against relying on sites that are owned by the rehab centers they
19 cover. *Id.* ¶¶ 27, 33.

20 Two other sites owned by the Prentisses, www.ghctotalhealth.org and
21 www.discoveryretreats.com, likewise appear to be independent blogs about drug and
22 alcohol addiction treatment. Once again, both sites place links to advertorials for
23 Passages Malibu alongside news links in the same format, so that they are
24 indistinguishable from legitimate editorial content. Counterclaims ¶¶ 38, 40-41. The
25 GHC Total Health site contains an "article" that ranks rehab centers and places
26 Passages first. *Id.* ¶ 39. The Discovery Retreats site glowingly reviews Passages while
27 disparaging other rehab centers, claiming that Passages is "[t]he only rehab around
28 town where they lift their patients up, not tear them down. This positivity helps them

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

6

to let go of their addiction to drugs and alcohol in just 30 days stay at the Malibu mansion." Counterclaims ¶ 42. Neither site discloses that it is owned by the Prentisses. Counterclaims ¶¶ 25, 39, 42.

## ARGUMENT

## I.   Applicable Legal Standards

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* "[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prods.*, 552 F.3d 934, 938 (9th Cir. 2012) (quoting 5 Wright & Miller, Federal Practice and Procedure § 1356).

Although courts in the Ninth Circuit have applied Rule 9(b)'s heightened pleading standard to false advertising claims, Rule 9(b) "'applies only to the specifics of the alleged misrepresentations; it does not, by contrast, apply to other aspects of Plaintiff's claims, such as reliance or damages.'" *Waste and Compliance Mgmt.*, *v. Stericycle, Inc.*, No. 17-cv-0967, 2017 WL 4358145 at *2 (S.D. Cal., Oct. 2, 2017) (quoting *Tidenberg v. Bidz.com, Inc.*, No. 08-cv-5553, 2009 WL 605249, at *7 (C.D. Cal. Mar. 4, 2009)).

The remaining elements of a false advertising claim are evaluated under the standard of Rule 8(a), which requires pleading "enough facts to state a claim to relief that is plausible on its face" and to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 571 (2007). Extensive and detailed

STRIS | MAHER   725 S. FIGUEROA ST. STE 1830   LOS ANGELES, CA 90017

allegations are not required. *See, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. 14-cv-03954, 2015 WL 476287 at *2 (C.D. Cal., Feb. 5, 2015).[6]

To establish a false advertising violation under section 43(a) of the Lanham Act, a plaintiff must show "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

## II.   The Counterclaims Properly Plead Claims for False Advertising Against Passages' Deceptive Websites.

### A.   Passages' Misleading Presentation of Advertising as News Content from Trusted Sources Is Actionable.

Passages' argument that it is free to pose, falsely, as a municipality, a college, and other trusted institutions on the web boils down to a single proposition: It contends that Cliffside has failed to identify a false or misleading statement of fact. MTD, ECF No. 62, at 10-11. In Passages' view, an omission of affiliation alone is not sufficient. Rather, that omission must "'render[] some other affirmative statement false or misleading.'" *Id.* at 10 (quoting July 18, 2018 Order, ECF No. 51, at 9).

While it is a truism that omissions alone do not constitute false statements, the Lanham Act does not define the concept of a misleading representation as narrowly as

---

[6] In *Homeland*, the prongs not subject to Rule 9(b) (i.e., elements 2 through 5, everything other than the alleged misrepresentations) were sufficiently stated by allegations that the defendant "is able to convince consumers that its inferior product is equal to or superior to the quality of the" plaintiff's product "and that Defendant's alleged deception has actually changed consumer behavior and thus injured Plaintiffs." *Id.* at *2.

