Jason Levin (161807)
*jlevin@steptoe.com*
Bennett Evan Cooper (128544)
*bcooper@steptoe.com*
Jennifer Morrow (185964)
*jmorrow@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West Fifth Street, Suite 700
Los Angeles, California 90071
Telephone:   (213) 439-9400
Facsimile:    (213) 439-9599

Attorneys for Plaintiff and Counterclaim Defendant
Grasshopper House, LLC, and Counterclaim
Defendants Passages Silver Strand, LLC, Chris
Prentiss, and Pax Prentiss

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Grasshopper House, LLC, | Case No. 2:18-CV-923 SVW (RAOx) |
| Plaintiff, | **COUNTERCLAIM DEFENDANTS' ANSWER TO COUNTERCLAIMS AND COUNTER-COUNTERCLAIMS FOR DAMAGES AND OTHER RELIEF FOR VIOLATIONS OF:** |
| v. | |
| Clean & Sober Media LLC, et al., | |
| Defendants. | |
| Cliffside Malibu, et al., | **(1)   THE LANHAM ACT** |
| Counterclaim Plaintiffs, | **(2)   LIBEL PER SE** **(3)   CAL. BUS. & PROF. CODE § 17045** |
| v. | **(4)   CAL. BUS. & PROF. CODE § 17500** |
| Grasshopper House, LLC, et al., | **(5)   CAL. BUS. & PROF. CODE § 17200** |
| Counterclaim Defendants. | **DEMAND FOR JURY TRIAL** |
| AND RELATED COUNTER-COUNTERCLAIMS | |

Plaintiff and Counterclaim Defendant Grasshopper House, LLC ("Grasshopper House"), and Counterclaim Defendants Passages Silver Strand, LLC ("Silver Strand"), Chris Prentiss, and Pax Prentiss (together, "Counterclaim

Defendants"), by and through their attorneys, hereby present their answer and defenses to the Counterclaims filed August 1, 2018, of Counterclaim Plaintiffs Cliffside Malibu, Sunset Malibu, Cliffside Malibu II, Cliffside Malibu Outpatient Services, Cliffside Malibu 3, and Recovery Malibu (together, "Counterclaim Plaintiffs"), as well as the Counter-counterclaims set forth below.

## ANSWER TO COUNTERLCLAIMS

1.     Answering paragraph 1 of the Counterclaims, the Counterclaim Defendants deny the allegations.

2.     Answering paragraph 2 of the Counterclaims, the Counterclaim Defendants deny the allegations.

3.     Answering paragraph 3 of the Counterclaims, the Counterclaim Defendants admit that Cliffside operates substance abuse treatment facilities in California. In all other respects, the Counterclaim Defendants deny the allegations.

4.     Answering paragraph 4 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence and admit that Cliffside Malibu operates a substance abuse treatment facility in Malibu, California. The Counterclaim Defendants lack sufficient knowledge and information to admit or deny the allegations in the third sentence. In all other respects, the Counterclaim Defendants deny the allegations.

5.     Answering paragraph 5 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence. The Counterclaim Defendants lack sufficient knowledge and information to admit or deny the allegations in the second and third sentences.

6.     Answering paragraph 6 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence. The Counterclaim

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

Defendants lack sufficient knowledge and information to admit or deny the allegations in the second and third sentences.

7.    Answering paragraph 7 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence. The Counterclaim Defendants lack sufficient knowledge and information to admit or deny the allegations in the second and third sentences.

8.    Answering paragraph 8 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence. The Counterclaim Defendants lack sufficient knowledge and information to admit or deny the allegations in the second and third sentences.

9.    Answering paragraph 9 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence. The Counterclaim Defendants lack sufficient knowledge and information to admit or deny the allegations in the second and third sentences.

10.    Answering paragraph 10 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence; admit that Grasshopper House operates a substance abuse treatment facility called Passages Malibu; and admit that Chris Prentis is the manager or member of Grasshopper House. In all other respects, the Counterclaim Defendants deny the allegations.

11.    Answering paragraph 11 of the Counterclaims, the Counterclaim Defendants admit the allegations in the first sentence; admit that Silver Strand operates a substance abuse treatment facility called Passages Ventura; and admit that Chris Prentis is the manager or member of Silver Strand. In all other respects, the Counterclaim Defendants deny the allegations.

12.    Answering paragraph 12 of the Counterclaims, the Counterclaim Defendants admit the allegations of the first, second, and third sentences. In all other respects, the Counterclaim Defendants deny the allegations.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

13.     Answering paragraph 13 of the Counterclaims, the Counterclaim Defendants admit the allegations of the first, second, and third sentences. In all other respects, the Counterclaim Defendants deny the allegations.

