FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 20 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, a California limited liability company, | No. 19-56008 |
| Plaintiff-counter-defendant-Appellant, | D.C. No. 2:18-cv-00923-SVW-RAO |
| v. | MEMORANDUM[*] |
| CLEAN AND SOBER MEDIA, LLC, a California limited liability company; CLIFFSIDE MALIBU, a California corporation; RICHARD L. TAITE, an individual, | |
| Defendants-counter-claimants-Appellees, | |
| v. | |
| PASSAGES SILVER STRAND, LLC, | |
| Counter-defendant-Appellant. | |

| | |
|---|---|
| GRASSHOPPER HOUSE, LLC, a California limited liability company, | No. 19-56072 |
| | D.C. No. 2:18-cv-00923-SVW-RAO |
| Plaintiff-counter- | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

defendant-Appellee,

v.

CLEAN AND SOBER MEDIA, LLC, a
California limited liability company;
CLIFFSIDE MALIBU, a California
corporation; RICHARD L. TAITE, an
individual,

Defendants-counter-
claimants-Appellants,

v.

PASSAGES SILVER STRAND, LLC,

Counter-defendant-Appellee.

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted December 8, 2020
Pasadena, California

Before:  GRABER and COLLINS, Circuit Judges, and BOULWARE,** District
Judge.
Partial Concurrence and Partial Dissent by Judge COLLINS
Partial Dissent by Judge GRABER

---

** The Honorable Richard F. Boulware II, United States District Judge
for the District of Nevada, sitting by designation.

This case involves a dispute between two competing addiction treatment centers and a website that offered purportedly unbiased reviews about their services. Plaintiff brought a Lanham Act false advertising claim against Defendants. The case proceeded first to a jury trial at which the jury found Defendants liable for the false advertising claim and rejected Defendants' counterclaim. The district court subsequently cancelled the damages phase of the jury trial. The district court then held a bench trial on the equitable relief sought by Plaintiff. Upon conclusion of the bench trial, the district court entered a permanent injunction against Defendants but denied Plaintiff's requests for disgorgement of profits, attorneys' fees and costs. Plaintiff appealed, and Defendants cross-appealed.[1] We have appellate jurisdiction under 28 U.S.C. § 1291.

1.  The district court excluded Plaintiff's damages expert, Dr. Williams, under Federal Rule of Evidence 702 and pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The district court found that Williams' proposed testimony and damages calculations suffered from irreparable methodological flaws. Plaintiff argued that the flaws in Dr. Williams' analysis identified by the district court should not have precluded his testimony because

---

[1] Defendants' cross-appeal does not challenge the jury's rejection of their counterclaim. Accordingly, the only issues before us relate to Plaintiff's claims against Defendants.

these asserted flaws go to the weight of Dr. William's analysis and not to its admissibility. However, the Supreme Court has explained that "the trial judge must ensure that any and all testimony or evidence is not only relevant, but *reliable*." Id. at 589 (emphasis added); see also Daubert v. Merrell Dow Pharmaceuticals., Inc., 43 F.3d 1311, 1319 n.11 (9th Cir. 1995) (holding that courts must determine the reliability of an expert's methodology, verifying that the expert has both chosen a reliable method and followed it faithfully). District courts are also "entitled to broad discretion when discharging their gatekeeping function" under Daubert. United States v. Alatorre, 222 F.3d 1098, 1101 (9th Cir. 2000) (internal quotation marks and citation omitted). The district court found that Dr. Williams' regression analysis was flawed as to the issue of causation and therefore "would be wholly useless to the jury." In particular, the court found that Dr. Williams had not applied a reliable methodology in assessing causation of damages because he discounted competing causal factors without an adequate basis and lacked the necessary expertise to make those judgments. We affirm because the district court acted within its discretion when it excluded Dr. Williams' testimony on the ground that his methodology was so fundamentally flawed that it should not be presented to the jury.