S T R I S
M A H E R   725 S. FIGUEROA ST. STE 1830
LOS ANGELES, CA 90017

Passages would have it. A website designed to fool people into thinking it is the official page of a government or a college or a news organization is making an implicit, but unmistakable, representation of fact about who is speaking. It is well settled in the Ninth Circuit that promoting products with a false impression of independence qualifies as a false or misleading representation of fact within the Lanham Act. *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 827-28 (9th Cir. 2011); *Instant Checkmate, Inc. v. Background Alert, Inc.*, No. 14-cv-01182, 2014 WL 12526275 at *4 (S.D. Cal., Dec. 5, 2014); *Southland Sod Farms*, 108 F.3d at 1140 ("Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public."); *see* July 18, 2018 Order, ECF No. 51, at 8-9 ("websites violate the Lanham Act when they take advantage of their purported lack of bias to disseminate false or misleading information.").

Indeed, the Ninth Circuit has found actionable false advertising on facts almost identical to Passages' conduct. In *TrafficSchool.com*, the defendants owned "DMV.org," a private for-profit website that sold sponsored links to online traffic schools and other services related to driving. 653 F.3d at 824. The plaintiffs, competitors for such referrals, prevailed in the district court on the theory that the DMV.org website was likely to mislead consumers into believing it was a government agency. *Id.* at 827. The Ninth Circuit agreed that the site was misleadingly "designed to suggest an affiliation with the State of California" because it used the web addresses "ca.dmv.org" and "california.dmv.org," and "mimicked an actual DMV site by copying slogans and state symbols." *Id.* at 827-28. This holding is foursquare with Passages' use of "baltimorehealth.org" and the Baltimore city logo containing the words "City of Baltimore." Indeed, Passages' conduct was worse, in that did not merely simulate a government site, but retained the design used ***when the site was actually owned by the City of Baltimore***. Counterclaims at 18. DMV.org also fostered confusion by linking to web pages that helped consumers complete DMV-related

9

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

1  transactions like applying for a license, *TrafficSchool.com*, 653 F.3d at 828, just as
2  Passages intersperses links promoting its rehab facilities with links to government
3  resources such as the Baltimore City Health Department and healthcare.gov.
4  Counterclaims at 18.

5      Passages' other sites engage in the same kind of deception. The principle is not
6  limited to the misleading suggestion of a government tie—it applies to any false
7  appearance that promotional material is commentary from an independent source. In
8  *Instant Checkmate*, the Southern District found false advertising was adequately
9  pleaded against a commercial provider of background check services that ran an
10 "'advertorial' blog" called "Crime Wire" and "tout[ed] Instant Checkmate's product
11 without providing sufficient notice that Crime Wire is a paid advertisement and not an
12 independent news source." 2014 WL 12526275 at *2, 5. For the very same reason,
13 Passages' sites that present themselves as a healthcare college's blog, a marijuana news
14 publication, and drug addiction treatment blogs while posting advertorials for Passages
15 are actionable false advertising. *See iYogi Holding Pvt. Ltd. v. Secure Remote Support,*
16 *Inc.*, No. 11-cv-0592, 2011 WL 6291793, at *15 (N.D. Cal., Oct. 25, 2011) (posting of
17 "shill reviews . . . on consumer websites" constituted false advertising), *report and*
18 *recommendation adopted*, 2011 WL 6260364 (N.D. Cal., Dec. 15, 2011).

19     Moreover, as this Court has held, "a plaintiff may and should rely on FTC
20 guidelines as a basis for asserting false advertising under the Lanham Act." July 18,
21 2018 Order, ECF No. 51, at 9 (quoting *Manning Int'l Inc. v. Home Shopping Network,*
22 *Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001)). *Instant Checkmate* relied in part on
23 the Federal Trade Commission's standards requiring "clear and conspicuous
24 disclaimers" that "do not mislead consumers into believing" a publication "is an
25 independent news source." 2014 WL 12526275 at *5. And Passages' websites are not
26 independent news organizations that happen to be owned by someone in the industry;
27 they are shallow websites that exist only to co-opt the credibility of trusted sources
28 while serving up "news stories" that cannot be characterized as anything other than

S T R I S | 725 S. FIGUEROA ST, STE 1830
M A H E R | LOS ANGELES, CA 90017

advertorial. *Id.* at \*5; *cf.* FTC Guidance, "Native Advertising: A Guide for Businesses," https://www.ftc.gov/tips-advice/business-center/guidance/native-advertising-guide-businesses ("An advertisement or promotional message shouldn't suggest or imply to consumers that it's anything other than an ad").