14.     Answering paragraph 14 of the Counterclaims, the Counterclaim Defendants deny the allegations.

15.     Answering paragraph 15 of the Counterclaims, the Counterclaim Defendants deny the allegations.

16.     Answering paragraph 16 of the Counterclaims, the Counterclaim Defendants admit that this Court has subject-matter jurisdiction and specific and general personal jurisdiction over Chris Prentiss and Pax Prentiss because they reside and have their principal places of business in California. In all other respects, the Counterclaim Defendants deny the allegations.

17.     Answering paragraph 17 of the Counterclaims, the Counterclaim Defendants admit that Grasshopper House operates Passages Malibu and that Silver Strand operates Passages Ventura, and that the two are substance abuse treatment facilities. In all other respects, the Counterclaim Defendants deny the allegations.

18.     Answering paragraph 18 of the Counterclaims, the Counterclaim Defendants deny the allegations in the first and third sentences. The Counterclaim Defendants admit that Chris Prentiss has held a real estate broker's license, and that he has written several books on Chinese philosophy under the pen name Wu Wei. In all other respects, the Counterclaim Defendants deny the allegations.

19.     Answering paragraph 19 of the Counterclaims, the Counterclaim Defendants admit that Passages accepts insurance and that monthly charges for patient care in certain cases may rise to or exceed $100,000. In all other respects, the Counterclaim Defendants deny the allegations.

4

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

20.    Answering paragraph 20 of the Counterclaims, the Counterclaim Defendants deny the allegations.

21.    Answering paragraph 21 of the Counterclaims, the Counterclaim Defendants deny the allegations.

22.    Answering paragraph 22 of the Counterclaims, the Counterclaim Defendants deny the allegations.

23.    Answering paragraph 23 of the Counterclaims, the Counterclaim Defendants deny the allegations.

24.    Answering paragraph 24 of the Counterclaims, the Counterclaim Defendants admit that the website www.baltimorehealth.org at one time (but no longer) bore the City of Baltimore's logo as a decorative element, and that the website's homepage contained, under the heading "Resources," hyperlinks to government websites and other websites. In all other respects, the Counterclaim Defendants deny the allegations.

25.    Answering paragraph 25 of the Counterclaims, the Counterclaim Defendants admit that the URL www.baltimorehealth.org was used at one time by the Baltimore City Health Department and that Grasshopper House's current website at that URL is not a "government website." In all other respects, the Counterclaim Defendants deny the allegations.

26.    Answering paragraph 26 of the Counterclaims, the Counterclaim Defendants admit that the named links were to Passages websites. In all other respects, the Counterclaim Defendants deny the allegations.

27.    Answering paragraph 27 of the Counterclaims, the Counterclaim Defendants admit that www.baltimorehealth.org contained a link to *The Verge*'s article entitled "Review Sites Have Deep Ties to the Rehabs They Promote," and that the article speaks for itself. In all other respects, the Counterclaim Defendants deny the allegations.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

28.     Answering paragraph 28 of the Counterclaims, the Counterclaim Defendants admit that www.baltimorehealth.org contained a link to *The Verge*'s article entitled "Review Sites Have Deep Ties to the Rehabs They Promote." In all other respects, the Counterclaim Defendants deny the allegations.

29.     Answering paragraph 29 of the Counterclaims, the Counterclaim Defendants deny the allegations.

30.     Answering paragraph 30 of the Counterclaims, the Counterclaim Defendants deny the allegations.

31.     Answering paragraph 31 of the Counterclaims, the Counterclaim Defendants deny the allegations.

32.     Answering paragraph 32 of the Counterclaims, the Counterclaim Defendants admit that the website www.denverijournal.com included the title "DENVERIJOURNAL" with graphic elements, and that the homepage contained links under "Drug Addiction Resources" that included the named links to Passages websites. In all other respects, the Counterclaim Defendants deny the allegations.

33.     Answering paragraph 33 of the Counterclaims, the Counterclaim Defendants admit the allegations in the second and third sentences, except that paragraph 33 omits the third sentence of the referenced paragraph. In all other respects, the Counterclaim Defendants deny the allegations.

34.     Answering paragraph 34 of the Counterclaims, the Counterclaim Defendants deny the allegations.

35.     Answering paragraph 35 of the Counterclaims, the Counterclaim Defendants admit that the URL www.westerncollege.com was used at one time by Western Career College, which is now known as Carrington College California. In all other respects, the Counterclaim Defendants deny the allegations.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

36.    Answering paragraph 36 of the Counterclaims, the Counterclaim Defendants admit that the website www.westerncollege.com contained three postings about Passages Malibu and that the postings described Passages Malibu favorably. In all other respects, the Counterclaim Defendants deny the allegations.

37.    Answering paragraph 37 of the Counterclaims, the Counterclaim Defendants deny the allegations.

38.    Answering paragraph 38 of the Counterclaims, the Counterclaim Defendants deny the allegations.

39.    Answering paragraph 39 of the Counterclaims, the Counterclaim Defendants admit that the referenced posting listed Passages Malibu first. In all other respects, the Counterclaim Defendants deny the allegations.