      2.   The district court also properly cancelled the damages phase of the jury

trial. Plaintiff argues that, even without Dr. Williams' testimony, it could have

established injury and damages by presenting the jury with its financial records and

the testimony of its CEO, Pax Prentiss. Plaintiff asserts that the district court

cancelled the damages phase of the trial pursuant to Federal Rule of Civil

Procedure 50 and that it was improper to issue such a ruling pursuant to Rule 50.

We disagree.

First, the district court's order issued pursuant to Rule 56 and not Rule 50.

The district court's explanation for its cancellation of the damages phase and its

reference to the motions to which the order applied establish that it issued the order

in response to the parties' summary judgment motions and pursuant to Rule 56.

We disagree with Plaintiff's assertion that Defendants did not move for summary

judgment on the ground that Plaintiff could not establish damages. Defendants'

summary judgment motion explicitly argued that Plaintiff's experts could not

identify any harm flowing from the Process and Mission Statements.

Second, the district court did not err when it ruled that Plaintiff lacked

sufficient evidence to create a genuine issue of disputed of fact as to damages. We

review *de novo* the district court's order pursuant to Rule 56. <u>Dubois v. Ass'n of</u>

<u>Apartment Owners of 2987 Kalakaua</u>, 453 F.3d 1175, 1178 (9th Cir. 2006).

The district court did not err in cancelling the damages phase because

Plaintiff had no evidence or witnesses it could present as to any actual damages that flowed from the false advertisement. See Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 210 (9th Cir. 1989) (explaining that, for a Lanham Act claim, "actual evidence of some injury *resulting from the deception* is an essential element of the plaintiff's case"). Plaintiff listed only *experts* in its trial brief as the witnesses it would be presenting on damages. The district court then excluded Dr. Williams, the only damages expert presented by Plaintiff at trial. With this exclusion, Plaintiff had no additional damages evidence that it could present at trial. Therefore, the district court permissibly cancelled the damages phase of the trial.

We reject Plaintiff's *post hoc* argument that, even with the exclusion of Dr. Williams, it should have been permitted to present damages evidence through the testimony of Prentiss. Plaintiff, during discovery and in its trial brief, repeatedly identified Prentiss as a witness as to liability *only*. Indeed, during Prentiss' deposition, Plaintiff's counsel stated that Prentiss "was not [there] to talk about causation and damages" and objected to questions directed to Prentiss about damages, declaring that this topic would be exclusively "within the scope of expert opinion." Prentiss himself acknowledged at his deposition that it was "beyond his scope of understanding" to explain how Passages was damaged by Defendants'

6

conduct. As Plaintiff took the position throughout the litigation that it would rely on expert opinion to establish damages and that Prentiss would not provide testimony as to damages, it cannot now take a contrary position. James Wm. Moore et al., <u>Moore's Federal Practice</u> § 30,25[3] (3d ed. 2016).[2]

3. Plaintiff next argues that the district court abused its discretion when it denied Plaintiff's request for disgorgement of profits. A successful plaintiff is "entitled"—"subject to the principles of equity"— to a "defendant's profits." 15 U.S.C. § 1117(a). Disgorgement is limited to "the financial benefit [defendant] received because of the advertising." <u>U-Haul Int'l, Inc. v. Jartran, Inc.</u>, 793 F.2d 1034, 1042 (9th Cir. 1986). To demonstrate a basis for disgorgement, the "plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty." <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1408 (9th Cir. 1993), <u>abrogated on other grounds by</u> <u>SunEarth, Inc. v. Sun Earth Solar Power Co.</u>, 839 F.3d 1179 (9th Cir. 2016) (en banc) (per curiam).

The district court erred when it denied disgorgement to Plaintiff. The district court's error with respect to the denial of disgorgement is twofold.

---

[2] To be sure, a non-expert is allowed to testify as to damages stemming from a Lanham Act violation. <u>See</u> <u>Skydive Ariz., Inc. v. Quattrocchi</u>, 673 F.3d 1105, 1112-13 (9th Cir. 2012) (the Lanham Act "demands neither empirical quantification nor expert testimony to support a monetary award of actual damages."). Here, however, Prentiss' testimony must be rejected not because he is a non-expert but because his testimony cannot establish damages.