Indeed, Passages conduct is worse than Instant Checkmate's. The bogus Baltimore and Western College websites display a prominent link to the *Verge* article, "Review Sites Have Deep Ties to the Rehabs They Promote," which cautions customers to be wary of review sites owned by rehab providers pretending to be impartial. ECF No. 53 at 19 ¶27, 22 ¶33. This warning to consumers bolsters the false impression that Passages' sites are neutral even as the sites fail to disclose that they themselves are operated by the Prentisses.

## B. With Respect to Deceptiveness, Passages Raises Only Factual Disputes, Not Grounds for Dismissal.

Passages argues that the Court should find on the pleadings that its promotional sites masquerading as a municipal government, a college and independent media did not actually deceive or tend to deceive consumers.[7] MTD, ECF No. 62, at 11-13. It is audacious to set up sites cleverly designed to fool the public and then turn around and ask a court to find, as a matter of law, that those sites do not fool the public.

In any case, there is no basis for such a finding; a promotional statement's effect on the reader is inherently factual and "the Ninth Circuit has unequivocally held [that] the question of whether a particular statement is false and misleading is a question of fact that is inappropriate for adjudication on a motion to dismiss." *Instant Checkmate*, 2014 WL 12526275 at \*5 (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)); *Epicor Software Corp. v. Alternative Technology Solutions, Inc.*, No. 13-cv-00448, 2013 WL 2382262 at \*4 (C.D. Cal., May 9, 2013) ("determination of whether a business practice is deceptive is usually a question of fact

---

[7] Passages does not contend that its claims to have a "cure" for addiction are not deceptive or that they are not material to purchasing decisions.

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

1    not appropriate for decision at the pleadings stage"). The same principle governs the

2    California unfair competition and false advertising claims. *Williams*, 552 F.3d at 938-

3    39 ("California courts . . . have recognized that whether a business practice is deceptive

4    will usually be a question of fact not appropriate for decision on demurrer" and

5    dismissal is appropriate in "rare situation[s]"; reversing dismissal based "solely on [the

6    district court's] own review of an example of the packaging").

7          Unsurprisingly, Passages provides *no* case authority for its view that the Court

8    may find the alleged features of its websites would not tend to deceive the public.

9    Instead, it offers factual theories, further underscoring the factual nature of the issue.[8]

10         For example, Passages argues it is implausible that readers would believe the

11   City of Baltimore, a college, a Denver news site, or two addiction treatment blogs had

12   in fact endorsed Passages. MTD, ECF No. 62, at 12. But the courts have found a

13   tendency to deceive on exactly such facts, and in circumstances less egregious than

14   what Passages has done. The DMV.org website in *TrafficSchool.com* was found to

15   have a "tendency to deceive a substantial segment of its audience" based on similar

16   elements to Passages' sites: the domain name and particular text, symbols and

17   embedded hyperlinks that suggested affiliation with the State of California. 653 F.3d

18   at 827 (quoting *Southland Sod Farms*, 108 F.3d at 1139). And in that case, the

19   defendant's website, DMV.org, even had an express disclaimer of connection with