40.    Answering paragraph 40 of the Counterclaims, the Counterclaim Defendants deny the allegations.

41.    Answering paragraph 41 of the Counterclaims, the Counterclaim Defendants deny the allegations.

42.    Answering paragraph 42 of the Counterclaims, the Counterclaim Defendants deny the allegations.

43.    Answering paragraph 43 of the Counterclaims, the Counterclaim Defendants deny the allegations.

44.    Answering paragraph 44 of the Counterclaims, the Counterclaim Defendants deny the allegations.

45.    Answering paragraph 45 of the Counterclaims, the Counterclaim Defendants deny the allegations.

46.    Answering paragraph 46 of the Counterclaims, the Counterclaim Defendants admit that millions of Americans have been affected by addiction. The Counterclaim Defendants further respond that the referenced documents

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

speak for themselves. In all other respects, the Counterclaim Defendants deny the allegations.

47.    Answering paragraph 47 of the Counterclaims, the Counterclaim Defendants deny the allegations. The Counterclaim Defendants further respond that the referenced documents speak for themselves.

48.    Answering paragraph 48 of the Counterclaims, the Counterclaim Defendants admit that the quoted sentences appeared in the cited websites, in context with other statements and without the emphasis added in the Counterclaims. In all other respects, the Counterclaim Defendants deny the allegations.

49.    Answering paragraph 49 of the Counterclaims, the Counterclaim Defendants deny the allegations.

50.    Answering paragraph 50 of the Counterclaims, the Counterclaim Defendants deny the allegations.

51.    Answering paragraph 51 of the Counterclaims, the Counterclaim Defendants deny the allegations.

52.    Answering paragraph 52 of the Counterclaims, the Counterclaim Defendants admit that the quoted sentences appeared in the cited websites, in context with other statements and without the emphasis added in the Counterclaims. In all other respects, the Counterclaim Defendants deny the allegations.

53.    Answering paragraph 53 of the Counterclaims, the Counterclaim Defendants admit that the quoted sentences appeared in the cited websites, in context with other statements and without the emphasis added in the Counterclaims. In all other respects, the Counterclaim Defendants deny the allegations.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

54.     Answering paragraph 54 of the Counterclaims, the Counterclaim Defendants deny the allegations.

55.     Answering paragraph 55 of the Counterclaims, the Counterclaim Defendants deny the allegations.

56.     Answering paragraph 56 of the Counterclaims, the Counterclaim Defendants deny the allegations.

## FIRST CAUSE OF ACTION

## (Lanham Act, 15 U.S.C. § 1125(a)(1))

57.     Answering paragraph 57 of the Counterclaims, the Counterclaim Defendants incorporate their responses to all paragraphs in this pleading by reference as if fully set forth herein.

58.     Answering paragraph 58 of the Counterclaims, the Counterclaim Defendants admit that 15 U.S.C. § 1125(a)(1) makes unlawful conduct satisfying the following elements: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. In all other respects, the Counterclaim Defendants deny the allegations.

59.     Answering paragraph 59 of the Counterclaims, the Counterclaim Defendants admit that the cited opinion contains the quoted text following the introductory clause, "Under the Lanham Act, a 'prima facie case requires a showing that ….'" The Counterclaim Defendants incorporate by reference their response to paragraph 58 of the Counterclaims.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

60.     Answering paragraph 60 of the Counterclaims, the Counterclaim Defendants deny the allegations.

## SECOND CAUSE OF ACTION

### (False Advertising, Cal. Bus. & Prof. Code §§ 17500 et seq.)

61.     Answering paragraph 61 of the Counterclaims, the Counterclaim Defendants incorporate their responses to all paragraphs in this pleading by reference as if fully set forth herein.

62.     Answering paragraph 62 of the Counterclaims, the Counterclaim Defendants admit that the cited decisions contain the quoted text, in context with other statements and as modified by the Counterclaims. In all other respects, the Counterclaim Defendants deny the allegations.

63.     Answering paragraph 63 of the Counterclaims, the Counterclaim Defendants deny the allegations.

## THIRD CAUSE OF ACTION

### (Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 et seq.)

64.     Answering paragraph 64 of the Counterclaims, the Counterclaim Defendants incorporate their responses to all paragraphs in this pleading by reference as if fully set forth herein.

65.     Answering paragraph 65 of the Counterclaims, the Counterclaim Defendants admit that California Business & Professions Code § 17200 provides, "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." The Counterclaim Defendants further admit that the cited opinion contains the quoted text, in context with other statements and as modified by the

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

Counterclaims. In all other respects, the Counterclaim Defendants deny the allegations.

66.     Answering paragraph 66 of the Counterclaims, the Counterclaim Defendants admit that, to state a claim under the UCL, a party must allege the conduct and injury-in-fact required by California Business & Professions Code § 17200 et seq.