First, the district court denied Plaintiff's request based upon its finding that Plaintiff did not establish that Defendants acted willfully in violating the Lanham Act. At the time that the district court issued its order, it correctly considered willfulness to be a "prerequisite" for disgorgement under the Lanham Act. See Stone Creek, Inc. v. Omnia Italian Design, Inc., 875 F.3d 426, 441 (9th Cir. 2017). However, the Supreme Court subsequently held that, while a defendant's mental state is "a highly important consideration in determining whether an award of profits is appropriate," willfulness is not a prerequisite for disgorgement for a Lanham Act claim. Romag Fasteners, Inc. v. Fossil, Inc., 140 S. Ct. 1492, 1497 (2020). Because willfulness is no longer the relevant legal standard for determining the availability of disgorgement, we need not address Plaintiff's argument that merely reckless behavior can support a finding of willfulness. On remand, the district court should consider Defendants' mental state — whatever that may be — when determining what award of profits is appropriate.

Second, it was an abuse of discretion for the district court to deny Plaintiff's request for disgorgement on the ground that Plaintiff had not established causally, and to a reasonable certainty, the "financial benefit" that Defendants received from their false advertisement as to Plaintiff. The district court explicitly found that "Cliffside undoubtedly profited from its Lanham Act violations." Having made this

8

finding, the only remaining inquiry for the district court was the amount of disgorgement that could be established to a reasonable certainty to which Plaintiff was "entitled." 15 U.S.C. § 1117(a). While Defendants have asserted that the Process Statement is the "only Lanham Act violation at issue," the district court disagreed and based its analysis regarding disgorgement on Plaintiff's claim pertaining to the Passages review, independently of, and in addition to, its claim pertaining to the Process Statement.[3] The district court rejected all of Plaintiff's proposed theories for calculating the financial benefit to Defendants from the Passages review. We conclude that the court did not abuse its discretion in doing so, except as to one theory.

Because every visit to The Fix's review of Passages constituted an affirmative viewing of a negative advertisement of Passages—a type of

---

[3]  Contrary to what Judge Graber's dissent suggests, the district court made clear that Plaintiff's Lanham Act claim relied, not just on the Process Statement, but also on the theory that the 2011 review itself represented that it "was based on surveys of former Passages clients." Therefore, the district court correctly held that monetary remedies were "not limited to consumers who viewed both the Passages review and the Process Statement." It is admittedly somewhat curious that the district court limited monetary relief to the period following the publication of the Process Statement in October 2014, but Plaintiff has not challenged that limitation in its opening brief, and so the issue is forfeited. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).  Thus, although we disagree with its reasoning in reaching the conclusion, Judge Graber's dissent is nonetheless correct to the extent it notes that monetary relief remains limited to the post-October 2014 time frame.

advertisement that was valuable enough to Cliffside to violate the Lanham Act to maintain it on The Fix—the district court erred in rejecting this particular disgorgement theory. The district court found that there were 192,434 "organic visits" to the false "Passages review" (and Process Statement) on The Fix. The district court also rejected as too "speculative" the calculation of Plaintiff's expert, Arun Thach, of $40 per visit or click as an approximate valuation of the benefit to Defendants of the false advertisement. While it was not necessarily error for the district court to reject Plaintiff's expert's valuation by itself, it was error for the district court not to consider this testimony in conjunction with the testimony of Defendants' expert, Ward Hanson, who set the approximate benefit to Defendants as at most $1.80 per visit or click. Even if the district court were to rely on Defendants' expert's valuation of up to $1.80 per visit, it would still yield a disgorgement amount at least five times that of the "hypothetical" alternative amount of $60,000 reached by the district court. As Defendants' own expert recognized that there would have been some benefit to Defendants—as much as $1.80 per visit to the Passages review—it was an abuse of discretion for the district court to find that the financial benefit to Defendants could not be established to a reasonable certainty. As both experts recognized that Defendants would have received some benefit from the visits to the false advertisement and given that

10

Defendants' expert set a valuation at an amount based on the number of visits and a valuation per visit potentially greater than that suggested by the district court, it was error for the district court to consider and reject the valuation of only Plaintiff's expert.