---

21   [8] Passages seeks to impose the heightened pleading standard of Rule 9(b) on Cliffside's
22   allegations of tendency to deceive and materiality, but it does *not* apply to those
      elements. In the false advertising context, Rule 9(b) "requires the plaintiff to plead the
23   'time, place, and specific content of the false representations,' the identities of the
      parties to the misrepresentation, and what about the statement is claimed to be
24   misleading." *Epicor*, 2013 WL 2382262 at *4 (quoting *EcoDisc Tech. AG v. DVD
      Format/Logo Licensing Corp.*, 711 F.Supp.2d 1074, 1085 (C.D. Cal. 2010)). Passages
25   does not contend that Cliffside's counterclaims fail to meet these requirements. Rule
      9(b) "'applies only to the specifics of the alleged misrepresentations; it does not, by
26   contrast, apply to other aspects of Plaintiff's claims . . . .'" *Waste and Compliance
      Mgmt, Inc. v. Stericycle, Inc.*, No. 17-cv-0967, 2017 WL 4358145 at *3 (S.D. Cal.,
27   Oct. 2, 2017) (quoting *Tidenberg v. Bidz.com, Inc.*, No. 08-cv-5553, 2009 WL 605249,
      at *7 (C.D. Cal. Mar. 4, 2009)).

COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO. 2:18-CV-00923-SVW-RAO

S T R I S  |  725 S. FIGUEROA ST. STE 1830
M A H E R  |  LOS ANGELES, CA 90017

state DMVs, something Passages' sham websites lack. *Id.*[9] Similarly, in *Instant Checkmate*, the Southern District refused to dismiss despite the defendant's arguments that the "Crime Wire" news blog contained sufficient disclaimers alerting customers to the site's true affiliation. Whether the site was misleading was a question of fact. *Id.* at \*5 ("[W]hile it may be true that Crime Wire contains various indicia of its relationship to Instant Checkmate, the Court cannot say as a matter of law that these indicia are sufficient under the FTC's standards for clear and conspicuous disclaimers and thus do not mislead consumers into believing Crime Wire is an independent news source."); *Newcal*, 513 F.3d at 1053-54 (whether literally true statement is misleading is a question of fact). Plainly, websites posing as a trusted institutions without *any* disclaimers or disclosures of their true affiliation are even more likely to deceive the public.

Passages contends that its websites "do not claim to be unbiased and objective." MTD, ECF No. 62, at 12. But a site can falsely represent that it is unbiased and objective without saying so in words. When advertising is disguised as news or government content, that is enough to constitute an affirmative claim of being unbiased and objective. Nothing more is required than the appearance of an independent affiliation and the absence of disclosure. *TrafficSchool.com*, 653 F.3d at 827-28; *Instant Checkmate*, 2014 WL 12526275 at \*5. Passages may, of course, try to show that its sites do not in fact fool consumers, but that is a matter for proof at trial, not a determination to which it is entitled at the pleading stage. *See Southland Sod*, 108 F.3d at 1140 (whether consuming public was misled by an advertisement is typically proven "through the use of consumer surveys"). Moreover, Passages' decision to acquire sites belonging to a municipality, a college and an independent news organization and use them to promote its businesses while leaving their appearance unchanged suggests it

---

[9] In *TrafficSchool.com*, there was also evidence introduced at trial of actual consumer confusion. *Id.* But that again points to the factual nature of the inquiry. Cliffside is entitled to develop that evidence through discovery. It is not required to present survey evidence in its pleadings.

S T R I S | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

S T R I S
M A H E R

725 S. FIGUEROA ST. STE 1830
LOS ANGELES, CA 90017

1  intended to deceive the public. Should the evidence show that Passages misled the

2  public on purpose, a presumption of deceptive effect will attach. *William H. Morris*

3  *Co. v. Group W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995), *opinion supplemented*, 67 F.3d

4  310 (9th Cir. 1995) ("If [defendant] intentionally misled consumers, we would presume

5  consumers were in fact deceived and [defendant] would have the burden of

6  demonstrating otherwise.") Passages is not entitled to foreclose discovery into the

7  intent and effect of its deceptive promotional websites, as it is attempting to do.