67.     Answering paragraph 67 of the Counterclaims, the Counterclaim Defendants deny the allegations.

68.     Answering paragraph 68 of the Counterclaims, the Counterclaim Defendants deny the allegations.

69.     The Counterclaim Defendants deny all allegations in the Counterclaims that are not specifically admitted above.

## AFFIRMATIVE DEFENSES

Counterclaim Defendants allege and assert the following defenses in response to Counterclaim Plaintiffs' allegations, without admitting or acknowledging that they bear the burden of proof as to the following defenses. Counterclaim Defendants reserve the right to allege additional defenses that may become known through the course of discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

### (Statutes of Limitations)

70.     The Counterclaims are barred in whole or part by the applicable statutes of limitations.

## SECOND AFFIRMATIVE DEFENSE

### (Laches)

71.     The Counterclaims are barred in whole or part by the doctrine of laches.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

### THIRD AFFIRMATIVE DEFENSE

### (Unclean Hands)

72.     The Counterclaims are barred in whole or part by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

73.     The Counterclaims are barred in whole or part by the doctrine of estoppel.

### FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

74.     The Counterclaims are barred in whole or part by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

### (Acquiescence)

75.     The Counterclaims are barred in whole or part by the doctrine of acquiescence.

### SEVENTH AFFIRMATIVE DEFENSE

### (Privilege of Fair Competition)

76.     The Counterclaims are barred in whole or part by the privilege of fair competition.

### EIGHTH AFFIRMATIVE DEFENSE

### (Freedom of Speech)

77.     The Counterclaims are barred in whole or part under the First Amendment to the United States Constitution and article I, section 2 of the California Constitution.

WHEREFORE, Counterclaim Defendants deny that they have engaged in any of the alleged wrongful conduct, deny that they are liable to Counterclaim Plaintiffs for any of the relief sought in the Counterclaims, request that the Counterclaims be dismissed with prejudice, and request that the Court grant Counterclaim Defendants their costs and reasonable attorneys' fees and such further relief as the Court deems just an appropriate.

## COUNTER-COUNTERCLAIMS

### PARTIES

1.  Counterclaim Defendant Grasshopper House, LLC is a California limited liability company with its principal place of business in Malibu, California. Grasshopper House owns and operates Passages Malibu, a holistic addiction treatment and rehabilitation facility in Malibu, California.

2.  Counterclaim Defendant Passages Silver Strand LLC is a California limited liability company with its principal place of business in Ventura, California. Silver Strand owns and operates Passages Ventura, a holistic addiction treatment and rehabilitation facility in Ventura, California. Passages Ventura does not have an admissions department; it instead relies on the Passages Malibu admissions department to send the clients that are not eligible for Passages Malibu. Silver Strand also shares the marketing dollars for the Passages Malibu brand. The potential clients who call or email Passages Malibu are distributed to either Passages Malibu or Passages Ventura based on the potential clients' insurance plans or their resources.

3.  Grasshopper House and Silver Strand are wholly owned and operated by Counterclaim Defendants Chris Prentiss and Pax Prentiss and are collectively referred to as "Passages."

4.  Upon information and belief, Clean & Sober Media LLC ("CSM") is a California limited liability company with its principal place of business in

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

Woodland Hills, California. CSM operates The Fix, an Internet website that claims to be "the world's leading premier [*sic*] about addiction and recovery."

5.     Upon information and belief, Cliffside Malibu is a California corporation with its principal place of business in Malibu, California. Cliffside Malibu operates a residential treatment center also known as Cliffside Malibu. Cliffside Malibu and Passages Malibu directly compete with each other for clients in the same market for luxury alcohol and drug addiction treatment services. Both are licensed health facilities pursuant to California Health & Safety Code §§ 1250 and 1250.3.

6.     Upon information and belief, defendant Richard L. Taite is the manager and sole member of CSM. In addition, Taite was the founder and is or was, at all relevant times, the owner, Chief Executive Officer, Secretary, and Chief Financial Officer of defendant Cliffside Malibu. Upon information and belief, Taite controls and is directly responsible for the actions of CSM and Cliffside Malibu, both of which are closely held corporations. Taite also has acted in his personal and individual capacity as to, and actually directed, authorized, and personally participated in, the conduct that gives rise to the claims in this action.

7.     Upon information and belief, CSM, Cliffside Malibu, and Taite (collectively, "Defendants") acted as agents of each other, conspired with each other, acted in concert with each other, and aided and abetted each other with respect to the conduct that gives rise to the claims below.

8.     Roes 1-10 are persons and business entities, presently unknown, who acted as the agents of the above-identified Defendants, or conspired and acted in concert with them, with respect to the conduct that gives rise to the claims in this action.