On remand, the district court is directed to consider the valuation opinions of both experts and determine the disgorgement valuation accordingly. We vacate the district court's ruling as to disgorgement and remand this case back to the district court for it to reconsider disgorgement consistent with this disposition.[4]

4. Plaintiff also argues that the district court abused its discretion in denying Plaintiff attorneys' fees. We review a district court's determination of damages, fees, or costs under the Lanham Act for abuse of discretion. See Nintendo of Am., Inc. v. Dragon Pac. Int'l., 40 F.3d 1007, 1010 (9th Cir. 1994); SunEarth, Inc., 839

---

[4] Judge Graber's dissent suggests that, because Plaintiff's theory of falsity was focused on the "falsity about the process" by which The Fix's review was prepared, Plaintiff's disgorgement theory needed to account for the possibility that the falsely-generated review might have stumbled into the truth by giving Passages a rating that it in fact *substantively* deserved. We think the dissent overstates Plaintiff's burden under the Lanham Act.  Having presented sufficient evidence to show that the highly negative review was not generated by the process that was represented, Plaintiff amply established that the review was unreliable and therefore false and misleading.  At the very least, Plaintiff demonstrated that the review falsely augmented its own trustworthiness and persuasiveness.

11

F.3d at 1181. Under the Lanham Act, a district court may award "reasonable attorney fees" in "exceptional cases." 15 U.S.C. §1117(a). District courts analyzing a request for fees under the Lanham Act must examine the "totality of circumstances" to determine if the case is exceptional based upon a preponderance of the evidence. SunEarth, Inc., 839 F.3d at 1181 (citations omitted). We vacate the district court's ruling on attorney fees and remand for further proceedings consistent with this disposition. The district court concluded that the case was not so "exceptional" as to warrant a fee award, that Defendants' arguments were not objectively unreasonable, and that Plaintiff failed to establish the extent of its injury. As we have vacated and remanded the district court's ruling as to disgorgement and the district court must consider the totality of the circumstances when determining whether attorney fees should be awarded, we vacate the district court's ruling on attorney fees and remand for the district court to determine whether its ruling on disgorgement on remand affects its ruling on the award of attorney fees.

5. The district court also denied Plaintiff's request for costs. Under the Lanham Act, successful plaintiffs are entitled to "the costs of the action." 15 U.S.C. §1117(a). We reverse the district court's denial of costs. The district court's only identifiable reason for its denial of costs was that the litigation was

"excessively-protracted." The district court also appeared to rely upon its reasons for denying attorney fees as a basis for denying costs, but such reliance is misplaced because the standard for the award of costs differs substantially from the standard for the award of attorney fees. While successful plaintiffs are generally entitled to "the costs of the action," they must demonstrate that the case is "exceptional" to be awarded attorney fees. 15 U.S.C. §1117(a). The district court's explanation for its denial of attorney fees did not explain adequately why Plaintiff was not entitled to costs in this case.

6. The district court held that Plaintiff's claims were not barred by either California's three-year statute of limitations or the doctrine of laches. Defendants' cross-appeal challenges only the district court's ruling concerning the statute of limitations. We need not decide whether Plaintiff is correct in contending that the timeliness of its Lanham Act claims is governed solely by the doctrine of laches and that there is no independent timeliness requirement resulting from a borrowing of the most analogous state statute of limitations. Cf. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002) (observing that "we have stated that §43(a) borrows a state limitations period as a statute of limitations defense," but also noting that, "[g]iven the equitable character of § 43(a) actions, Congress might have intended that laches be the sole timeliness bar to suit"). Even

13

assuming *arguendo* that the statute of limitations provides an independent timeliness requirement, Plaintiff's claims would not be barred.