8      **C.  Passages' Broad Challenge to the Materiality of Native Advertising**

9         **Fails.**

10      Passages asserts that materiality is inadequately pleaded, but once again,

11  Passages argues the facts and not the pleadings. Passages contends that presenting

12  glowing reviews and links to its rehab facilities as government, academic or news

13  content cannot plausibly drive purchasing decisions. MTD, ECF No. 62 at 12. That

14  assertion is tantamount to saying that deceptive affiliation is immaterial as a matter of

15  law, which of course is absurd. Passages asks the court to believe that it posed as a

16  municipality, a college and news sites recommending Passages rehab *without* the

17  expectation that this would bring it more customers.

18      In any event, Passages cites no authority for its theory and the law is to the

19  contrary. This Court and its sister court in the Northern District have held that the

20  affiliation of a site that provides product reviews can be material to purchasing

21  decisions. July 18, 2018 Order, ECF No. 51, at 11 (there is "no authority or rationale

22  for concluding as a matter of law that consumers would not look for and rely upon a

23  rating website's affiliations and methodologies"); *iYogi Holding Pvt. Ltd. v. Secure*

24  *Remote Support, Inc.*, No. 11-cv-0592, 2011 WL 6291793 at *15 (N.D. Cal., Oct. 25,

25  2011) (finding allegations sufficient that shill reviews were likely to affect purchasing

26  decisions of website's target audience and denying motion to dismiss). Even if

27  statements are "not literally false, their materiality [can] not be decided on a motion to

28  dismiss." July 18, 2018 Order, ECF No. 51, at 11.

### D.   Cliffside Pled Injury in More Than Sufficient Detail.

Finally, Passages argues that Cliffside did not plead damages in sufficient detail, demanding evidence that the law simply does not require. The counterclaims allege that the parties are competitors in the market for residential addiction treatment services and that the Prentisses' misleading websites and false claims to possess an addiction "cure" diverted prospective patients from Cliffside to Passages, causing Cliffside to lose sales and goodwill in excess of $50,000,000. Counterclaims ¶¶ 2(c), 20-21, 56, 60, 63, 68. This is fully sufficient to plead the injury element of a false advertising claim. *See, e.g.*, *King Tuna, Inc. v. Anova Food, Inc.*, No. 07-cv-7451, 2008 WL 11338617 at *3-4 (C.D. Cal. 2008); *Waste and Compliance Mgmt*, 2017 WL 4358145, at *3.

False advertising injury is pleaded adequately by allegations that the challenged statements are false and deceptive, are likely to influence purchasing decisions of customers in the market in which the parties compete, injured plaintiff by diverting sales, and caused and will cause injury to plaintiff's business, reputation, and good will. *Waste and Compliance Mgmt.*, 2017 WL 4358145 at *3. Cliffside has pled each of these elements. Counterclaims ¶¶ 1, 2(c), 3-11, 20-21, 56, 60, 63, 68. This Court denied a motion to dismiss a false advertising claim averring simply that "advertising and marketing materials deceived consumers, influenced consumers purchasing decisions, diverted sales from Plaintiff to Defendant, and diminished Plaintiff's goodwill." *King Tuna*, 2008 WL 11338617 at *3-*4. Cliffside's counterclaims easily exceed this standard.

Even if the damages allegations were deficient—and they are not—Cliffside's request for injunctive relief alone suffices to plead harm. *See* Counterclaims at 33. The injury element of a false advertising claim is that "the plaintiff has been ***or is likely to be injured*** as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (emphasis

15

STRIS | 725 S. FIGUEROA ST. STE 1830
MAHER | LOS ANGELES, CA 90017

added); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014) (The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising.") (quoting 15 U.S.C. § 1125(a)(1), Lanham Act § 43(a)). Consequently, "a competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Southland Sod*, 108 F.3d at 1146; *see TrafficSchool.com*, 653 F.3d at 826-27 ("We have generally presumed commercial injury when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers"). Because Cliffside competes with Passages and seeks an injunction against the continuation of its misleading conduct, the claim stands independent of the damages allegations. *Epicor*, 2013 WL 2382262 at *5 ("declin[ing] to dismiss claim solely because it seeks one improper category of relief) (citing *Massey v. Banning Unified Sch. Dist.*, 256 F.Supp.2d 1090, 1092 (C.D. Cal. 2003) (for the purposes of ruling on a Rule 12(b)(6) motion, "[i]t need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted.")).