## FACTUAL ALLEGATIONS

9.      In 2011, The Fix was owned and operated by Recovery Media, LLC. The Fix at that time posted a narrative review of Passages Malibu together with several ratings. The narrative review contained positive information on the treatment offered by Passages Malibu, with one former alumni patient describing his stay at the facility as a "God-send" and a second alumni patient reporting that his experience at Passages Malibu was "inspiring." The Fix nonetheless gave Passages Malibu a one-star rating for the treatment it offered. The one-star rating falsely suggested to readers that The Fix had obtained information from former alumni of Passages that it offered the worst available treatment when, in fact, The Fix had no such information.

10.     In contrast, Recovery Media provided Cliffside Malibu four-star "Overall" and "Treatment" ratings. Both ratings were placed in a section of The Fix called "Rehab Reviews," which would permit readers to compare Cliffside Malibu and Passages Malibu. Recovery Media was willing to provide Cliffside favorable ratings, and to denigrate Passages, because of an illegal contract it had entered to promote Cliffside. On December 29, 2011, Taite signed a contract with The Fix to pay it $8,000 for each person it convinced to come to Cliffside. The contract was illegal under California Business & Professions Code § 650. Taite and The Fix knew their contract was illegal, but entered it anyway for its economic benefits, including the enhancement of business at Cliffside at the expense of Passages. (As alleged further below, the existence of the illegal contract was unknown to Passages until October 2018, upon review of documents Cliffside produced in discovery.)

11.     Unaware of the illegal contract to promote Cliffside, Passages contacted The Fix to complain about the ratings for Passages Malibu, The Fix responded that it would maintain the one-star rating for Passages unless it was

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

paid $50,000. Passages refused to pay, and the low ratings for Passages Malibu remained.

12.     Recovery Media filed for bankruptcy in 2013, and The Fix was acquired by CSM in October 2013. CSM did not publicly disclose on The Fix that it was an affiliate of Cliffside Malibu and owned by Taite. (As alleged further below, that material information was not known to Passages until 2017.)

13.     Unaware that CSM was just a front for its arch-rival, Passages contacted CSM to obtain a fair rating for Passages Malibu. In the spring of 2014, The Fix agreed to take down the Passages Malibu review and rating, but the removal never happened. Instead, in May 2014, The Fix tried to barter for the removal. The Fix's Senior Account Representative, Kris Harrison, asked Grasshopper House, "If I was able to have [the bad ratings] take[n] down would you be interested in listing within some of our categories or maybe on[e] of our banner positions?"

14.     Grasshopper House refused to give The Fix money, so the The Fix maintained the negative rating for Passages Malibu. Not only that, The Fix optimized its website, and used other websites, to use the Passages Malibu name to drive traffic to The Fix. Passages had spent in excess of $100 million dollars on advertising Passages Malibu, and that advertising resulted in Passages Malibu's having significant brand recognition. As a result, consumers looked for and could find Passages Malibu online more easily than its competitors. The Fix took advantage of the Passages brand recognition. One of its employees, Kris Harrison, wrote in July 2014 that when consumers used Google to search the Internet for Passages Malibu, they were finding first the Passages Malibu website and second a link to The Fix and its negative rating of Passages Malibu. Defendants did not want to remove Passages Malibu from The Fix because the Google ranking benefited them in two ways. First, as additional readers clicked on the link to The

16

Fix, The Fix could increase its advertising rates and expand its advertising base. Second, readers of The Fix seeing the one-star Treatment rating of Passages Malibu would find attractive Cliffside Malibu's revised five-star Overall and Treatment ratings, thereby driving up that facility's revenue at the expense of Passages Malibu. If The Fix had done the right thing and removed the Passages Malibu ratings, Defendants would not have seen the same financial boost.

15. By the summer or fall of 2014, The Fix had not changed the one-star rating for Treatment at Passages Malibu and had not disclosed it was controlled by Taite. In an effort to convince Passages of its neutrality, however, The Fix did increase the Overall rating of Passages Malibu from two stars to two and a half stars. The Fix then posted for the first time the methodology it purportedly used to generate its ratings of Passages Malibu and other facilities:

> To create our reviews, we invite selected centers to solicit former clients to complete a detailed, 20-question survey. The Fix requires at least five completed surveys before a review is generated…. The surveys include questions about accommodations, meals, residents, staff, activities, and more…. For each of the above metrics - accommodations, food, and treatment - we then rate each center on a five-star scale, based on the alumni's chosen star ratings and comments. The overall rating for the particular center being reviewed is created based on the three component star ratings, client comments, and other information obtained through the survey process.

16. The Fix subsequently provided a copy of the 20-question survey referenced in its posted methodology. The survey permitted alumni to rate facilities in various categories from five stars ("excellent") to one star ("terrible"), and to provide comments with respect to the categories.