The district court correctly concluded that Plaintiff did not know, nor could it reasonably have known, about its potential Lanham Act cause of action until Plaintiff's discovery of the relationship between The Fix and Cliffside. See id. at 838 (stating that the length of delay is "measured from the time the plaintiff knew or should have known about its potential cause of action."); Internet Specialties W., Inc. v. Milon-Gigiorgio Enters., 559 F.3d 985, 990 (9th Cir. 2009); Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 n.2 (9th Cir. 1991) (holding that the statute of limitations period "commenc[es] when the plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence.").  Until the publication of an article in November 2017 revealing the affiliation between Cliffside and The Fix, Plaintiff could not have known that the challenged webpages on The Fix were "for the purpose of influencing consumers to buy defendant's goods or services." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999) (simplified).        7. Finally, regarding Plaintiff's request that if the panel remands the case that it be assigned to a new judge, Plaintiff has not shown that the court exhibited any "personal bias" or "unusual circumstances" that would counsel in favor of reassignment. Rhoades v.

<u>Avon Prods., Inc</u>., 504 F.3d 1151, 1165 (9th Cir. 2007). We decline to order

reassignment on remand.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**  Each

side shall bear its own costs on appeal.

FILED

*Grasshopper House, LLC v. Clean & Sober Media, LLC*, Nos. 19-56008 & 19-56072

AUG 20 2021

COLLINS, Circuit Judge, concurring in part and dissenting in part:

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

I concur in the memorandum disposition except as to section 2.  I respectfully dissent from that section because, in my view, the district court prejudicially erred in cancelling the damages phase of the trial ("Phase II").

**I**

The majority errs in concluding that the district court's order cancelling the damages phase can be upheld on the ground that it was permissibly "issued pursuant to [Federal] Rule [of Civil Procedure] 56."  *See* Mem. Dispo. at 5.  The majority's theory is that the district court's order was not an impermissible *sua sponte* grant of summary judgment (or of judgment as a matter of law), but rather was a resolution of an issue that had previously been raised in Defendants' summary judgment motion but not resolved in the court's earlier summary judgment ruling.  This theory is refuted by the record in multiple respects.

First, contrary to what the majority insinuates, Defendants' summary judgment motion did *not* contest the sufficiency of Plaintiff's damages evidence as to all claims.  In particular, Defendants' motion did not challenge Plaintiff's claim for damages insofar as that claim rested on the theory that *the 2011 Passages review itself* misleadingly communicated that it was based on actual client reviews.  Rather, Defendants' summary judgment motion argued that this particular theory

failed because (1) the review indisputably *was* based on client comments; and (2) this theory was time-barred. Defendants' motion challenged the adequacy of Plaintiff's proof of damages *only* as to the *alternative* theory that Plaintiff was harmed by "the Process and Mission Statements."

The majority suggests that this latter adequacy-of-damages argument extended to the whole case, *see* Mem. Dispo. at 5, but Defendants' summary judgment motion squarely negates that. Indeed, in making their argument that the alternative theory based on the Process and Mission Statements failed for lack of proof of damages, Defendants expressly contrasted that theory with the (assertedly meritless) review-based theory, noting that Plaintiff had "submitted three extensive expert reports constructing an argument that *the review* is what harmed it." As the motion explained (emphasis altered):

> Yet it is now clear, on the eve of trial, that Passages has *no evidence that the Process or Mission Statements caused it any harm*. It has thus retreated to the 2011 Passages review and submitted three extensive expert reports constructing an argument that *the review* is what harmed it. But it is not the review that is actionable; it is, if anything, the Process and Mission Statements. Because Passages has shown *no harm flowing from those statements*, Defendants are entitled to summary judgment on Passages' Lanham Act claim.

Elsewhere, the motion again confirmed that Defendants were making two different summary judgment arguments aimed at Plaintiff's two theories:

> Passages is thus caught between two broken theories of liability. The review itself is not actionable, so it must rely on

the Process and Mission Statements.  Yet the Process and
Mission Statements caused it no harm, so it must rely on the
review.  Either way, a critical element of Passages' case is
missing.

The summary judgment motion simply never argued that there was insufficient

proof of harm as to Plaintiff's theory based on the 2011 Passages review.