Unsupported by authority, Passages contends the law requires Cliffside to identify "surveys, complaints or . . . anecdotal evidence" of diverted customers. MTD, ECF No. 62, at 13. The cases it cites state no such requirement, and are readily distinguishable.

Passages cites *Stahl Law Firm v. Judicate West*, No. 13-cv-1668, 2013 WL 6200245, at *5 (N.D. Cal. Nov. 27, 2013), for the proposition that plaintiffs must allege facts describing how false advertising might harm them, and showing that the alleged injury is not merely hypothetical. But in that case, the plaintiff alleged that the parties competed "for mediation services" without explaining the services the plaintiff provided to show that they were competitive with the defendant's. Regarding damages, the complaint offered only the vague allegation that the allegedly false advertising "harmed Plaintiff's ability to compete." *Id.*

Similarly inapposite is *Plan P2 Promotions, LLC v. Wright Brothers, Inc.*, No. 16-cv-2795, 2017 WL 1838943, at *5 (S.D. Cal. May 8, 2017), which found a complaint needed "more specific allegations of, at the very least, lost sales or damage to its reputation." But that case involved a bare allegation that the defendants had engaged in false advertising that had "somehow caused plaintiff to suffer damages." *Id.* at *5. Cliffside's allegations are far more detailed than those in *Stahl* or *Plan P2*.[10]

Lastly, in *Cannarella v. Volvo Car USA LLC*, No. 16-cv-6195, 2016 WL 9450451 (C.D. Cal. Dec. 12, 2016), the complaint failed because it did not allege direct diversion of sales or facts showing the parties competed, and the product allegedly falsely advertised was not offered for sale. *Id.* at *11. By contrast with *Cannarella* and the other cases Passages cites, Cliffside has alleged (i) facts showing it directly competes with Passages in the market for alcohol and drug addiction treatment services, and (ii) direct diversion of sales. Counterclaims ¶¶1, 2(c), 3-11, 56, 60, 63, 68.

**E.     The Motion to Dismiss Does Not Separately Address the California Claims.**

Passages does not independently challenge the claims for violations of California false advertising and unfair competition law, except insofar as they are congruent with the Lanham Act claims. Accordingly, its challenge to the state law claims falls with its Lanham Act arguments.

---

[10] In *Plan P2*, the Court suggested the complaint would have sufficed if it had alleged that customers were "likely to choose the official product over the unofficial one" and sales were thereby diverted from the plaintiff. *Id.* at *6.

S T R I S  | 725 S. FIGUEROA ST. STE 1830
M A H E R | LOS ANGELES, CA 90017

**CONCLUSION**

For the foregoing reasons, Passages' motion to dismiss Cliffside's counterclaims should be denied.

Respectfully submitted,

Dated: September 10, 2018

/s/ Peter K. Stris
Peter K. Stris
Brendan S. Maher
Elizabeth Rogers Brannen
Dana Berkowitz
Kenneth J. Halpern
Victor O'Connell

STRIS & MAHER LLP
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017
T: (213) 995-6800 | F: (213) 261-0299

Shaun P. Martin
5998 Alcala Park, Warren Hall
San Diego, CA 92110
T: (619) 260-2347 | F: (619) 260-7933

*Attorneys for Defendants and Counterclaim Plaintiffs*

COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS
CASE NO. 2:18-CV-00923-SVW-RAO