17

17.     Based on the rating methodology described on The Fix, readers of the Rehab Reviews would reasonably infer the following facts about Passages Malibu: (1) The Fix had in its possession at least five completed 20-question surveys from Passages Malibu alumni; (2) most, if not all, surveyed alumni gave Passages Malibu one star for Treatment, or provided comments indicating that it provided terrible treatment; and (3) the ratings and other survey responses from Passages Malibu alumni support a two-and-a-half-star Overall rating. In fact, none of these facts is true because there are no completed written surveys of Passages Malibu clients, and, at all relevant times, Defendants knew this to be the case. The Fix did not disclose this fact to the public until 2017, when it placed a difficult-to-find information icon—an "i" in a circle—which, when touched by the cursor, generates the following pop-up: "Reviews completed prior to October 25th, 2013 were completed under prior editorial control. Some reviews and star ratings may have been completed at different times and under different criteria."

18.     In sum, The Fix contains several false and misleading statements about the reviews and ratings of Cliffside Malibu and Passages Malibu:

a.      The Fix affirmatively represents, "Our stated editorial mission – and sole bias – is to destigmatize all forms of addiction and mental health matters, support recovery, and assist toward humane policies and resources." At the same time, The Fix conceals another critical source of "bias" that would be material to users: the common ownership of The Fix and Cliffside Malibu.

b.      The Fix states that its reviews and ratings for Cliffside Malibu are based on the results of written customer surveys. They are not. Cliffside Malibu's favorable review and rating followed from its advertising in and then affiliation with The Fix.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

c.   The Fix states that its reviews and ratings for Passages Malibu are based on at least five written customer surveys. They are not. The purported written customer surveys do not exist.

d.   The Fix misleads readers by failing to disclose that its reviews and ratings of Cliffside Malibu and Passages Malibu are really advertising. The reviews and ratings are a form of "native advertising," a term used by the Federal Trade Commission to describe advertisements indistinguishable from news, feature articles, product reviews, editorial, entertainment, and other regular content. The FTC's enforcement policy states that it considers native advertising to be misleading in the absence of a "sufficiently prominent and unambiguous" disclosure of made in "simple, unequivocal" language. The Fix did not and does not contain sufficient disclosures of its native advertising.

19.   As a result of the false and misleading statements alleged above, as well as the alleged illegal contract between Taite and The Fix, Passages Malibu and Passages Ventura suffered a diversion of clients that affected their business, and a loss of goodwill and injury to the business reputation of the Passages brand, all of which required corrective advertising costing Passages millions of dollars.

20.   Upon information and belief, as a result of the false and misleading statements alleged above, and the illegal contract with The Fix, Cliffside Malibu has experienced an increase in patient inquiries and enrollments.

21.   Upon information and belief, as a result of the false and misleading statements alleged above, The Fix has experienced increased traffic and increased advertising revenue.

22.   For economic benefit, Defendants directed and controlled the false and misleading statements and illegal contract alleged above, knowing they were false and misleading to consumers, and illegal, or recklessly disregarding the

19

12619221

issues. As a result, Defendants acted with malice, oppression, conscious disregard of Passages' rights, and either knowledge that the statements were false and the contract and payments were illegal, or reckless disregard of the truth or falsity of the statements and the illegality of the contract and payments.

**PASSAGES' DISCOVERY OF DEFENDANTS' MISCONDUCT**

23.   When The Fix was acquired by CSM in October 2013, Passages did not know and was not on inquiry notice that CSM was owned and controlled by Taite. Media coverage of CSM's purchase of The Fix in 2013 did not mention Taite. And neither The Fix's masthead, nor its "About Us" section, nor its "Terms & Conditions" section ever mentioned Taite. CSM's own website (www.cleanandsobermedia.com) did not disclose Taite's ownership or role, much less its affiliation with Cliffside Malibu. Instead, CSM's "About Us" section stated and continues to state only that "Clean & Sober Media was launched in 2013 by Delphine Robertson in order to acquire a public trust in TheFix.com."

24.   It was not until November 2017 that Passages discovered that CSM was owned and controlled by Taite. Passages learned the information from an online article published in November 2017 by an independent website called The Verge. The Verge published an article entitled "Review Sites Have Deep Ties to the Rehabs They Promote." The article reported, "According to an investigation by The Verge, … Rehab Reviews and The Fix are controlled by Cliffside Malibu founder Richard Taite." It further reported that "people reading [The Fix] had no way to know the connection (until disclaimers appeared after The Verge approached the sites for comment)." Only after The Verge published its article did The Fix update its small information icon to disclose the common ownership of The Fix and Cliffside Malibu.

25.   As of October 2013, then, Passages had no reason to believe that The Fix was being controlled or directed by a competitor of Passages Malibu.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

Therefore, when The Fix announced its new ratings methodology in the summer or fall of 2014, Passages had no reason to believe that the methodology was false, misleading, or biased. Specifically, when the new methodology indicated that The Fix had received completed 20-question surveys from Passages Malibu alumni, Passages Malibu had no reason to believe The Fix was lying or was motivated to lie. The Fix presumably had obtained written survey responses from the Passages Malibu clients who were apparently interviewed in 2011 for the initial narrative evaluation.