Second, the district court did *not* defer any portion of its ruling on

Defendants' summary judgment motion.  Instead, on February 15, 2019—before

the start of the trial on February 19—the district court issued a ruling stating that

"Cliffside's motion for summary judgment on Passages' claims in the First

Amended Complaint, Dk. 184, is DENIED."  The minute order containing this

ruling also contains additional rulings on numerous other separate motions.  The

minute order then concludes with a schedule for briefing on Cliffside's challenges

to the admissibility of Passages' damages experts, and it is only in *that* context that

the court stated that it would "reserve further rulings on damages as relevant for

the second phase of trial until after the first phase of trial is completed."  That is

not a reservation of a *summary judgment* ruling (which, as noted, had been

definitively rendered), much less a reservation of a summary judgment argument

that was never made in the first place.

Third, if there were any remaining doubt, it is dispelled by the explanations

the district court subsequently gave, in its July 1, 2019 orders, for its earlier

cancellation of Phase II of the trial.  In its "Findings of Fact, Conclusions of Law,

and Judgment," the court gave the following explanation for why it cancelled the

Phase II trial after granting the motion in limine to exclude Dr. Williams's

testimony (emphasis added):

> Because Passages *failed to offer any additional evidence in connection with Phase II of trial* that would have been sufficient to create a triable issue as to whether Passages should be awarded damages, the Court determined that Phase II of trial was no longer necessary and dismissed the jury.

The court obviously was not referring back to any showings made in connection

with the prior summary judgment papers.  Rather, it was making a *new* evaluation

as to the adequacy of the evidence for Phase II based on the exclusion of Dr.

Williams and the fact that Plaintiff had said it would not call the other two experts.

In making this new evaluation, the July 1 order refers to the absence of a

"triable issue," which is the language of a *sua sponte* grant of summary judgment.

(Again, as noted earlier, it cannot be a continuation of the prior summary judgment

motion, because that motion did not raise this issue.)  But the order cannot be

upheld as a *sua sponte* grant of summary judgment.  The July 1 order's reference

to a "triable issue" was a post hoc comment that does not appear in the relevant

portions of the February trial transcript.  Accordingly, even if the court's action

were supposedly based on Rule 56, it would be plainly improper, because Rule 56

forbids a *sua sponte* grant of summary judgment without "giving notice and a

reasonable opportunity to respond."  *See* FED. R. CIV. P. 56(f); *see also Hoard v.*

*Hartman*, 904 F.3d 780, 792–93 (9th Cir. 2018).  Nor can the court's action be

upheld under Federal Rule of Civil Procedure 50, because our caselaw precludes

granting a Rule 50 motion before a party has been fully heard on an issue.  *See*

*Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 928 (9th Cir. 2007).

      The explanation given in the court's accompanying July 1, 2019 minute

order (which elaborated on the bases for a number of prior rulings) is even more

problematic.  There, the court stated that, after Phase I concluded:

> [T]he Court asked Passages which witnesses Passages
> intended to present to the jury during Phase II of trial to
> support Passages' injury from Cliffside's false advertising on
> The Fix and the resulting damages to Passages' business.
> Passages stated only that it intended to call Dr. Williams and
> Pax Prentiss to establish injury and causation.  The Court
> reviewed Pax Prentiss' deposition testimony submitted by
> Cliffside, see Dkt. 325 (notice of manual lodging of deposition
> transcripts), and Mr. Prentiss' testimony is insufficient on its
> own to create a triable issue before the jury as to Passages'
> damages stemming from Cliffside's Lanham Act violations.

As Defendants note, the referenced mention to Pax Prentiss occurred at the hearing

on Tuesday, February 26, and not after the exclusion of Dr. Williams on Thursday,

February 21.  Defendants implausibly treat this whole paragraph of the July 1 order

as some sort of inadvertent error, and they contend that the proper reading of the

record is that Prentiss was offered too late.  Without explanation, the majority

adopts this reading of the record, concluding that Plaintiff's reliance on Prentiss

was a "*post hoc* argument."  *See* Mem. Dispo. at 6.  But that reading of the July 1

order is clearly wrong—the district court's July 1 order conspicuously did *not* rely on the view that Prentiss was offered too late but instead said only that his deposition testimony was insufficient to create a triable issue.  That is, the July 1 order *accepts* that Plaintiff properly relied on both Williams and Prentiss for Phase II and then concludes that neither was sufficient.  That is, once again, effectively a *sua sponte* grant of summary judgment, but it was done without proper notice and an opportunity to be heard.  And, once again, it cannot be upheld under Rule 50 either, because our caselaw precludes granting a Rule 50 motion based on a proffer.  *See Summers*, 508 F.3d at 928.