26. From the summer or fall of 2014 through June 2016, Passages Malibu had no reason to doubt the veracity of the new methodology or ability to discover whether it had been followed by The Fix. The truth was known only to Defendants. There was no reasonable way for Passages to have learned whether any Passages Malibu clients interviewed in 2011 really existed and, if so, whether they had in fact completed 20-question written surveys and declared that Passages Malibu had provided them terrible treatment.

27. In June 2016, Passages received an email from The Fix's editor-in-chief, Allison McCabe, inviting Passages Malibu to solicit survey responses from its clients to permit The Fix to re-review Passages Malibu. This email led Passages to suspect that The Fix had not previously obtained survey responses from Passages Malibu clients and therefore had not been complying with its own published methodology. When challenged on the point, McCabe wrote in a July 31, 2016, email: "Under prior management, the review process may have been different" and "When new management took over after the bankruptcy, we kept the prior reviews up…." From McCabe's response, Passages reasonably inferred that written surveys from Passages Malibu clients did not exist and never existed. Before July 31, 2016, Passages did not know and could not have reasonably

known that The Fix had lied and had not received client surveys from Passages Malibu clients.

28.     In October 2018, in response to document requests made by Passages in this litigation, Defendants produced emails and other documents evidencing the illegal referral contract signed by Taite and The Fix. Passages did not have earlier knowledge of this illegal contract or means to discover its existence.

**FIRST CLAIM FOR RELIEF**
**(Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B))**

29.     Passages incorporates by reference the allegations of the preceding paragraphs.

30.     By their acts set forth above during their ownership and control of The Fix, including both affirmative statements and omissions, Defendants have used and continue to use false and misleading descriptions or representations of fact, in the context of commercial advertising or promotion, that are directed to the nature, characteristics, or qualities of Passages' services or commercial activities and Defendants' own services or commercial activities, in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Defendants' false and misleading statements are related to material elements of purchasers' decisions and are likely to influence such decisions.

31.     By their acts set forth above prior to their direct ownership and control of The Fix, Defendants used an illegal contact to induce, direct, encourage, and aid Recovery Media to make affirmative statements and omissions on The Fix about Passages Malibu, in the context of commercial advertising or promotion, that are directed to the nature, characteristics, or qualities of Passages' services or commercial activities and Defendants' own services or commercial activities, in violation of section 43(a)(1)(B) of the Lanham Act, 15 U.S.C.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

§ 1125(a)(1)(B).  The false and misleading statements are related to material elements of purchasers' decisions and are likely to influence such decisions.

32.    Defendants' false and misleading statements, and those of The Fix, actually deceived or are likely to deceive a substantial segment of the relevant market for clients or purchasers of alcohol or drug rehab services.

33.    The false and misleading statements alleged above have entered "commerce," as that term is defined in section 45 of the Lanham Act, 15 U.S.C. § 1127.

34.    Passages was injured and will continue to be injured as a result of the alleged false and misleading statements, both by direct diversion and loss of sales and profits, and by a lessening of the goodwill associated with Passages' name, business, and services.

35.    The injury to Passages' business and goodwill from the alleged false and misleading statements is irreparable because the full extent of such injury, which would extend far into the future, cannot be precisely measured and compensated for.

36.    Defendants continue to do the acts complained of in this Complaint, and, unless restrained and enjoined, Defendants will continue to do so, all to Passages' irreparable injury. Passages' remedy at law is not adequate to compensate it for the future injuries received and threatened.

37.    Defendants' conduct has been willful and committed with the intent to deceive prospective clients or purchasers of alcohol or drug rehab services and the public.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

## SECOND CAUSE OF ACTION
### (Libel Per Se)

38.  Passages incorporates by reference the allegations of the preceding paragraphs.

39.  The Fix's review of Passages Malibu includes statements that were false and disparaged the quality of the treatment services that Passages provides to clients at Passages Malibu.

40.  Defendants made such false and disparaging statements to clients, prospective clients, and the public by including and maintaining the statements in The Fix and, before that, by having Recovery Media do so on Defendants' behalf.

41.  The single-star rating of Passages Malibu for "Treatment" constitutes libel per se under California Civil Code §§ 45 and 45a because it defames Passages, without the necessity of explanatory matter, that Passages is completely incompetent at its core function of treating addiction.

42.  Defendants knew or should have recognized that someone else might act in reliance on their false and disparaging statements, causing Passages financial loss.

43.  By publishing such false and disparaging statements, and prompting Recovery Media to do so as well, Defendants induced others who relied on the statements to avoid obtaining services at Passages, causing Passages to suffer direct financial harm.

44.  Defendants' conduct was a substantial factor in causing harm to Passages.

45.  Defendants' conduct was undertaken with malice, oppression, conscious disregard of Passages' rights, and either knowledge that the statements were false or reckless disregard of the truth or falsity of the statements, thereby permitting the imposition of punitive damages against them.