The district court's error was not harmless because, at a minimum, Prentiss's testimony and business records could have established the *fact* of injury, and Plaintiff had properly preserved a claim for nominal damages by submitting a jury instruction requesting at least nominal damages on its Lanham Act claim.  Because the district court erred in cancelling Phase II of the trial, its rejection of Plaintiff's damages claim should be reversed.

## II

Defendants argue that, even if the district court's order cancelling the damages phase might otherwise have been error, no reversal is warranted because Plaintiff failed to make a sufficient objection to that cancellation and, indeed, invited any error that occurred.  There are multiple flaws with this theory as well.

6

First, although the district court initially appeared to endorse this theory at the hearing on February 26, it thereafter pointedly did *not* rely on that theory in its later detailed written orders explaining the court's actions.  Given that the district court did not invoke forfeiture or invited error, but instead treated the objection as properly raised, I see no reason why we would do differently on appeal.

Second, in any event the February 21 transcript is too ambiguous to support forfeiture, much less invited error.  The court stated on Thursday, February 21 that everyone would have to proceed with Phase III on Tuesday, but it did not state that it was cancelling Phase II, that it was discharging the jury, or that there would be no court on Friday.  The court instead discharged the jury on its own, without notice to the parties, on "Thursday night."  Indeed, Plaintiff's counsel, and the editor-in-chief of Defendants' "The Fix" (Ms. McCabe), showed up for court on Friday morning, as the district court acknowledged at the subsequent February 26 hearing when it commented that their arrival on Friday "was observed by one of my law clerks."  There was no forfeiture and no invited error.

*       *       *

For the foregoing reasons, I would vacate the district court's grant of summary judgment on damages and remand for further proceedings on that issue. Because the majority concludes otherwise in section 2, I respectfully dissent from that section.

7

FILED

<u>Grasshopper House, LLC v. Clean and Sober Media, LLC</u>, Nos.  19-56008 and
19-56072

AUG 20 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GRABER, Circuit Judge, dissenting in part:

I concur in the disposition with one exception:  the extent of disgorgement

that is appropriate.  In my view, the jury was asked to find, and did find, that the

falsehood was limited to the *procedure* followed and to the Process Statement.

Although the discussions among the lawyers and the judge, the briefing to the

district court, and the district court's comments were at times broad and

ambiguous, the verdict form and the evidence were clearly focused on process

alone.

The parties did not litigate the truth or falsity of the star-rating content of the

review, as distinct from the method used to prepare it.  To be sure, the Passages

CEO testified (without giving any detail) that "[a]lmost every statement in the

review is false," but all other evidence pertained to the process, not the star-rating

content of the review.  For example, at the pre-trial conference the court

characterized Plaintiff's claim as "simply that under [Defendants'] own statement

of process, its reviews were based upon written surveys sent out."  And the

testimony of the review's author concerned whether he had actually contacted and

interviewed Passages alumni.  In other words, the evidence demonstrated only that

the content of the review was false in stating that the review portrayed the views of

former clients, *i.e.* that a particular *process* was followed to arrive at the rating.

Plaintiff's theory is that falsity about the process in the Process Statement *necessarily* means that the *substantive content* of the one-star rating was false as well.  I disagree; logically it is quite possible to lie about a procedure (for example, survey 20 people when 60 were promised) but report the results accurately and also report the same results that would have been obtained had the promised procedure been followed.

Accordingly, in my view Plaintiff's damages would have to relate to people who were dissuaded from seeking treatment at Passages *because of* the failure to base the review on former clients' assessments of the services, as set forth in the Process Statement.  Because the Process Statement was not published until 2014, damages would have to relate to the post-2014 period.

For that reason, I dissent in part and would instruct the district court to limit disgorgement accordingly.