### THIRD CAUSE OF ACTION
### (California Business & Professions Code § 17045)

46.    Passages incorporates by reference the allegations of the preceding paragraphs.

47.    California Business & Professions Code § 17045 prohibits secret payments to the injury of a competitor and where such payment or allowance tends to destroy competition.

48.    Defendants agreed to pay and did pay Recovery Media money for health care referrals made illegal by California Business & Professions Code § 650. Both the contract and the payments were secret; they were kept secret because they were illegal.

49.    The illegal contract and illegal payments prompted Recovery Media to use the Fix to maintain false and misleading ratings of Passages Malibu, and to promote Cliffside, thereby harming competition between Passages and Cliffside.

50.    Defendants' conduct was a substantial factor in causing harm to Passages, as alleged above.

51.    Defendants' conduct was undertaken with malice, oppression, conscious disregard of Passages' rights, and either knowledge that contract and payments were illegal, or reckless disregard of the illegality of the contract and payments.

### FOURTH CAUSE OF ACTION
### (California Business and Professions Code § 17500)

52.    Passages incorporates by reference the allegations of the preceding paragraphs.

53.    Defendants have made statements in advertising that are untrue or misleading.

25

12619221

54.    Defendants knew, or by the exercise of reasonable care should have known, that their statements were untrue or misleading.

55.    Members of the public are likely to be deceived by Defendants' untrue or misleading statements.

56.    Defendants' conduct constitutes false advertising in violation of section 17500 of the California Business and Professions Code.

57.    Defendants' misconduct will continue or reoccur unless it is restrained and enjoined.

### FIFTH CAUSE OF ACTION
### (California Business and Professions Code § 17200)

58.    Passages incorporates by reference the allegations of the preceding paragraphs.

59.    Defendants' conduct is unlawful and fraudulent and therefore in violation of section 17200 of the California Business and Professions Code (also known as the Unfair Competition Law). Defendants' conduct was unlawful in that it was in violation of (a) section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (b) section 17500 of the California Business and Professions Code; and (c) section 17045 of the California Business & Professions Code.

60.    Defendants' conduct was fraudulent, as that term is understood under the California Unfair Competition Law, because a significant number of reasonable readers of The Fix are likely to be misled by its false statements and nondisclosures.

61.    Defendants knew, or by the exercise of reasonable care should have known, that their statements were false or misleading.

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221

WHEREFORE, Passages prays for relief against Defendants as follows:

A.    Issuance of temporary, preliminary, and permanent injunctive relief restraining Defendants, their officers, employees, agents, affiliates, parents, and subsidiaries, and all other persons who act in concert with them from making false, misleading, or deceptive statements or representations about Grasshopper House, Silver Strand, Passages Malibu, Passages Ventura, Cliffside Malibu, or any other treatment facility, on or in connection with the operation of The Fix;

B.    Issuance of temporary, preliminary, and permanent injunctive relief restraining Defendants, their officers, employees, agents, affiliates, parents, and subsidiaries, and all other persons who act in concert with them from making illegal referrals or payments in violation of California Business & Professions Code §§ 650 and 17045;

C.    Damages in an amount to be proved at trial under 15 U.S.C. § 1117, but in no event less than $50 million, based on, among other things, lost business revenues from prospective clients who selected other addiction treatment facilities after reading The Fix's review and rating of Passages Malibu alone or in comparison with Cliffside Malibu's review and rating;

D.    An accounting to determine the profits Defendants have made in connection with their services provided to customers who were diverted from Passages Malibu by Defendants' false and misleading statements, and an award to Passages of such profits and trebling of such award under 15 U.S.C. § 1117(a);

E.    An award of punitive damages for libel per se;

F.    An award to Passages of Passages' costs and attorneys' fees incurred in this action under 15 U.S.C. § 1117(a) on the ground that this is an exceptional case; and

G.    Such other relief as the Court may deem just and equitable.

27

12619221

1

## **DEMAND FOR JURY TRIAL**

2  Counterclaim Defendants hereby demand a jury trial on all issues raised by

3 the Counterclaims and Counter-counterclaims that are so triable.

4  DATED: November 1, 2018.

5         STEPTOE & JOHNSON LLP

6

7         s/ Bennett Evan Cooper
          Jason Levin

8         Bennett Evan Cooper
          Jennifer Morrow

9         633 West Fifth Street, Suite 700
          Phoenix, Arizona 85004-2382

10        Attorneys for Plaintiff and Counterclaim
         Defendant GRASSHOPPER HOUSE,

11        LLC, and Counterclaim Defendants
         PASSAGES SILVER STRAND, LLC,

12        CHRIS PRENTISS, and PAX PRENTISS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO COUNTERCLAIMS; COUNTER-COUNTERCLAIMS

12619221